BALDWIN J. LEE (BAR NO. 187413)
AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
JENNIE L. LEE (BAR NO. 191350)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111-4074
Phone:  (415) 837-1515
Fax:  (415) 837-1516
E-Mail: blee@allenmatkins.com
        awintersheimer@allenmatkins.com
        jlee@allenmatkins.com

Attorneys for Defendants
  JASMINE HALL CARE HOMES,
  INC., HALL CARE HOMES, INC.,
  GEORGE K. HALL, AND ESTELA
  HALL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>        Plaintiff,<br><br>    vs.<br><br>JASMINE HALL CARE HOMES, INC., a corporation, HALL CARE HOMES, INC., a corporation, GEORGE K. HALL, an individual, and ESTELA HALL, an individual,<br><br>        Defendants. | Case No. 2:05-CV-1306-GEB-KJM<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS<br><br>Date:    May 14, 2007<br>Time:    9:00 a.m.<br>Ctrm:    10<br>Judge:   Hon. Garland E. Burrell<br><br>Trial Date:   July 24, 2007 |

Defendants George Hall, Estela Hall, and Hall Care Homes, Inc. and Jasmine Hall Care Homes, Inc. (collectively "Hall Care Homes"), submit the following response to the 68 separate facts Plaintiff submits are material to its motion for summary judgment.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| 1. Directly, as well as through the corporations Jasmine Hall Care Homes, Inc. and Hall Care Homes, Inc., Defendants George Hall and Estela Hall operate eight Jasmine Hall adult residential care facilities for developmentally disabled (DD) adults in Sacramento, California, (Exhibit A, Defendants' Response to Plaintiff's First Set of Requests for Admissions, # 1-3; Answer of Defendants, ¶ 3). | Disputed but not material. | Estela Hall does not operate the eight care homes, and the DOL's citations do not show that she does.

Because Plaintiff cannot establish a multitude of the other "undisputed material facts" it has represented are material to the success of its motion, as set forth below, Defendants do not take the space to further respond to this compound purported undisputed fact. |
| 2. George Hall is the president and CEO of Jasmine Hall Care Homes Inc. and Hall Care Homes, Inc. (Answer of Defendants, ¶ 3; Exhibit B, Deposition of George Hall, at p. 9, ln. 8-11). | Not disputed. | |
| 3. Estela Hall is the Vice President of Operations of Jasmine Hall. (Exhibit C, Jasmine Hall Personnel Report). | Disputed, but not material. | |
| 4. Defendants, jointly or severally, own all eight Jasmine Hall care homes, as well as the real property on which each is situated. (Creel Declaration at ¶ 60.) | Disputed. | Plaintiff's (hearsay) citation does not establish this purported undisputed material fact regarding "Defendants."

Furthermore, this purported undisputed fact is incorrect. Depo. of George Hall ("Dr. Hall Depo.") 9:19 – 10:1 ("If what you mean is does [Hall Care Homes] own any property, real property, no."); Declaration of Estela Hall ("E. Hall Decl."), ¶ 1 (I do not own any of the Hall Care Homes. I do not own the real estate on which the homes are situated."); Depo. of Estela Hall ("E. Hall Depo.") 86: 8-15 ("See, the |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

Case No. 2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | problem that I have -- you keep referring that -- my company. I don't own a company. I'm an employee. So when you refer to me -- my company, that's wrong. . . .I don't hold no share, no stocks. I am not the owner. I'm the employee.") |
| 5.    The Lanterman Mental Retardation Services Act of 1969 sets out a system of rights and services for developmentally disabled adults and children in California, which services are approved and provided through a network of 21 private, non-profit regional centers that work under contract with the California Department of Developmental Services (DDS). (Exhibit D, Declaration of Tanya Nalley, ¶ 3; Exhibit T, Declaration of Sandy Nunez, 3). | While this appears to be a statement of law, Defendants dispute this purported undisputed material fact to the extent it suggests that the Lanterman Act gives the private regional centers the authority to set statutory requirements. | |
| 6.    Alta California Regional Center ("Alta" or "ACRC") provides services to persons with developmental disabilities (DD) and their families throughout a ten county area around Sacramento, including assessment and placement for 24-hour residential non-medical care for DD adults and children. (Exhibit D at ¶¶ 3-4; Exhibit T at ¶¶ 3-4.) | Not disputed but not material. | |
| 7.    Residential placement is made in Community Care Facilities (CCFs), which have been licensed by the Community Care Licensing (CCL) Division of the Department of Social Services. | Not disputed but not material. | |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-2-
Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| (Exhibit D at ¶¶ 5-9; Exhibit T at ¶ 4) | | |
| 8.   In addition to CCL licensing, these residential facilities are also regulated by the Regional Centers through a process called Vendorization, which process seeks to ensure that the facility, its administrator and staff will be able to provide care at a specific designated level, in order to meet the needs of clients placed there. (Exhibit D at ¶¶ 8-9; Exhibit T at ¶ 5) | Disputed. | Vendorization is not a regulation.  Alta Regional is not a government agency and does not have statutory regulatory authority over the Hall Care Homes. Declaration of George Hall ("Dr. Hall Decl."), ¶ 5. |
| 9.   All adult residential care facilities in California are both licensed and vendored at a specific Level of Care (LOC) on a four-level scale from I to IV, representing increasing client impairments and needs, which correspond to increased standards for client care and staffing levels which facilities must provide. (California Code of Regulation, Title 17, Section 56.0004(a); Exhibit D at ¶¶ 9-13) | Disputed. | Jasmine Hall clients' impairments and needs do not "increase" simply based upon the Level they are assigned.<br><br>*E.g.*, Deposition of Xochilt Zimmerly ("Zimmerly Depo.") 15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently), 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);<br><br>Deposition of Lyle McCullough ("McCullough Depo.") 41:2-11 ("A: There are some clients [at Hall Care Homes Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day.<br>BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or --<br>A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-24 ("All my clients are high-functioning"); |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-3-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | Declaration of Mabel Tetteh ("Tetteh Decl."), ¶10; Declaration of Evelyn Panares ("Panares Decl."), ¶10. |
| 10.  Level 4 is the highest of the levels of care and in turn is divided into sublevels, with Level 4(i) the highest level of care required in the system. (Exhibit D at ¶¶ 10-12.) | Disputed. regarding the meaning of "highest level of care." | A Level 4(i) client does not require the highest level of care at Hall Care Homes.  The DOL's citation in support of this purported undisputed material fact fails to establish any personal knowledge of the clients at Hall Care Homes.  In fact, Level 4 clients at Hall Care Homes are typically high-functioning.<br><br>As noted in response to purported undisputed material fact number 10 (parenthetical quotations omitted here):<br><br>McCullough Depo. 41:2-11; Zimmerly Depo. 15: 21-16:3; 73:7-23; Tetteh Decl., ¶10; Panares Decl., ¶10. |
| 11.  Jasmine Hall regularly schedules its care aide employees or Residential Care Aides (RCA's) to work five consecutive 24-hour duty shifts per week at their assigned care home. (Exhibit E; Exhibit F, Defendants' Responses to the Secretary's First Set of Interrogatories, Response #1; Exhibits G, H, I, J, K, L, M, N, 0, P, Q, Declarations of various current employees, at ¶¶ 2, 3, 6; Exhibit R, Declaration of former employee Josefa Lastimosa, at ¶¶ 2, 3, 6; Exhibit S, Declaration of former supervisor Valerie Lowery, at ¶¶ 3-5; Exhibit V, Declaration of former employee | Undisputed that RCAs typically work for five 24-hour shifts and are off for two days. | |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-4-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| Joyce Glover, at ¶¶ 2-3.) | | |
| 12.  The Jasmine Hall workday is a consecutive 24-hour period. The workweek begins on Sunday and ends on Saturday. (Exhibit Y, Jasmine Hall Employee Policy, at p. 13.) | Undisputed. | |
| 13.  Jasmine Hall uses the same regular weekly work scheduling pattern for the care aides working at all of its eight care homes. (Exhibits G through R, at ¶ 2). | Disputed on the grounds that this purported fact is vague and ambiguous. Undisputed to the extent this purported undisputed fact intends to mean that RCAs typically work for five 24-hour shifts and  are off for two days. | |
| 14.  This same regular weekly work schedule has been in effect since 2002, continuing through to the present time. (Exhibits G through R, at ¶¶ 1-2). | Disputed regarding the vague term "regularly weekly work schedule." Undisputed to the extent this purported undisputed material fact seeks to mean that RCAs typically work for five 24-hour shifts and are off for two | |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-5-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | days. | |
| 15.  Jasmine Hall only compensates its care aide employees for 8 out of 24 duty hours in each regular shift worked at the employees' assigned care home. (Exhibit F, Response #1). | Disputed. | This purported undisputed material fact does not correctly describe the work of the RCAs.  The RCAs do not work 24 hours.  DOL Ex. J, ¶¶ 10-11 (Declaration of Antonio Darwin submitted by DOL in which Mr. Darwin states he spends an average of 5 hours daily on direct client care, behavioral interactions, client charting, and household chores, and has an average of 11 ½ daytime hours free when he is not required to care for and interact with clients or handle household chores); |
| | | Declaration of Grace Darwin ("G. Darwin Decl."), ¶¶ 2-11 ("I spend about 7 hours a day working"); |
| | | Declaration of Constancia Ybanez ("Ybanez Decl."), ¶¶ 3-21 ("How much time I spend working varies.  I work less than 8 hours per day."); |
| | | Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to spend the way I want;" "I work approximately 8 hours a day.") |
| | | Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns. Sometimes I go out during the day when I want.  Sometimes my co-workers go out.  One co-worker attended school during the day. |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-6-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | | | Sometimes I read;" "I work approximately 8 hours per day."). Dr. Hall Depo. 177:16-20 (Hall Care Homes has paid employees for interruptions of sleep time). |
| | 16. Jasmine Hall pays all its care aide employees a set monthly salary, to cover and compensate all hours worked during their regular weekly duty shifts in that month. (Exhibits G through R, at ¶ 4). | Disputed. | The DOL's citation does not establish its purported undisputed material facts. Furthermore, employees also receive pay for overtime and sleep time. Dr. Hall Decl., ¶ 32. |
| | 17. The amount of the monthly salary paid by Jasmine Hall varies slightly among employees, but only within in a narrow range between $1500.00 monthly to $1800.00 monthly before taxes. (Exhibits G through R, at ¶ 4) | Undisputed but not material. Also fails to take into account employees' other compensation, which depends on overtime and other pay. | |
| | 18. Any hours worked during the care aides' two scheduled days off per week is referred to by Defendants as "overtime" and paid separately, and is not a subject of this lawsuit. (Exhibits G through R, at ¶ 5). | Not material. | |
| | 19. Seven of the eight Jasmine Hall care homes are licensed and operate as Level 4 facilities, with just one, Jasmine Hall # 2, licensed and operating at Level 3. (Hall Depo p. 46, ln. 22-25) Four of the eight Jasmine Hall care homes are Level 4(i) facilities, the highest need and service level in the residential care system. (Creel | Disputed. | This lengthy purported undisputed material fact is incorrect due to its failure to reference a timeframe. This purported undisputed material fact is incorrect to the extent it implies by the term "highest need and service level" that Level 4 clients at Hall Care Homes necessarily require a greater amount of time. A Level 4(i) client does not necessarily require the highest level of |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-7-

Case No. 2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| Decl. at ¶ 28; Nalley Decl. at ¶ 12) | | care at Hall Care Homes.  The DOL's citation fails to establish any personal knowledge of the clients at Hall Care Homes.  In fact, Level 4 clients at Hall Care Homes are typically high-functioning.<br><br>*See also* facts that dispute this as noted in response to purported undisputed material fact number 10 above (parenthetical quotations omitted here): McCullough Depo. 41:2-11; Zimmerly Depo. 15: 21-16:3; 73:7-23; Tetteh Decl., ¶10; Panares Decl., ¶10. |
| 20.  Jasmine Hall's clients are placed in the homes pursuant to vendor agreements between Jasmine Hall and Alta Regional. (Exhibit U, "Residential Services Contract Agreement, Level 4") | Not disputed. | |
| 21.  California law, Jasmine Hall's licenses and its contracts with Alta Regional require specific minimum on-duty staffing levels in its Level 3 and Level 4 facilities. (California Code of Regulations, Title 17, §56004; Exhibit D at ¶¶ 13-14). These include, for all Level 4 care facilities such as Jasmine Hall's, a requirement that at least one staff member be present whenever any client is on the premises and that, further, the ratio of clients to staff not exceed 2 to 1 while clients are awake. (Title 17, Chapter 3 - Community Services, SubChapter 4 - Residential Services and Quality Assurance Regulations, | Disputed. | This purported categorical undisputed material fact is not a fact, but a conclusion of California law.<br><br>Hall Care Homes' agreements with Alta Regional do not set staffing levels, and the purported categorical statements of law are not correct as to Hall Care Homes' operations.  Dr. Hall Decl., ¶ 22; McCullough Depo. 84:14-22 ("Q.  Okay.  One person would need to stay if there was one client?<br>A.  Yes, or if there was two or even more.<br>Q.  One client -- I'm sorry.  So one staff member for three 4-I clients would be sufficient staff-client ratio?<br>A.  I'm not sure about the legalities of it, but I know that there's never more |

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| §56004.) | | clients home than one person can handle.  One person would need to stay, the rest could leave as they saw fit."). |
| 22.  In addition, all of Level 4 care facilities must also provide sufficient client care staffing on-site so that the staff on-duty care hours, each week, meet a weekly minimum number of hours set by regulation. (Title 17, §56004). For all of Jasmine Hall's Level 4 care homes, there are additional requirements to provide a minimum number of direct care staff hours each week. For Jasmine Hall's Level 4(i) care homes, each home must ensure that 420 hours of direct client care and supervision, independent of consultant hours, are provided weekly. Title 17, §56004. (Exhibit D at ¶¶ 12-14.) | Disputed but not material. | This purported categorical undisputed material fact is not a fact, but a conclusion of California law. The DOL's characterizations of California legal requirements regarding total staffing hours do not accurately describe the hours RCAs at the Hall Care Homes have needed to work during the time period at issue in this case.  Among other things, the DOL's staffing assumptions do not consider whether the clients leave the homes. The staffing requirements depend upon whether all the residents being present at all the homes all the time, and decrease if the clients are away, such as at work, at program, visiting boyfriends/girlfriends, friends, family, or at other programs.  Dr. Hall Decl. ¶ 11; McCullough Depo. 84:14-22. Hall Care Homes' clients are not present at all the homes all the time. *Id.;* Ybanez Decl., ¶ 10; G. Darwin Decl., ¶ 8; Panares Decl., ¶ 7.<br><br>The purported statement of California law is not supported by the DOL's citations.  For example, DOL represents to the Court that the declaration states that *each* Hall Care Homes Level 4(i) care home must ensure 420 hours of direct client care.  In actuality, the declaration only purports to generally describe Level 4(i) homes that have 6 clients present.  This is inapplicable to this case because not all Jasmine Care homes have 6 residents. Dr. Hall Decl., |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-9-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | ¶ 11.  The Hall Care Homes have never been all at full capacity.  *Id.*  Furthermore, clients are not all present in the homes at all times.  *Id.*; Ybanez Decl., ¶ 10; G. Darwin Decl., ¶ 8; Panares Decl., ¶ 7.  Hours are not required when the clients are out of the home.  Dr. Hall Decl., ¶ 11. |
| 23.  Jasmine Hall's licensing and contracts to provide residential care also include similar guarantees to provide mandatory minimum direct care staffing levels in each care home. (Exhibit D; Exhibit U, p. 1) | Disputed. | While it is not clear what DOL intends to mean by "similar guarantees," to the extent it is referring to purported undisputed material fact 22, Defendants reference their response:  This purported categorical undisputed material fact is not a fact, but a conclusion of California law.  The DOL's characterizations of California legal requirements regarding total staffing hours do not accurately describe the hours RCAs at the Hall Care Homes have needed to work during the time period at issue in this case.  Among other things, the DOL's staffing assumptions do not consider whether the clients leave the homes.  The staffing requirements depend upon whether all the residents being present at all the homes all the time, and decrease if the clients are away, such as at work, at program, visiting boyfriends/girlfriends, friends, family, or at other programs.  Hall Care Homes' clients are not present at all the homes all the time.  Dr. Hall Decl. ¶ 11; McCullough Depo. 84:14-22; Ybanez Decl., ¶ 10; G. Darwin Decl., ¶ 8; Panares Decl., ¶ 7. |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-10-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | | | The purported statement of California law is not supported by the DOL's citations.  For example, DOL represents to the Court that the declaration states that *each* Hall Care Homes Level 4(i) care home must ensure 420 hours of direct client care.  In actuality, the declaration only purports to generally describe Level 4(i) homes that have 6 clients present.  This is inapplicable to this case because not all Jasmine Care homes have 6 residents.  Dr. Hall Decl., ¶ 11.  The Hall Care Homes have never been all at full capacity.  *Id.*  Furthermore, clients are not all present in the homes at all times.  Dr. Hall Decl., ¶ 11, Ybanez Decl., ¶ 10; G. Darwin Decl., ¶ 8; Panares Decl., ¶ 7.  Hours are not required when the clients are out of the home.  Dr. Hall Decl., ¶ 11. |
| | 24.  Jasmine Hall specializes in accepting DD clients with dual diagnoses of serious behavioral and mental problems, who need less physical care but have intensive needs for behavioral care and attention. (Lowery Decl., at ¶ 6.) | Disputed. | Hall Care Homes clients do not have more intensive needs for behavioral care and attention.  McCullough Depo. 41:2-11 ("A:  There are some clients [at Hall Care Homes Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day.  BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or --  A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-24 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-11-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | recently left to live independently); Tetteh Decl., ¶ 10; Panares Decl., ¶ 10. |
| 25.  Service Level 4(i) is the highest Service Level for residential care facilities, reserved for clients with the most severe disabilities, requiring the greatest amounts of direct care and supervision. (Nalley Decl., at ¶ 12.) | Disputed. | The declarant has no personal knowledge of the Hall Care Homes or their clients.  *See also* McCullough Depo. 41:2-11 ("A:  There are some clients [at Hall Care Homes Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day. BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or -- A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-24 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently); Tetteh Decl., ¶ 10; Panares Decl., ¶ 10. |
| 26.  The primary and most essential service provided by Jasmine Hall's care aides is giving 24-hour direct care and supervision to all clients under Jasmine Hall's legal supervision. (Lowery Decl., at ¶ 6.) | Disputed. | All services provided by Hall Care Homes employees is considered to be important and essential.  The RCAs do not work for 24 hours a day.  DOL Ex. J, ¶¶ 10-11 (Declaration of Antonio Darwin submitted by DOL in which Mr. Darwin states he spends an average of 5 hours daily on direct client care, behavioral interactions, client charting, and household chores, and has an average of 11 ½ daytime hours free when he is not required to care for and interact with clients or handle household chores); Samuel Manteaw DOL Statement and Letter (Dr. Hall Decl., Ex. A) ("though I was residing |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-12-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | | | on the employer's premises, and could choose to do so 24 hours a day even on my days off, I was not on 24-hour duty. . . .I had enough time to go to campus and San Francisco for meetings and conferences during my days on duty . . . I even had time to moderate a conference at the State Capitol in Sacramento on my duty day."); *See also* Creel Depo. 246:11:-247:13 ("Q: And you understood that Mr. Manteaw had conducted research on a regular basis while he was on duty? Did you understand that? A: I understood that from his letter, yes, I do.")  G. Darwin Decl., ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("My room lets me get a good night's rest. . . . How much time I spend working varies. I work less than 8 hours per day."); Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to spend the way I want;" "No-one bothers me when I am sleeping. When I go to bed, I do not wake up until the morning;" "I work approximately 8 hours a day. The work is not hard and I like it.") ; Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want. By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns. Sometimes I go out during the day when I want. Sometimes my co-workers go out. One co-worker attended school during the day. Sometimes I read;" "I am able to get a good nights' sleep;" "I work approximately 8 hours per day."); |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-13-

Case No. 2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | Tetteh Decl., ¶ 17 ("One co-worker had her 12 year old daughter stay at the home with us. The daughter ate breakfast with us in the morning before school and came back to Jasmine Hall after school. The little girl ate dinner with us and slept here."). Stephenson Minor Depo. 126:10-15; ("Q. When you were working at Jasmine Hall 6, your daughter stayed with you most of the time? A. Yes."); 136:5-7 ("Q. Okay. Did you take any computer courses during the time that you were employed at Jasmine Hall? A. Yes. Q. What computer courses did you take? A. What was it? It's called "Office Technology."); *see also*, Creel Depo. 256:2-257:2 ("Q: Do you believe that taking your daughter to school in the morning and picking her up in the afternoon is personal time? A: Yes.") |
| 27. Jasmine Hall's care aides are responsible for handling the clients' daily behavioral data gathering and intervention programs, as well as some specified training programs, and related record keeping and charting. The problem behaviors are identified by a paid consultant, but it is the care aides who monitor for the behaviors and provide the data about how often daily they occurred, when, and why, and take the prescribed interventions and trainings. (Lowery Decl., at ¶ 7.) | Disputed. | It is unclear what this lengthy purported undisputed material fact intends to state.<br><br>Defendants note, among other things, that Hall Care Homes Administrators' responsibilities include information recording and recordkeeping when needed. Zimmerly Depo. 26:7-27:1; *see also* McCullough Depo. 30:12-24, 36: 10-24 (client notes typically consist of 5-6 lines written 3 times a week; would be a surprise if notes took more than 10 to 15 minutes to complete); Tetteh Decl., ¶ 11 ("Sometimes I fill out paperwork."); Panares Decl., ¶ 12. |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-14-

Case No. 2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| 28.  Jasmine Hall's regular employee work schedule of 5 consecutive 24-hour duty shifts each week is designed to have care aides on duty at each care home on a 24-hour basis to satisfy Jasmine Hall's contractual and regulatory direct care staffing minimum staffing levels and weekly care hours. (Exhibit D at ¶¶ 14-28; Exhibit Y, Jasmine Hall Employee Policy, at p. 13. | Disputed. | The cited declaration displays no personal knowledge of Hall Care Homes or its state of mind regarding the work schedule.<br><br>The RCAs at Hall Care Homes do not work for 24 hours a day, contrary to the DOL's request that every RCA be paid for 24 hours a day for every day of work.  DOL Ex. J, ¶¶ 10-11 (Declaration of Antonio Darwin submitted by DOL in which Mr. Darwin states he spends an average of 5 hours daily on direct client care, behavioral interactions, client charting, and household chores, and has an average of 11 ½ daytime hours free when he is not required to care for and interact with clients or handle household chores); G. Darwin Decl., ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("My room lets me get a good night's rest. . . . How much time I spend working varies.  I work less than 8 hours per day."); Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to spend the way I want;" "No-one bothers me when I am sleeping.  When I go to bed, I do not wake up until the morning;" "I work approximately 8 hours a day.  The work is not hard and I like it.") ; Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns.  Sometimes I go out during the day when I want.  Sometimes my co-workers go out.  One co-worker attended school during the |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-15-

Case No.  2:05-CV-1306-GEB-KJN
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | day.  Sometimes I read;" "I am able to |
| 6 | | | able to get a good nights' sleep;" "I work approximately 8 hours per day."); |
| 7 | | | Tetteh Decl., ¶ 17 ("One co-worker had her 12 year old daughter stay at the |
| 8 | | | home with us.  The daughter ate breakfast with us in the morning before |
| 9 | | | school and came back to Jasmine Hall after school.  The little girl ate dinner |
| 10 | | | with us and slept here."). |
| 11 | | | Stephenson Minor Depo. 126:10-15; ("Q.  When you were working at |
| 12 | | | Jasmine Hall 6, your daughter stayed with you most of the time? |
| 13 | | | A.  Yes."); 136:5-7 ("Q.  Okay.  Did |
| 14 | | | you take any computer courses during the time that you were employed at |
| 15 | | | Jasmine Hall? A. Yes.  Q. What computer courses did you take? |
| 16 | | | A.  What was it?  It's called "Office |
| 17 | | | Technology."); *see also*, Creel Depo. 256:2-257:2 ("Q: Do you believe that |
| 18 | | | taking your daughter to school in the morning and picking her up in the |
| 19 | | | afternoon is personal time? A: Yes.") |
| 20 | | | The DOL's characterizations of California legal requirements regarding |
| 21 | | | total staffing hours do not accurately describe what RCAs at the Hall Care |
| 22 | | | Homes have needed to work during the time period at issue in this case. |
| 23 | | | Among other things, the DOL's staffing assumptions do not consider whether |
| 24 | | | the clients leave the homes.  The |
| 25 | | | staffing requirements depend upon whether all the residents being present |
| 26 | | | at all the homes all the time, and decrease if the clients are away, such as |
| 27 | | | at program, visiting |
| 28 | | | boyfriends/girlfriends, friends, family, |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-16-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | | | or at other programs.  Hall Care Homes clients are not present at all the homes all the time.  Dr. Hall Decl., 11; Ybanez Decl., ¶ 10; G. Darwin Decl., ¶ 8; Panares Decl., ¶ 7.

The purported statement of California law is not supported by the DOL's citations.  For example, DOL represents to the Court that the declaration states that *each* Hall Care Homes Level 4(i) care home must ensure 420 hours of direct client care.  In actuality, the declaration only purports to generally describe Level 4(i) homes that have 6 clients present.  This is inapplicable to this case because not all Jasmine Care homes have 6 residents.  Dr. Hall Decl., ¶ 11.  The Hall Care Homes have never been all at full capacity.  *Id.*  Furthermore, clients are not all present in the homes at all times.  *Id.*; Ybanez Decl., ¶ 10; G. Darwin Decl., ¶ 8; Panares Decl., ¶ 7.  Hours are not required when the clients are out of the home.  Dr. Hall Decl., ¶ 11. |
| | 29.  The primary responsibility of Jasmine Hall's care aides or RCA's is to provide direct care and supervision to the clients on a 24-hour basis. (California Welfare & Institutions Code, Section 46.1(a)(2); California Code of Regulations, Title 17, §56002(a)(14); Exhibit E). | Disputed. | The RCAs at Hall Care Homes do not work for 24 hours a day, contrary to the DOL's request that every RCA be paid for 24 hours a day for every day of work.

Client care and supervision are provided by RCAs, other employees such as administrators, as well as outside contractors.  Dr. Hall Decl., ¶ 12.

DOL Ex. J, ¶¶ 10-11 (Declaration of Antonio Darwin submitted by DOL in which Mr. Darwin states he spends an |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| 5 | | | average of 5 hours daily on direct client care, behavioral interactions, client charting, and household chores, and has an average of 11 ½ daytime hours free when he is not required to care for and interact with clients or handle household chores); G. Darwin Decl., ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("My room lets me get a good night's rest. . . . How much time I spend working varies. I work less than 8 hours per day."); Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to spend the way I want;" "No-one bothers me when I am sleeping.  When I go to bed, I do no wake up until the morning;" "I work approximately 8 hours a day.  The work is not hard and I like it.") ; Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns.  Sometimes I go out during the day when I want.  Sometimes my co-workers go out.  One co-worker attended school during the day.  Sometimes I read;" "I am able to able to get a good nights' sleep;" "I work approximately 8 hours per day."); Tetteh Decl., ¶ 17 ("One co-worker had her 12 year old daughter stay at the home with us.  The daughter ate breakfast with us in the morning before school and came back to Jasmine Hall after school.  The little girl ate dinner with us and slept here."). Stephenson Minor Depo. 126:10-15; ("Q. When you were working at Jasmine Hall 6, your daughter stayed |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-18-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | with you most of the time? A. Yes."); 136:5-7 ("Q. Okay. Did you take any computer courses during the time that you were employed at Jasmine Hall? A. Yes. Q. What computer courses did you take? A. What was it? It's called "Office Technology."; *see also*, Creel Depo. 256:2-257:2 ("Q: Do you believe that taking your daughter to school in the morning and picking her up in the afternoon is personal time? A: Yes.") |
| 30.  Level 4 care is described by the state Department of Developmental Services as:<br><br>SERVICE LEVEL 4: Care, supervision, and professionally supervised training for persons with deficits in self-help skills, and/or severe impairment in physical coordination and mobility, and/or severely disruptive or self-injurious behavior. (Nalley Decl. at ¶ 11.) | Disputed to the extent this purported undisputed material fact seeks to specifically or accurately describe one or more Hall Care Homes clients. | McCullough Depo. 41:2-11 ("A:  There are some clients [at Jasmine Hall Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day. BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or -- A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-24 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);15:21-16:3 (Two of the Level Four clients at Hall Care Homes 7 recently left to live independently); Tetteh Decl., ¶ 10; Panares Decl., ¶ 10. |
| 31.  In Level 4 facilities, the minimum staffing levels start from the requirement that at least one staff member must be on duty anytime a client is present in the home, and with the presence of additional clients, the client staff ratio cannot exceed 2 clients per staff member on duty. (Exhibit E; | Not disputed  but not material. | |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-19-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| California Code of Regulations, Title 17, § 56004). | | |
| 32.  Jasmine Hall's care aides are the staff members who fulfill most of Jasmine Hall's direct care staffing requirements by providing client care and supervision in the care homes. (Nalley Decl., at ¶¶ 19-20.) | Disputed regarding the vague term "most." | The DOL citation lacks personal knowledge of Hall Care Homes and does not establish this purported undisputed material fact.<br><br>Client care and supervision are provided by RCAs, other employees such as administrators, as well as outside contractors.  Dr. Hall Decl., ¶ 12.  Clients also attend program or work.  *Id.* |
| 33.  Jasmine Hall's care aides must be on-duty in the sense of actively providing client care and supervision in their assigned care homes in order to be viewed as satisfying Jasmine Hall's direct care staffing requirements (Nalley Decl. at ¶¶ 19-20.) | Disputed. | The DOL citation lacks personal knowledge of Hall Care Homes and does not establish this purported undisputed material fact.<br><br>RCAs may attend to personal pursuits even if clients are present in the home. Dr. Hall Decl.,¶¶ 4, 14 (One RCA, a McGeorge Law School Fellow, attended to his studies and other personal pursuits in the days a client stayed home.); Panares Decl., ¶ 11 ("Clients who stay home in the evenings are usually watching TV or watching DVDs in their rooms.  I do not go to their rooms."). |
| 34.  Having direct care staff "on duty" in these residential facilities requires the care staff to be more than simply physically present on the premises. The care staff must also be, consciously supervising clients whenever clients are awake in the home, as well as ready, willing and able to | Disputed. | The DOL citation lacks personal knowledge of Hall Care Homes and does not establish this purported undisputed material fact.<br><br>RCAs may attend to personal pursuits even if clients are present in the home. Dr. Hall Decl.,¶¶ 4, 14 (One RCA, a McGeorge Law School Fellow, |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-20-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| 5 | assist and supervise clients at all hours of the night. (Nalley Decl. at ¶ 21.) | | attended to his studies and other personal pursuits in the days a client stayed home.); Panares Decl., ¶ 11 ("Clients who stay home in the evenings are usually watching TV or watching DVDs in their rooms. I do not go to their rooms."). |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | "Q. Is it merely required that the personnel be present, or must they be actively paying attention to the clients? A. They simply need to be present. Q. All right. And so in terms of being present, need they be anywhere on the premises, grounds, or must they be in the home itself, inside? A. Anywhere on the premises." McCullough Depo., 58:2-13) |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | 35. Each Jasmine Hall care aide must remain physically present on the premises, within earshot or view of the clients and consciously supervising them at all times that any client is awake in the home, in order for that care aide's time to count towards Jasmine Hall's direct care staffing requirements (Nalley Decl. at ¶ 22.) | Disputed. | It is not Hall Care Homes policy that an RCA must be within earshot or view of the clients and consciously supervising them at all times. Dr. Hall Decl., ¶ 31. |
| 17 | | | |
| 18 | | | |
| 19 | | | RCAs may attend to personal pursuits even if clients are present in the home. Dr. Hall Decl.,¶¶ 4, 14 ("One RCA, a McGeorge Law School Fellow, attended to his studies and other personal pursuits in the days a client stayed home."); Panares Decl., ¶ 11 ("Clients who stay home in the evenings are usually watching TV or watching DVDs in their rooms. I do not go to their rooms."). |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | "Q. Is it merely required that the personnel be present, or must they be actively paying attention to the clients? A. They simply need to be present. Q. All right. And so in terms of being |
| 27 | | | |
| 28 | | | |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-21-
Case No. 2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | present, need they be anywhere on the premises, grounds, or must they be in the home itself, inside?<br>A. Anywhere on the premises."<br>McCullough Depo., 58:2-13) |
| 36. A care aide who was out of earshot or view of the clients, for example in the back yard or in the staff bedroom with the door closed watching TV, may not be considered "on-duty" by Alta California Regional Center, and that time would not be considered to have constituted direct client care or supervision or count towards the facility's weekly minimum hours. (Nalley Decl. at ¶ 23.) | Disputed and immaterial what "may" be considered hours by a declaration that shows no personal knowledge of the Jasmine Hall Care Homes. | The DOL citation lacks personal knowledge of Hall Care Homes and does not establish this purported undisputed material fact.<br><br>This purported undisputed material fact does not reflect Hall Care Homes' clients. Zimmerly Depo. 59:4-14.<br><br>It is not Hall Care Homes policy that an RCA must be within earshot or view of the clients and consciously supervising them at all times. Dr. Hall Decl., ¶ 31; McCullough Depo., 58:2-13. |
| 37. The minimum number of direct care hours required at Level 4(i) is 312 hours *weekly* if 4 clients are currently residing at the home, and 420 hours *weekly* is 6 clients. | Disputed. | The DOL's characterizations of California legal requirements regarding total staffing hours do not accurately describe what RCAs at the Hall Care Homes have needed to work during the time period at issue in this case. Among other things, the DOL's staffing assumptions do not consider whether the clients leave the homes. The staffing requirements depend upon whether all the residents being present at all the homes all the time, and decrease if the clients are away, such as at work, at program, visiting boyfriends/girlfriends, friends, family, or at other programs. Dr. Hall Decl., ¶ 11. Hall Care Homes clients are not present at all the homes all the time. *Id.* Panares Decl., ¶ 7 ("It is rare to have a client stay home during the week |

| | Whether Disputed for Purposes of Summary Judgment Motion | |
|---|---|---|
| **Purported Undisputed Fact** | | **Basis** |
| | | day."); Ybanez Decl., ¶ 10 ("It is rare to have all the clients in the home during a weekday."). |
| 38.  If Jasmine Hall care aides were in fact only on-duty for eight (8) hours per shift, none of Jasmine Hall's care homes could meet their minimum mandatory number of direct care hours required per week with their existing number of staff. (Creel Decl., at ¶¶ 28-30.) | Disputed. | Hall Care Homes can meet their minimum requirements for direct care hours without any residential care aides working over 8 hours per shift.  Dr. Hall Decl., ¶ 32.  The DOL's characterizations of California legal requirements regarding total staffing hours do not accurately describe what RCAs at the Hall Care Homes have needed to work during the time period at issue in this case.  Among other things, the DOL's staffing assumptions do not consider whether the clients leave the homes.  The staffing requirements depend upon whether all the residents being present at all the homes all the time, and decrease if the clients are away, such as at work, at program, visiting boyfriends/ girlfriends, friends, family, or at other programs.  Hall Care Homes clients are not present at all the homes all the time. *Id.*; Panares Decl., ¶ 7 ("It is rare to have a client stay home during the week day."); Ybanez Decl., ¶ 10 ("It is rare to have all the clients in the home during a week day.") |
| 39.  Jasmine Hall instructs its care aides that they cannot leave their assigned care home without advance management permission during their 24-hour duty shift for anything more than a brief errand of less than one hour. Exhibit W, Deposition of Estela Hall, at pp. 127-128 (Exhibits G through Q at | Disputed. | While RCAs may notify others that they are leaving out of courtesy, there is no requirement as represented by this purported undisputed material fact that advance permission be obtained for anything other than a brief errand of less than one hour.  McCullough Depo: 53:6-54:1 ("Q.  Yes.  And so let's go back to your assumption that everyone |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-23-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| 15-17; Exhibit Y at p. 23). | | is gone during the day and say, for the sake of argument, that in that situation, are the staff members free to leave the house for purposes absolutely of their own –<br>A. Yes.<br>Q. Okay.  And are there any obligations upon those staff members to stay in contact or within availability of being called back within a certain time period if they're needed?<br>A. Not that I'm aware of.<br>Q. You're not aware of any requirement of the Regional Center that they be available within a one-hour call back time?<br>A. That falls to me.")<br><br>*See also* Panares Decl., ¶¶ 8-9; Tetteh Decl., ¶¶ 8-9; G. Darwin Decl., ¶ 7.  ("I can leave the home during our shift.  As a courtesy, I sometimes notify the Administrator that I am leaving but I am not required to get permission.").<br><br>Indeed, the DOL's own citation in support of this purported undisputed material fact contracts the "fact."  DOL Ex. W (E. Hall Depo.) states at 128: 3-10:<br>"Q:  The staff can't just leave and go to the bank without calling you, unless there's no clients in the home, right?<br>A:  That's not the case.<br>Q:  So what – could you correct what – why I'm wrong in that statement?<br>A:  They have – you know, some of the staff leave the premises.  They don't need to call me.<br>Q:  Uh-huh.  How long can they leave for if they are not going to call you and |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-24-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | let you know?<br>A. It varies.  I mean, it varies.  It's – it varies." |
| 40.  Jasmine Hall has reprimanded care aides for leaving the premises for a personal break without permission, even when there was sufficient staff present to care for clients. (Lowery Decl., at ¶ 16.) | Disputed. | The purported undisputed material fact is incorrect.  Hall Care Homes does not reprimand care aides simply for leaving the premises for a personal breaks without permission even when there is sufficient staff present to care for clients.  Dr. Hall Decl., ¶¶ 29- 30.  The DOL relies upon a single incident to support its incorrect categorical purported undisputed fact.  In that case, the RCA states she left the home to conduct a personal chore without notifying Hall Care Homes.  (Indeed, as other RCAs do.)  The declarant was not disciplined for leaving.  Dr. Hall Decl., ¶ 30.  The declarant was talked to because she used a Hall Care Homes vehicle without permission to conduct her personal business.  *Id.* |
| 41.  Jasmine Hall supervisors have been instructed that the Jasmine Hall policy does not allow care aides to leave the facility during the care aides' scheduled shift without advance permission, and the supervisors have enforced this policy with the care aides who reported to them. (Lowery Decl., at ¶ 15.) | Disputed. | The purported undisputed material fact is incorrect.  Dr. Hall Decl., ¶¶ 29-30 (Hall Care Homes supervisors are not instructed that RCAs may not leave the facility without advance permission); McCullough Depo. 85: 1-13; Zimmerly Depo. 48:4-25; G. Darwin Decl., ¶ 7 ("I can leave the home during my shift.  As a courtesy, I sometimes notify the Administrator that I am leaving but I am not required to get permission."); Tetteh Decl., ¶¶ 8-9 ("Sometimes I go out during the day when I want. . . . As a courtesy, I sometimes notify the Administrator that I am leaving."); Panares Decl., ¶¶ 8-9 (I have a lot of free time here to spend the way I want. |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-25-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| 5 6 7 8 9 10 11 12 | | | I regularly go out during the day when I want.  Sometimes I go shopping at Goodwill.  Sometimes my co-workers and I will go to Sunrise Mall.  We go out for Asian food.  Sometimes I go to my doctor's appointments during the morning.  I am always able to go to my doctor's appointments.  What I do during my free time does not affect my salary.  As a courtesy, I sometimes notify the Administrator that I am leaving."). |
| 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 | 42.  Defendant George Hall has stated to care aides that the Jasmine Hall rule is that they cannot leave the premises until their day off.  (Lowery Decl., at ¶ 16.) | Disputed. | Dr. Hall Decl., ¶ 4 (I have not told RCAs that the Jasmine Hall rule is that they cannot leave the premises until their day off.  RCAs do leave the homes.); G. Darwin Decl., ¶ 7 ("I can leave the home during my shift.  As a courtesy, I sometimes notify the Administrator that I am leaving but I am not required to get permission."); Tetteh Decl., ¶¶ 8-9 ("Sometimes I go out during the day when I want. . . . As a courtesy, I sometimes notify the Administrator that I am leaving."); Panares Decl., ¶¶ 8-9 (I have a lot of free time here to spend the way I want. I regularly go out during the day when I want.  Sometimes I go shopping at Goodwill.  Sometimes my co-workers and I will go to Sunrise Mall.  We go out for Asian food.  Sometimes I go to my doctor's appointments during the morning.  I am always able to go to my doctor's appointments.  What I do during my free time does not affect my salary.  As a courtesy, I sometimes notify the Administrator that I am leaving."). |
| 28 | 43.  Jasmine Hall employees | Disputed. | Dr. Hall Decl., ¶ 20 (Not all RCAs |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-26-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| are required to sleep at the facilities during their five consecutive 24-hour duty shifts. (Exhibit G through Q, ¶¶ 7, 9; Exhibit B at pp. 188-89; Exhibit E) | | sleep at the facilities during their shifts). |
| 44.   The RCA's are required to share sleeping quarters consisting of one room with up to four staff members. (Exhibits G through Q, ¶ 9; Exhibit R at ¶ 9; Exhibit S at ¶ 5; Exhibit V at ¶ 20) | Disputed but not material as to whether the RCAs are provided adequate sleeping facilities so that they can obtain a reasonable night's rest. *See Bouchard v. Regional Governing Bd.*, 939 F.2d 1323, 1332 (8th Cir. 1991) (sleep time exclusion requires that employee be provided a sleeping room where he can get at least 5 hours of sleep per night). | Not all RCAs share rooms.  Ybanez Decl., ¶ 3; Dr. Hall  Decl.,¶ 19. |
| 45.   Alta Regional requests that all Level 4 facilities provide a staff member who is assigned to be on duty, awake, all night in order to meet the greater nighttime care and supervision needs of Level 4 clients. (Nunez Decl. at 10 ) | Disputed. | McCullough Depo:  53:6-54:1 ("Q.  Yes.  And so let's go back to your assumption that everyone is gone during the day and say, for the sake of argument, that in that situation, are the staff members free to leave the house for purposes absolutely of their own – A.  Yes.<br>Q.  Okay.  And are there any obligations upon those staff members to stay in contact or within availability of being called back within a certain time period if they're needed? |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-27-
Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | A. Not that I'm aware of.<br>Q. You're not aware of any requirement of the Regional Center that they be available within a one-hour call back time?<br>A. That falls to me.") |
| 46.  George Hall and Estela Hall have guaranteed Alta Regional that Jasmine Hall assigns a care aide to be on duty, awake, overnight, every night, at each of Jasmine Hall's seven Level 4 homes. (Nunez Decl. at ¶¶ 11 and 12 ) | Disputed. | Hall Care Homes residential care aides are not required to be awake, willing and able to assist clients at all hours of the night.  Dr. Hall Decl., ¶ 21; Panares Decl., ¶ 16 ("I am able to get a good nights' sleep.  No-one bothers me when I am sleeping.  When I go to bed, I do not wake up until morning.  The clients sleep through to the morning."); G. Darwin Decl., ¶ 11 ("I do not get interrupted in my sleep by the clients. It may have occurred a few times and were short interruptions, less than 5 minutes.  I do not recall when they occur since they are rare, maybe 4 times a year."); Tetteh Decl., ¶ 18 ("I am able to get a good nights' sleep. No-one bothers me when I am sleeping. Client interruptions are rare and last 10-15 minutes.  Client interruptions are not regular.  If it occurs, I report the interruptions to the Administrator.").<br><br>Dr. Hall Decl., ¶ 22 (Hall Care Homes has not guaranteed Alta Regional that Hall Care Homes assigns a care aide to be on duty, awake, every night, at each of Hall Care Homes' seven Level 4 homes). |
| 47.  Even when able to sleep, the care aides' sleep is periodically interrupted by clients. (Exhibits G through Q, ¶¶ 18-19; Exhibit R at | Disputed.  This purported undisputed material fact is | Panares Decl., ¶ 16 ("I am able to get a good nights' sleep.  No-one bothers me when I am sleeping.  When I go to bed, I do not wake up until morning.  The |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-28-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | ¶¶ 18-19; Exhibit S at ¶¶ 10-11; Exhibit V at ¶¶ 20-21). | vague as to the term "periodically." <br><br> Disputed but not material as to whether the RCAs are provided adequate sleeping facilities so that they can obtain a reasonable night's rest. *See Bouchard v. Regional Governing Bd.*, 939 F.2d 1323, 1332 (8th Cir. 1991) (sleep time exclusion requires that employee be provided a sleeping room where he can get at least 5 hours of sleep per night). | clients sleep through to the morning."); G. Darwin Decl., ¶ 11 ("I do not get interrupted in my sleep by the clients. It may have occurred a few times and were short interruptions, less than 5 minutes.  I do not recall when they occur since they are rare, maybe 4 times a year."); Tetteh Decl., ¶ 18 ("I am able to get a good nights' sleep. No-one bothers me when I am sleeping. Client interruptions are rare and last 10-15 minutes.  Client interruptions are not regular.  If it occurs, I report the interruptions to the Administrator."). |
| | 48.  Until at least 2005, Jasmine Hall did not provide a timekeeping mechanism for tracking interruptions in employees' sleep. (Exhibit V at ¶ 21; Creel Decl. at ¶¶ 14). | Disputed. | Dr. Hall Decl., ¶ 34 (Hall Care Homes had timekeeping mechanisms for tracking sleep interruptions prior to 2005). |
| | 49.  In order to be placed at Jasmine Hall's Level 4 facilities, clients must meet the following criteria: they rely upon others to perform all activities of daily living (ADL's). (California Code of Regulation, Title 22, Section 85065) | Disputed. | Plaintiff incorrectly cites California Code of Regulation Title 22 § 85065 as establishing the needs of clients at a Level 4 facility, like some at the Hall Care Homes.  Nothing in § 85065 proscribes the type of needs a Level 4 client may or may not have.  *See* Ex. I to Lee Decl. providing the Court with |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-29-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | the full text of § 85065, which Plaintiff fails to provide the court.<br><br>Moreover, while certain Hall Care Homes facilities may have such capabilities, this description is not an accurate reflection of the clients at the Hall Care Homes.  McCullough Depo. 41:2-11 ("A:  There are some clients [at Jasmine Hall Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day.<br>BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or --<br>A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-24 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently); Tetteh Decl., ¶ 10; Panares Decl., ¶ 10. |
| 50.  Clients at Jasmine Hall's Level 4 facilities require care, supervision and professionally supervised training due to deficits in self-help skills, and/or severe impairment in physical mobility and coordination, and/or severely disruptive or self-injurious behavior. (Exhibit D, ¶¶ 11-12; California Code of Regulations, Title 22, Section 85065). | Disputed. | Plaintiff incorrectly cites California Code of Regulation Title 22 § 85065 as establishing the needs of clients at a Level 4 facility, like some at the Hall Care Homes.  Nothing in § 85065 proscribes the type of needs a Level 4 client may or may not have.  *See* Ex. I to Lee Decl. providing the Court with the full text of § 85065, which Plaintiff fails to provide the court.<br><br>Moreover, this purported undisputed material fact is disputed to the extent it purports to describe any actual clients |

LAW OFFICES<br>
**Allen Matkins Leck Gamble**<br>
**Mallory & Natsis LLP**

707638.05/SF

-30-

Case No.  2:05-CV-1306-GEB-KJM<br>
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | at Hall Care Homes.  There is no such personal knowledge provided.<br><br>Hall Care Homes clients are high-functioning.  Dr. Hall Decl. ¶ 11 ("Hall Care Homes' clients rarely stayed home during the day…[the] clients are away, such as at work, at program, visiting boyfriends/girlfriends, friends, family, or at other programs.  Hall Care Home clients are very high functioning.  Hall Care Homes' clients are not present at all the homes all the time.");<br>McCullough Depo. 41:2-11 ("A:  There are some clients [at Jasmine Hall Level 4 care homes] that don't go to program.  They're higher-functioning and leave the facility during the day.<br>BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or --<br>A.  No, they just go hang out.  Whatever they want to do.  They're higher-functioning."); 43:21-24 ("All my clients are high-functioning");<br>Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently);<br>Tetteh Decl., ¶ 10; Panares Decl., ¶ 10. |
| 51.  Many of the clients at Jasmine Hall's Level 4 facilities have behavioral deficits and/or excesses which are so severe that they prevent the clients' participation in activities of daily living and from being placed in other residential facilities, and require a "highly-structured | Disputed. | Plaintiff cites to Alta Regional Center's general orientation manual to support its proposition regarding actual clients at Hall Care Homes.  This handbook fails to address any actual clients at Hall Care Homes.  There is no such personal knowledge provided.<br><br>Hall Care Homes clients are high |

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | environment". (Exhibit Z, Residential Vendor Orientation, Alta California Regional Center Model Service Levels, at 1.) | | functioning.  Hall Care Homes clients are high-functioning.  Dr. Hall Decl. ¶ 11 ("Hall Care Homes' clients rarely stayed home during the day…[the] clients are away, such as at work, at program, visiting boyfriends/girlfriends, friends, family, or at other programs.  Hall Care Home clients are very high functioning.  Hall Care Homes' clients are not present at all the homes all the time.");  McCullough Depo. 41:2-11 ("A:  There are some clients [at Jasmine Hall Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day. BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or -- A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-24 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently); Tetteh Decl., ¶ 10; Panares Decl., ¶ 10. |
| | 52.  Level 4 clients require "enriched staffing", including staff intervention in a predictable manner due to the "challenging" needs of the clients. (Exhibit Z at 20.) | Disputed. | Plaintiff cites to Alta Regional Center's general orientation manual to support its proposition regarding actual clients at Hall Care Homes.  This handbook fails to address any actual clients at Hall Care Homes.  There is no such personal knowledge provided. Hall Care Homes clients are high functioning.  Hall Care Homes clients are high-functioning.  Dr. Hall Decl. ¶ |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-32-
Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | 11 ("Hall Care Homes' clients rarely stayed home during the day…[the] clients are away, such as at work, at program, visiting boyfriends/ girlfriends, friends, family, or at other programs.  Hall Care Home clients are very high functioning.  Hall Care Homes' clients are not present at all the homes all the time.");  McCullough Depo. 41:2-11 ("A:  There are some clients [at Jasmine Hall Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day. BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or -- A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-24 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently); Tetteh Decl., ¶ 10; Panares Decl., ¶ 10. |
| 53.  The Level 4 client profile is described as: severe limitations of the basic Activities of Daily Living (ADL); severe behaviors, aggression to self/others, restiveness, tantrum, property destruction; AWOL; self-injurious; severe behaviors which prevent participation in ADL and community involvement. (Exhibit Z at p. 20.) | Disputed. | Plaintiff cites to Alta Regional Center's general orientation manual to support its proposition regarding actual clients at Hall Care Homes.  This handbook fails to address any actual clients at Hall Care Homes.  There is no such personal knowledge provided.<br><br>Hall Care Homes clients are high-functioning.  Hall Care Homes clients are high-functioning.  Dr. Hall Decl. ¶ 11 ("Hall Care Homes' clients rarely stayed home during the day…[the] |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-33-
Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | | | clients are away, such as at work, at program, visiting boyfriends/ girlfriends, friends, family, or at other programs. Hall Care Home clients are very high functioning. Hall Care Homes' clients are not present at all the homes all the time."); McCullough Depo. 41:2-11 ("A: There are some clients [at Jasmine Hall Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day. BY MS. COPLICK: Q. Do they go to a sheltered workshop or -- A. No, they just go hang out. Whatever they want to do. They're higher-functioning."); 43:21-24 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients); 15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently); Tetteh Decl.,¶ 10; Panares Decl.,¶ 10. |
| | 54. At Level 4(i), this client behavior profile is described as including: breaking windows, tearing clothing, destroys furniture, customary pattern of severe property damage, frequency of once a month; client actively attempts to leave, many require alarms on doors; client's cognitive level means he would do unsafe things such as getting into traffic, serious endangerment; self: injurious behavior includes biting self, inflicts serious injury to self requiring medical attention, ER | Disputed. | Plaintiff cites to Alta Regional Center's general orientation manual to support its proposition regarding actual clients at Hall Care Homes. This handbook fails to address any actual clients at Hall Care Homes. There is no such personal knowledge provided.<br><br>Hall Care Homes clients are high-functioning. Hall Care Homes clients are high-functioning. Dr. Hall Decl. ¶ 11 ("Hall Care Homes' clients rarely stayed home during the day…[the] clients are away, such as at work, at program, visiting |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-34-

Case No. 2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Whether Disputed for Purposes of Summary Judgment Motion | |
|---|---|---|
| **Purported Undisputed Fact** | | **Basis** |
| visits, etc, on an ongoing frequent basis. (Exhibit Z at p. 20-22.) | | boyfriends/girlfriends, friends, family, or at other programs.  Hall Care Home clients are very high functioning.  Hall Care Homes' clients are not present at all the homes all the time."); McCullough Depo. 41:2-11 ("A:  There are some clients [at Jasmine Hall Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day. BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or -- A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-46:2 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients); 15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently); Tetteh Decl.,¶ 10; Panares Decl.,¶ 10. |
| 55.  Some of the client behaviors that Jasmine Hall care aides have been required to handle during the relevant time period include:<br><br>a)    A client had urinary incontinence averaging 4.8 incidents per week (DEF 2200), requiring staff to document each incident, monitor his consumption of liquids before bedtime, and wake him up every night at midnight to take him to the bathroom (DEF 2195) ; care aides were required to wake up the client every night between 2 a.m. and 3 a.m., to document the | Disputed. | For this "fact," the DOL has gathered anecdotes from the data of the numerous clients of all the eight care homes for a time period of well over a thousand days -- dating back to 2002. This "fact" does not show that such situations were representative or typical, nor that any time worked was not properly compensated.<br><br>Furthermore, the DOL's characterizations of the hearsay evidence appear to take statements in isolation without referencing the context, full statements, or time involved in the incident. |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-35-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| sessions, and to `collect frequency and prescriptive analysis data re eliminating inside and outside the toilet' (DEF 2210.);<br>b) Some clients, if not watched closely, wander away, or get up at night and injure themselves. One client urinated on herself and required close attention and frequent clean-up and laundry. At night, she was at risk of burning herself by leaving her face for long periods under the hot-water tap in the bathroom, if not carefully monitored. (Lowery Decl., at ¶ 10.)<br>c) Client behaviors range from nighttime bedwetting and soiling, yelling, stealing, smearing feces, hitting others, throwing food, public masturbation, self-injury, and others. (Lowery Decl. at ¶ 8.)<br>d) Some of the training the care aides provided to clients included performing daily hygiene, requiring the employee to hold her hand over the client's hand to teach themselves how to wash themselves, or brush their teeth — "hand over hand" training. (Lowery Decl. at ¶ 8.)<br>e) While watching television, some clients yell out interruptions, get into fights, engage in obsessive behaviors, or keep asking for | | For example, the DOL cites to DEF 2098 to represent that a client needed assistance with "all of her ADLs." DOL does not provide the page this statement is taken from.  DEF 2098 states:  "Client fairly stable.  Of concern are seizures that are lasting 10 mins. on 8/14/04 and 8/21/04….Client is very good at not spending.  Her needs are few….<br>9-15-04:  Client enjoys Inalliance program.  On Mon. & Thurs. rolls silverwear @ 3-1/2 hrs per wk.  And on Fri. works at Steve's Pizza.  Works @ 7 hrs. as of 7/28/04….No reported behaviors per staff input**….Is still assisted with all her ADL's due to seizures.**<br>9-30-04:  …No noted incidents reported to Admin."<br><br>The DOL also uses DEF 2051 to characterize that staff was instructed "to monitor a client for inappropriate behavior (trying to beg for cigarettes from strangers or trading possessions for cigarettes."<br><br>A review of DEF 2051 (selected by the DOL) reflects a "Current Status" description as follows: "**In the past**, [Client] has struggled with [redacted] from participating in a work program on a consistent basis. **[Client] is currently reporting that he is feeling much better and has been able to participate in his job at Goodwill without interruptions for the past year.** [Client] becomes easily frustrated and tends to isolate himself within the care home. [Client] states |

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| an explanation of what is being said or shown on TV. (Lowery Decl. at ¶ 9.) f) A client was described as doing well with "one on one" attention from staff when upset or engaging in self-injurious behavior (DEF 1914); Client was dancing to the radio during the night, and wet herself (DEF 1932); Client needed medical treatment after she injured herself with a toothbrush in a delicate area (DEF 1932); Client didn't sleep at night but flushed the toilet constantly, went downstairs at midnight to eat and made a mess (DEF 1945); Client was agitated at night, going up and down the stairs repeatedly, wet herself requiring staff to change her clothes, twice in one night. (DEF 1945.) g) For one client, staff was tasked by the behavior consultant with tracking his hand-washing routine on a daily basis to confirm the rate of non-compliance during hand washing, "Staff should make a deal with client prior to each session and make reinforcements available." (DEF 1995); Staff was also instructed to "encourage socialization and engage in reality based conversations", and monitor for inappropriate behavior (trying to beg for | | that he would like to make more friends but his mental illness makes it difficult for him to relax and socialize. **When [Client] is less paranoid and able to interact with the community he tends to display unacceptable social behaviors such as approaching others trying to sell his possessions for cigarettes.** [Client] also experiences internal stimuli which make it difficult for him to stay focused on topic of conversation. [Client] can be resistive towards staff's direction and prompts. . . . Schedule of Services and Supports: 5.1 RSP will encourage [Client] to participate in all care home facilitated activities. *5.2 RSP will discourage [Client] to approach strangers begging for cigarettes or attempting to sell items for smokes.* 5.3 RSP will engage in reality-based conversation and will redirect all delusional statements. *5.4 RSP will encourage [Client] to take time alone in his room when he becomes frustrated or upset.* 5.5 RSP will document progress in ongoing notes." (Emphasis added.) Accordingly, the DOL's characterizations of hearsay taken from the large amount of client data and history do not appear representative or accurate. *See also* DEF 1932 (contrary to the DOL's representation, there is no reference to medical treatment or injury to delicate area in DEF 1932). Hall Care Homes residential care aides are not required to be awake, willing and able to assist clients at all hours of |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-37-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | cigarettes from strangers or trading possessions for cigarettes.) (DEF 2051); One evening entry noted: "10 pm Staff found clients' room empty, client missing, found them in the back yard drinking wine. Threatened to slap the staff." (DEF 2076); | | the night.  Dr. Hall  Decl., ¶ 21; Panares Decl., ¶ 16 ("I am able to get a good nights' sleep.  No-one bothers me when I am sleeping.  When I go to bed, I do not wake up until morning.  The clients sleep through to the morning."); G. Darwin Decl., ¶ 11 ("I do not get interrupted in my sleep by the clients. It may have occurred a few times and were short interruptions, less than 5 minutes.  I do not recall when they occur since they are rare, maybe 4 times a year."); Tetteh Decl., ¶ 18 ("I am able to get a good nights' sleep. No-one bothers me when I am sleeping. Client interruptions are rare and last 10-15 minutes.  Client interruptions are not regular.  If it occurs, I report the interruptions to the Administrator."). |
| h) | One client needed care aides "to assist with all of her ADL's" (DEF 2098); while her records showed repeated acts of self-injurious and disruptive behavior such as "Scratched her legs until bleeding, fought with staff who tried to stop her (DEF 2120); Care aides had to clean the bathroom because another client had scattered stool on the floor of the bathroom. This client then flooded it with water, mixing with the stool. Client got upset and began hitting the staff. (DEF 2127); in the evening, the client was watching TV when another client turned it off. Client started screaming and the other one grabbed her—staff had to separate them. (DEF 2131.) | | *See also*, McCullough Depo. 41:2-11 ("A:  There are some clients [at Jasmine Hall Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day. BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or -- A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-46:2 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently); Tetteh Decl.,¶ 10; Panares Decl.,¶ 10. |
| i) | Employees had to handle and gather data on identified behavioral deficiencies such as clients' running away, calling 911, threatening suicide, calling in false fire alarms, assaulting staff, talking to self (and voices) out | | |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

707638.05/SF

-38-

Case No.  2:05-CV-1306-GEB-KJN
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | loud, refusing to do personal grooming, and engaging in fights with other clients. (Glover Decl., at ¶ 12.) j) Clients often awakened and need help after 10 p.m., sometimes as a continuation of prior acting-out or AWOL behavior described, and other times clients got up to smoke a cigarette, visit the bathroom or do something to disturb others. (Glover Decl., at ¶ 19.) | | |
| | 56.  Jasmine Hall's care aides typically spend an average of 10-16 awake (or daytime) hours per day on direct client care and supervision, and behavioral management, as well as household chores such as cooking meals, doing laundry and cleaning. (Exhibits G through Q, ¶ 10; Exhibit R at ¶ 10; Exhibit S at ¶ 12; Exhibit V at ¶¶ 11-13). | Disputed. | The DOL's own evidence contradicts its purported undisputed material fact regarding the purported number of hours spend on the activities the DOL sets forth.  DOL Ex. J, ¶¶ 10-11 (Declaration by Antonio Darwin stating that he spends an average of 5 hours daily on direct client care, behavioral interaction, client charting, and household chores and has an average of 11 ½ daytime hours free when he is not required to care for and interact with clients or handle household chores"). *See also,* G. Darwin Decl., (wife of Antonio Darwin) ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("How much time I spend working varies.  I work less than 8 hours per day."); Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to spend the way I want;" "I work approximately 8 hours a day.") ; Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-39-
Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns. Sometimes I go out during the day when I want. Sometimes my co-workers go out. One co-worker attended school during the day. Sometimes I read;" "I work approximately 8 hours per day."). |
| 57.  The RCA's rarely have more than 3-5 hours where they are not actively engaged in active tasks or duties during their 16 awake hours. (Exhibits G through Q, ¶ 11; Exhibit R at ¶ 11; Exhibit S at ¶ 12; Exhibit V at ¶¶ 14-17). | Disputed. | The DOL's own evidence contradicts this purported undisputed material fact regarding the purported number of hours spend on the activities the DOL sets forth.  DOL Ex. J, ¶ 11 (Declaration by RCA Antonio Darwin stating he "rarely has more than" 11 ½ hours where he is not actively engaged in active tasks or duties during his 16 awake hours.).

*See also,* G. Darwin Decl. (wife of Antonio Darwin), ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("How much time I spend working varies.  I work less than 8 hours per day."); Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to spend the way I want;" "I work approximately 8 hours a day.") ; Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns. Sometimes I go out during the day when I want.  Sometimes my co-workers go out.  One co-worker attended school during the day. Sometimes I read;" "I work |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-40-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | approximately 8 hours per day."). |
| 58.  The RCA's have no regularly scheduled free time during their awake hours on their 24-hour duty shifts. (Exhibits G through Q at ¶¶ 11-14; Exhibit B at pp. 188-89; Exhibit R at ¶¶ 11-14; Exhibit S at ¶¶ 16-17; Exhibit V at ¶¶ 14-17) | | Dr. Hall  Decl.,¶¶ 4, 29-30 (RCAs can engage in regularly scheduled free time; among other things RCAs have attended GED classes and pursued law school coursework); Samuel Manteaw DOL Statement and Letter (Dr. Hall  Decl., Ex. A) ("though I was residing on the employer's premises, and could choose to do so 24 hours a day even on my days off, I was not on 24-hour duty. . . .I had enough time to go to campus and San Francisco for meetings and conferences during my days on duty . . . . I even had time to moderate a conference at the State Capitol in Sacramento on my duty day."); *See also* Sheila Creel ("Creel Depo") Depo. 246:11:-247:13 ("Q: And you understood that Mr. Manteaw had conducted research on a regular basis while he was on duty? Did you understand that?  A: I understood that from his letter, yes, I do.") Panares Decl., ¶ 8 ("I have a lot of free time here to spend the way I want. . . . Sometimes I go to my doctor's appointments during the morning.  I am always able to go to my doctor's appointments."); Stephenson-Minor Depo. 91:13-92:15 (Hall Care Homes accommodated the RCAs requests to go to medical appointments and to parent/teacher conferences); 122:22-123:16 (Hall Care Homes authorized RCA to attend Grant Unified High School District GED |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-41-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | | | classes that ran from 8:00 a.m. to 2:30 p.m.);  130:6-19 (during March 2005, RCA attended an office technology course more at least three times a week); 193:17-197:14 (RCA dropped off her daughter at school, which was 15 minutes away from the care home; RCA also picked up her daughter, who lived at Jasmine Hall 6, from the elementary school); *see also*, Creel Depo. 256:2-257:2 ("Q: Do you believe that taking your daughter to school in the morning and picking her up in the afternoon is personal time? A: Yes.") <br><br> McCullough Depo. 122:24-123:14 (A: Jamie Conley.  Q. Okay.  And that's almost everyday you --A. Yeah, she leaves just about every single day.  Q. And what time of day?  A. As soon as her work is done, she usually goes.  Q. All right.  And so that might be roughly what time?  A. I don't know. Sometimes she leaves as early as 9…A. It varies a lot.  She's usually gone at --three hours, or sometimes she will leave more than once.  Q. Okay. Do you ask people to call you when they're back again?  A. No."), *see also* Creel Depo. 265:15-25 (Well, do you have any reason to believe that Miss Conley does not leave the premises on a daily basis for two or three hours?  A. I don't have any reason to believe that she does not.") |
| | 59.  Clients are permitted by law to refuse to attend any program or activity during the day, and to choose instead to stay at their residential care facility. | Not disputed, but not material regarding what Hall Care Homes clients do or how | Most Hall Care Homes clients go to work or day programs.  It is rare for all clients to stay home.  Panares Decl., ¶ 7; Ybanez Decl., ¶¶ 9-10; G. Darwin Decl., ¶ 8 |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-42-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| 5 | (Exhibit U, at p. 2) | many hours RCAs work per day. | |
| 6–28 | 60.  Unannounced Visit records in Alta's files show that during each such visit made during the relevant time period, Alta documented that at least one client and direct care staff were present in each of the Jasmine Hall care homes visited during the day. (Creel Decl. at ¶ 14). | Disputed. | Disputed as to what the unauthenticated hearsay documents reflect, or what time of day the visits where made.  *See also* McCullough Depo. 41:2-11 ("A:  There are some clients [at Hall Care Homes Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day. BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or -- A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."). <br><br> DOL Ex. J, ¶¶ 10-11 (Declaration by Antonio Darwin stating that he spends an average of 5 hours daily on direct client care, behavioral interaction, client charting, and household chores and has an average of 11 ½ daytime hours free when he is not required to care for and interact with clients or handle household chores"). <br><br> G. Darwin Decl., (wife of Antonio Darwin) ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("How much time I spend working varies.  I work less than 8 hours per day."); Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to spend the way I want;" "I work approximately 8 hours a day.") ; Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns.  Sometimes I |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-43-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | go out during the day when I want. Sometimes my co-workers go out. One co-worker attended school during the day. Sometimes I read;" "I work approximately 8 hours per day."). |
| 61.  A representative sample of the Jasmine Hall Home Logs and attendance records showed that, during the day, clients were present in any given Jasmine Hall care home approximately 80% of the time at most. (Creel Decl. at ¶ 51). | Disputed that the hearsay statement of Ms. Creel takes into account all times clients leave the care home. | McCullough Depo. 41:2-11 ("A:  There are some clients [at Hall Care Homes Level 4 care homes] that don't go to program. They're higher-functioning and leave the facility during the day. BY MS. COPLICK:  Q.  Do they go to a sheltered workshop or -- A.  No, they just go hang out. Whatever they want to do.  They're higher-functioning."); 43:21-24 ("All my clients are high-functioning"); Zimmerly Depo. 73:7-23 (Level 4 clients at the Hall Care Homes do not necessarily require more care than Level 3 clients);15:21-16:3 (Two of the Level Four clients at Jasmine Hall 7 recently left to live independently); *See also*, DOL Ex. J, ¶¶ 10-11 (Declaration by Antonio Darwin stating that he spends an average of 5 hours daily on direct client care, behavioral interaction, client charting, and household chores and has an average of 11 ½ daytime hours free when he is not required to care for and interact with clients or handle household chores"). *See also*, G. Darwin Decl., (wife of Antonio Darwin) ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("How much time I spend working varies.  I work less than 8 hours per day."); Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-44-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | spend the way I want;" "I work approximately 8 hours a day.") ; Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns. Sometimes I go out during the day when I want.  Sometimes my co-workers go out.  One co-worker attended school during the day. Sometimes I read;" "I work approximately 8 hours per day."). |
| 62.  Jasmine Hall does not keep records of any times during each shift when employees might be relieved from all duties and responsibilities and free to engage in their own private pursuits, including times when care aides have allegedly been free to leave the premises during unpaid non sleep hours. (Creel Decl. at ¶ 35). | Disputed and legally immaterial as § 785.23 does not require an employer to keep records as proscribed by the DOL.  See Defendants' MPA in Opposition, pg. 19-20. | The DOL's citation does not support purported undisputed material fact.<br><br>Hall Care Homes keeps records and pays the RCAs consistent with federal law, including 29 C.F.R. § 785.23.  Section 785.23 states that for employees who reside on the premises, "It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted." Dr. Hall  Decl., ¶35.<br><br>Dr. Hall enters into an agreement with the employee regarding the terms and conditions of work.  The employees agree to work and live at Hall Care Homes.  Dr. Hall  Decl.,¶ 14. |
| 63.  Jasmine Hall excludes from compensation any time employees are "not busy" (Exhibit E). | Disputed. | To support this purported undisputed material fact, the DOL seeks to quote from Ex. E.  Ex. E states that regular work hours do not include time spent |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-45-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | | | engaging in personal activities and not busy. |
| | | | Hall Care Homes pays the RCAs consistent with federal law, including 29 C.F.R. section 785.23. Section 785.23 states that for employees who reside on the premises, "It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted." Dr. Hall Decl., ¶ 35. |
| | | | Samuel Manteaw DOL Statement and Letter (Dr. Hall Decl., Ex. A) ("though I was residing on the employer's premises, and could choose to do so 24 hours a day even on my days off, I was not on 24-hour duty. . . .I had enough time to go to campus and San Francisco for meetings and conferences during my days on duty and it never affected my salary . . . . I even had time to moderate a conference at the State Capitol in Sacramento on my duty day."); *See also* Creel Depo. 246:11:-247:13 ("Q: And you understood that Mr. Manteaw had conducted research on a regular basis while he was on duty? Did you understand that? A: I understood that from his letter, yes, I do."), 266:1-22. |
| | | | Panares Decl., ¶ 8 ("I have a lot of free time to spend the way I want. I regularly go out during the day when I want. Sometimes I go shopping at Goodwill. Sometimes my coworkers and I will go to Sunrise Mall. We go out for Asian food. Sometimes I go to |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-46-

Case No. 2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| 5 | | | my doctor's appointment during the morning.  I am always able to go to my doctor's appointments." |
| 6 | | | |
| 7 | | | *See also,* G. Darwin Decl., (wife of Antonio Darwin) ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("How much time I spend working varies.  I work less than 8 hours per day."); Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns.  Sometimes I go out during the day when I want.  Sometimes my co-workers go out.  One co-worker attended school during the day.  Sometimes I read;" "I work approximately 8 hours per day."). |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | 64.  Jasmine Hall excludes from compensation 8 of the 16 non-sleep hours when employees are on duty but does not identify which 8 hours are paid and which are not. (Exhibit F, Response #1) | Disputed. | Among other things, the employees enter into an agreement that they are scheduled for duty shifts of 24-hours and that not all hours at the home will be work time.  The agreement is that the employee is permitted while present at the home to engage in personal activities, such as taking meals and scheduled sleep periods of at least eight hours, and such time will not be paid.  Dr. Hall  Decl., ¶ 14. |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | Hall Care Homes pays the RCAs consistent with federal law, including 29 C.F.R. section 785.23.  Section 785.23 states that for employees who reside on the premises, "It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-47-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| | | | which takes into consideration all of the pertinent facts will be accepted." *Id.* |
| | | | All services provided by Hall Care Homes' employees is considered to be important and essential.  The RCAs do not work for 24 hours a day.  DOL Ex. J, ¶¶ 10-11 (Declaration of Antonio Darwin submitted by DOL in which Mr. Darwin states he spends an average of 5 hours daily on direct client care, behavioral interactions, client charting, and household chores, and has an average of 11 ½ daytime hours free when he is not required to care for and interact with clients or handle household chores); G. Darwin Decl., ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("My room lets me get a good night's rest. . . . How much time I spend working varies. I work less than 8 hours per day."); Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to spend the way I want;" "No-one bothers me when I am sleeping.  When I go to bed, I do no wake up until the morning;" "I work approximately 8 hours a day.  The work is not hard and I like it.") ; Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns.  Sometimes I go out during the day when I want. Sometimes my co-workers go out.  One co-worker attended school during the day.  Sometimes I read;" "I am able to able to get a good nights' sleep;" "I work approximately 8 hours per day."); |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-48-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | Tetteh Decl., ¶ 17 ("One co-worker had her 12 year old daughter stay at the home with us.  The daughter ate breakfast with us in the morning before school and came back to Jasmine Hall after school.  The little girl ate dinner with us and slept here."). Stephenson Minor Depo. 126:10-15; ("Q.  When you were working at Jasmine Hall 6, your daughter stayed with you most of the time? A.  Yes."); 136:5-7 ("Q.  Okay.  Did you take any computer courses during the time that you were employed at Jasmine Hall?  A.  Yes.  Q.  What computer courses did you take? A.  What was it?  It's called "Office Technology."); *see also*, Creel Depo. 256:2-257:2 ("Q: Do you believe that taking your daughter to school in the morning and picking her up in the afternoon is personal time? A: Yes.") |
| 65.  Jasmine Hall does not consider any time spent outside of preparing meals and performing household chores to be work. (Exhibit B, pp. 195-197) | Disputed. | Dr. Hall Depo. 160:23-25 (RCAs duties include providing care and supervision of clients). |
| 66.  Jasmine Hall does not consider the supervision of clients to be compensable work. (Exhibit B, pp. 195-197). | Disputed. | Dr. Hall Depo. 160:23-25 (RCAs duties include providing care and supervision of clients). |
| 67.  Jasmine Hall does not consider any of the RCA's idle time during their 24-hour shift as compensable even if the RCA cannot leave the care home. (Exhibit B, pp. 195-197) | Disputed. | The DOL's sole citation in support of this purported undisputed material fact does not mention "idle time."  Hall Care Homes handles compensable time consistent with federal law, including 29 C.F.R. 785.23.  *Id.*  Among other |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

707638.05/SF

-49-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| | Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|---|
| 5 6 7 | | | things, time spent in normal private pursuits, such as eating, sleeping, entertaining, is not compensable time solely by the fact the employee is on the premises.  29 C.F.R. § 785.23. |
| 8 9 10 11 12 13 14 15 16 17 18 19 20 | | | *See also,* G. Darwin Decl., (wife of Antonio Darwin) ¶¶ 2-11 ("I spend about 7 hours a day working"); Ybanez Decl., ¶¶ 3-21 ("How much time I spend working varies.  I work less than 8 hours per day."); Panares Decl., ¶¶ 2-18 ("I have a lot of free time here to spend the way I want;" "I work approximately 8 hours a day.") ; Tetteh Decl., ¶¶ 5-20 ("I have free time to spend the way I want.  By 9 a.m. I am done with my work . . . . I watch my favorite soap operas such as The Bold and the Beautiful, the Young and the Restless and As the World Turns.  Sometimes I go out during the day when I want.  Sometimes my co-workers go out.  One co-worker attended school during the day.  Sometimes I read;" "I work approximately 8 hours per day."). |
| 21 22 23 24 25 26 27 28 | 68.  Jasmine Hall excludes from compensation 8 hours per day for sleep time even when RCA's do not get 8 hours of sleep time, and even when that sleep time is interrupted. (Exhibit F, Response #1; Exhibit E) | Disputed. | Dr. Hall Depo. 177:16-20 (Hall Care Homes has paid employees for interruptions of sleep time). Hall Care Homes residential care aides are not required to be awake, willing and able to assist clients at all hours of the night. Hall Decl., ¶ 21; Panares Decl., ¶ 16 ("I am able to get a good nights' sleep.  No-one bothers me when I am sleeping.  When I go to bed, I do not wake up until morning.  The clients sleep through to the morning."); G. Darwin Decl., ¶ 11 ("I do not get |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-50-
Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts

| Purported Undisputed Fact | Whether Disputed for Purposes of Summary Judgment Motion | Basis |
|---|---|---|
| | | interrupted in my sleep by the clients. It may have occurred a few times and were short interruptions, less than 5 minutes.  I do not recall when they occur since they are rare, maybe 4 times a year."); Tetteh Decl., ¶ 18 ("I am able to get a good nights' sleep.  No-one bothers me when I am sleeping. Client interruptions are rare and last 10-15 minutes.  Client interruptions are not regular.  If it occurs, I report the interruptions to the Administrator."). |

Dated:  April 30, 2007

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP


By:      /s/ Baldwin J. Lee
BALDWIN J. LEE
Attorneys for Defendants
George Hall, Estela Hall, Hall Care Homes,
Inc., and Jasmine Hall Care Homes, Inc.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

707638.05/SF

-51-

Case No.  2:05-CV-1306-GEB-KJM
Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts