LAWRENCE BREWSTER
Regional Solicitor
DAVID KAHN
Counsel for ESA Programs
**JAN M. COPLICK**, Senior Trial Attorney
Designated Counsel for Service
California State Bar Number 124503
E-Mail: Coplick.Jan@dol.gov
ANDREW SCHULTZ
Trial Attorney
Office of the Solicitor
United States Department of Labor
90 7th Street, Suite 3-700
San Francisco, California 94103

Telephone:  (415) 625-7751
Facsimile:  (415) 625-7772

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>     Plaintiff,<br><br> v.<br><br>JASMINE HALL CARE HOMES, INC., a corporation, HALL CARE HOMES, INC., a corporation, GEORGE K. HALL, an individual, and ESTELA HALL, an individual<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 2:05-cv-01306-GEB-KJM<br><br>PLAINTIFF'S REPLY to DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT<br><br>Hearing Date:  June 18, 2007<br>Courtroom: 10<br>Judge: Hon. Garland E. Burrell<br>Trial Date:  November 27, 2007 |

*Reply Memorandum for Summary Judgment*

0

## TABLE OF CONTENTS

Table of Authorities                                                                 3.

Introduction                                                                          7.

LEGAL ARGUMENT                                                                        7

    A. *Defendants Have Failed to Comply With Wage and Hour's Sleep Time Interpretive Bulletins Which, Contrary to Defendants' Reading of* Christensen, *Are Entitled to Judicial Deference.*                7

    B. *Defendants Mischaracterize The Case Law Cited by Plaintiff; Courts Have Consistently Applied DOL's Private Bedroom Requirement For Sleep Time Exemptions.*                                             10

    C. *Defendants' Cited Cases Are Inapplicable To the Facts In The Instant Case.*                                                                 13

    D. *Defendants Have Failed to Assert Any Legally Compelling Reason To Justify Their Claim That Deference Should Not Be Granted To Wage and Hour's "Private Bedroom" Requirement In the Sleep Time Exemption.*                                                            17

    E. *Defendants Have Not Provided Specific Admissible Evidence to Raise Any Triable Issues of Fact Concerning Their Failure to Comply With All of the Conditions For Exempting Sleep Time.*                   20

    F. *Defendants' Evidence on Employee Free Time Fails to Provide Sufficient Detail to Be Probative on the Issues Relevant To FLSA Hours Worked Principles.*                                        19

    G. *Defendants' Opposition Is Based On an Erroneous Legal Definition of "Work" And Is Entirely Irrelevant To The Proper Legal Standard For "Hours Worked."*                                               21

    H. *Defendants Entirely Fail To Controvert Or Explain Plaintiff's Evidence Showing That Home Log Attendance Records Reflect  At Least One Client Regularly Remaining Behind At Each Home So As To Require*

*Care And Supervision By Employees.*     24

I.   *Plaintiff's Evidence Shows All 24 Hours in RCAs' Duty Shift Were Compensable Hours Worked; Defendants Have Not Shown This Inference To Be Anything But Just And Reasonable.*     26

J. *Defendants' Failure to Track When Employees' "Paid" Duty Time Occurs Necessarily Renders Them Unable to Determine When Employees Perform Extra Work in Their Unpaid Hours.*     28

K. *Defendants Fail to Dispute, Or Even Explain, Their Use of Contradictory Work Schedules.*     29

L. *Defendants Proffer Insufficiently Detailed Or Supported Evidence to Raise Any Genuine Disputes, Including As To Defendants' Failure To Pay For Nighttime Calls To Duty As Required By 29 C.F.R. § 785.23.*     29

M. *Defendants' Opposition Relies on Inadmissible Double-Hearsay, To Support Unwarranted Conjecture and Speculation.*     31

N. *Defendants' Argument on Willfulness Misconstrues the Relevant Law.*     34

CONCLUSION     34

## TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946)…….   21

*Amour* v. *Wantock* 323 U.S. 126, 65 S.Ct. 165 (1944)……………………   22

*Blackburn v. Kansas Elks Training Center for Handicapped, Inc.*, 40 F.Supp.2d 1270 (D.Kan. 1999.)……………………………………………..   12

*Bouchard v. Regional Governing Bd. of Region V Mental Retardation Services,* 939 F.2d 1323, 30 Wage & Hour Cas. (BNA) 711, 119 Lab.Cas. P 35,531 (8th Cir.1991) *cert denied,* 503 U.S. 1005, 112 S.Ct. 1761, 118 L.Ed 2d 424……………………………………………………………………   10

*Braziel v. Tobosa Developmental Services*, 166 F.3d 1061 (10th Cir.1999)…………………………………………………………… …12

*Central Mo. Tel. Co. v. Conwell*, 170 F.2d 641, 15 Lab.Cas. P 64,839 (8th Cir. 1948.)……………………………………………………………………14

*Chao v. Akron Insulation and Supply, Inc.*, 184 Fed.Appx. 508 (6th Cir. 2006.)………………………………………………………………….8

*Christensen v. Harris County*, 529 U.S. 576 (2000)…………………………..8

*Doff v. Brunswick Corp.*, 372 F.2d 801, 10 Fed.R.Serv.2d 1432 (9th Cir.1966); *cert. denied, Doff v. Brunswick Corp.*, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967)…………………………………………………… . 20

*Gay v. Extended Family Concepts*, 102 F.Supp.2d 449 (N.D.Ohio 2000.)….11

*General Electric Co. v. Porter*, 208 F.2d 805 (9th Cir. 1953), *cert. den.* 347 U.S. 951, 975, 74 S.Ct. 676, 98 L.Ed. 1097 (1954)…………………...….15

*Hodgson v. Barge, Waggoner & Sumner, Inc.*, 377 F.Supp. 842, 844 (M.D.Tenn.1972.)……………………………………………………………18

*Lott v. Rigby*, 746 F.Supp. 1084 (N.D.Ga.1990.)…………………………   12

*Mireles v. Frio Foods, Inc.*, 899 F.2d 1407 (5th Cir. 1990)………………..   13

*Nelson v. Alabama Institute for Deaf and Blind*, 896 F.Supp. 1108, (N.D.Ala.1995)……………………………………………………………..12

*Norita v. Northern Mariana Islands*, 31 F.3d 690 (9th Cir. 2003)………… .32

*Roy v. County of Lexington*, 141 F.3d 533, 543-44 (4th Cir.1998)……….. 18

*Rural Fire Protection Company v. Hepp*, 366 F.2d 355 (9th Cir. 1966) ….. 16

*Senger v. City Aberdeen*, 466 F.3d 670, (8th Cir. 2006.)……………………  8

*Skidmore v. Swift* 323 U.S. 134, 65 S.Ct. 161 (1944)……………………… 22

*Tennessee Coal*, 321 U.S. at 598 (1944) …………………………………….22

Federal Statutes

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

Federal Rules of Civil Procedure, Rule 56(e)


Federal Administrative Regulations


29 C.F.R. § 785.7, 23


Miscellaneous Materials


*Hours Worked in Residential Care (Group Home) Establishments--Sleep Time and Related Issues—Enforcement Policy*, 1988 WL 614199, Dep't of Labor, Wage and Hour Div. (June 30, 1988)


*Wage and Hour Field Operations Handbook*, § 31b18

INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56-260 of the Local Rules of Court, Plaintiff Elaine L. Chao, the Secretary of Labor, United States Department of Labor, (the "Secretary"), hereby submits this reply memorandum of points and authorities in support of her Motion for Summary Judgment, and in response and answer to the Opposition Memorandum filed by Defendant Jasmine Hall Care Homes, Inc., Defendant Hall Care Homes, Inc., Defendant George Hall and Defendant Estela Hall.

ARGUMENT

A. *Defendants Have Failed to Comply With Wage and Hour's Sleep Time Interpretive Bulletins Which, Contrary to Defendants' Reading of* <u>Christensen</u>, *Are Entitled to Judicial Deference.*

It is a fact undisputed by Defendants that, with very few exceptions, they do not provide their employees with separate sleeping quarters consisting of a private bedroom.  By virtue of this fact alone, Defendants are disqualified as a matter of law from invoking the Homeworker Exemption set forth at 29 CFR § 785.23, by failing to satisfy a key condition for the use of the Homeworker Exemption in the residential care industry, long required by the Wage and Hour Administrator. As set forth in Plaintiff's moving papers, the Wage and Hour interpretation of its own Homeworker Exemption regulation has long required that employees in a residential care facility be provided a private bedroom before their sleep time can be deducted from FLSA "hours worked". *Hours Worked in Residential Care (Group Home) Establishments-- Sleep Time and Related Issues—Enforcement Policy*, 1988 WL 614199, Dep't of Labor, Wage and Hour Div. (June 30, 1988) ("1988 *Enforcement Policy*"). This private bedroom requirement has been set forth in a number of judicially-acknowledged formal interpretive bulletins, including the 1988 *Enforcement Policy* identified by Defendants for particular attack in their Opposition Brief.

Contrary to Defendants' arguments, Wage and Hour's "private

bedroom" requirement for residential care home facilities is long-standing and well-established, and entitled to significant, if not controlling, judicial deference. Further, as discussed in more detail, following,  Defendants further err in asserting in their Opposition Brief that Wage and Hour's long-standing interpretative memoranda are no longer entitled to judicial deference after the Supreme Court's ruling in *Christensen v. Harris County*, 529 U.S. 576 (2000), striking down a newly promulgated Wage and Hour interpretation.  *See Senger v. City Aberdeen*, 466 F.3d 670, (8th Cir. 2006.)

> An agency's interpretation of its own ambiguous regulation will stand so long as it is not " 'plainly erroneous or inconsistent with the regulation.' " *Rain & Hail Ins. Serv. v. Federal Crop Ins. Corp.*, 426 F.3d 976, 979 (8th Cir.2005) (quoting *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)) (quotation marks and citations omitted). The agency's interpretation in this case easily passes that test.

The "private bedroom" requirement challenged by Defendants has been consistently set forth in the Department's published interpretations of its own Hours Worked regulations at least as far back as 1981, and in particular in applying Sections 785.23 and 785.22  to the residential care industry. (See *Opinion Letter Fair Labor Standards Act* (FLSA) 1981 WL 179033 (DOL WAGE-HOUR; ) These bulletins and opinion letters interpreting the application of the Hours Worked principle to different situations have been accorded a degree of judicial deference ranging from *Chevron* to *Skidmore* deference in a number of post-*Christensen* cases.

As noted by the Sixth Circuit in the case of *Chao v. Akron Insulation and Supply, Inc.*, 184 Fed.Appx. 508 (6th Cir. 2006), these interpretive opinions on Hours Worked are compelling because they are long-standing; they derive from Interpretive Bulletin No. 13, which was originally issued in 1939 shortly after the enactment of the FLSA and were thus issued contemporaneously with the passage of the legislation; they have also been

left undisturbed by Congress in its numerous subsequent reexaminations of the FLSA, and in addition, they:

> [R]eflect the considered and detailed views of the agency charged with enforcing the FLSA and the Portal Act, are entitled to deference. See *Barnhart v. Walton*, 535 U.S. 212, 221-22 (2002) (*Chevron* deference appropriate absent notice-and-comment rulemaking in light of "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given to the question over a long period of time); cf. *Skidmore*, 323 U.S. at 140 (Administrator's FLSA interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance").
> *Chao v. Akron Insulation and Supply, Inc.*, *Id*, at 508.

As cited in detail in Plaintiff's moving papers, Wage and Hour's interpretive memoranda on Hours Worked in the residential care industry, including the 1988 *Enforcement Policy*, expressly disallow the use of the Homeworker Exemption where employees must share a bedroom, as at Jasmine Hall.  Defendants' incorrectly assert in their Opposition Brief that the "private room" requirement does not clearly prohibit rooms shared between staff members; in fact, this point is expressly addressed in Wage and Hour's 1988 *Enforcement Policy*, which defines  "private quarters" as meaning "living quarters that are furnished; are separate from the 'clients' **and from any other staff members.**" [Emphasis added].

Further, the 1988 *Enforcement Policy* expressly addressed the insufficiency of the style of quarters which are undisputedly provided by Defendants to the overwhelming majority of their employees, namely a single room shared by up to four employees, without any barriers or screens between them for privacy;

> The amenities and quarters must be suitable for long-term residence by individuals and must be similar to those found in a

typical private residence or apartment, rather than those found as dormitories, barracks, and short-term facilities for travelers.

The Plaintiff does not disparage in any way the sleeping quarters provided by Defendants to their employees; the shared rooms appear to be clean, presentable and decent.  Plaintiff's only point is that, by virtue of their relative close quarters and lack of privacy, the accommodations provided by Defendants more closely resemble "dormitories" or "barracks," rather than a private room separate from the clients and "from any other staff members." Accordingly, such quarters do not satisfy the long-standing requirements for deduction of sleep time under 29 CFR § 785.23 and, on this ground alone, Plaintiff's Motion for Partial Summary Judgment should be granted.

B.  *Defendants Mischaracterize The Case Law Cited by Plaintiff; Courts Have Consistently Applied DOL's Private Bedroom Requirement For Sleep Time Exemptions*

At page 12 of their brief, Defendants erroneously assert that none of the cases cited by Plaintiff adopt the DOL's definition of "private quarters" or DOL's position that shared rooms are not "private quarters."  Defendants' claim is wholly incorrect:  in numerous reported cases, including those cited by Plaintiff and those excerpted below, courts have applied the "private room" criteria in assessing compensability of sleep time.  Moreover, in a number of reported cases, including *Bouchard, infra,* the lack of a private room has been expressly held to be a determining factor in the Court's decision to award back pay for sleep time improperly deducted.  Significantly, Defendants fail to cite any authority at all in support of their proposition, namely that a shared employee bedroom could constitute "private quarters" or adequate sleeping facilities for purposes of 29 CFR § 785.23.

Defendants also incorrectly summarize the holding in *Bouchard v. Regional Governing Bd. of Region V Mental Retardation Services,* 939 F.2d 1323, 30 Wage & Hour Cas. (BNA) 711, 119 Lab.Cas. P 35,531 (8th

Cir.1991) *cert denied,* 503 U.S. 1005, 112 S.Ct. 1761, 118 L.Ed 2d 424, at page 11 of their brief, where they erroneously claim that "*Bouchard,* which did not involve the single-occupant rule (contrary to DOL's citation to the case), in fact specifically rejected the DOL's 1988 Enforcement Policy."

In fact, the *Bouchard* court expressly applied DOL's private room requirement as one of the two determinative factors for its holding:

> Thus, it is clear to us that Region V acted in good faith conformity with the regulations and the Department's February 1981 letter ruling so long as it provided LSTs with a separate sleeping room *and* the LSTs got at least five hours sleep per night, which § 785.22(b) of the regulations defines as "an uninterrupted night's sleep." (*Emphasis in the original.*) *Bouchard* at 1331.

Moreover, in *Bouchard,* one employee's lack of a private sleeping room was expressly held to be the basis for denying the deductibility of his Sleep Time.  As noted at page 1334 of the decision:

> *Gary Sexton*:  This former Weekend LST testified that he was *never* afforded a private sleeping room at the group home at which he worked, which Region V stopped using in early 1989… Region V did not rebut Sexton's testimony that he was never afforded a private room during his employment as a Weekend LST.  Region V's Section 259 good faith defense was based upon Department letter rulings that **uniformly required** that LST's be furnished **private sleeping quarters**.
>
> **Region V knew of this requirement and failed to comply with it at the group home where Exton worked.  Therefore, as to Sexton, we affirm the district court's decision that all sleep time was compensable under FLSA,** that Region V failed to prove the Section 259 defense, but that liquidated damages should not be awarded. [Emphasis added]
>
> *Bouchard, Id.* at 1334, FN 12.

Defendants similarly misread—or miscite to—the case of *Gay v. Extended Family Concepts*, 102 F.Supp.2d 449 (N.D.Ohio 2000).  In that

case, the District Court held that:

> An employer and its employees may agree to exempt sleep time
> from paid work time if 'adequate sleeping facilities are furnished
> by the employer and the employee can usually enjoy an
> uninterrupted night's sleep.'  29 C.F.R. § 785.23.  In this case,
> each residential building had **a private bedroom** in which
> homemakers slept, comprising "adequate facilities" under the
> regulations" and allowing the employer to deduct sleep time
> because plaintiff slept in such a **separate bedroom.**) [Emphasis
> added].

In the case of *Lott v. Rigby*, 746 F.Supp. 1084 (N.D.Ga.1990), the Court
rejected the employer's argument—similar to that made by Defendants here—
that he was permitted to deduct sleep time pursuant to an agreement with his
employee. The Court rejected this contention, noting that:  "this is only true if
the employee is on duty 24 hours or more and is **provided private quarters**
in a home-like atmosphere, or if the employee resides on the employer's
premises on a permanent basis or for extended periods of time."  *Id.* at 1089.
See also *Blackburn v. Kansas Elks Training Center for Handicapped, Inc*., 40
F.Supp.2d 1270 (D.Kan. 1999):

> More importantly, the court also finds the claims advanced by
> Blackburn must be dismissed by the court pursuant to 29 C.F.R.
> § 785.23, which provides that an employer and employee may
> make a reasonable agreement specifying working hours, where
> the employee resides on the working premises for an extended
> period of time, and that the employee is provided **private living
> quarters**."  In that case, Plaintiff was provided with her own
> bedroom; *Hultgren v. County of Lancaster*, 913 F.2d 498 (Court
> cited with approval DOL's opinion letters of 1981 and 1988, and
> concluded plaintiffs' sleeping conditions were "simply not the
> same as the environment envisioned by the opinion letters." *Id*
> at 506;) [Emphasis added]

In *Braziel v. Tobosa Developmental Services*, 166 F.3d 1061 (10th
Cir.1999) the Court noted that, while working as residential assistants,

*Reply Memorandum for Summary Judgment*                                        10

appellants **each had their own** bedrooms and often their own bathrooms…);
*Nelson v. Alabama Institute for Deaf and Blind*, 896 F.Supp. 1108,
(N.D.Ala.1995), discussing DOL's 1981 opinion letter, allowing the
deduction of sleep time for relief workers who are provided with **private
quarters** in a home-like atmosphere.

This overwhelming weight of authority in support of Plaintiff's
position—that a private room must be provided before Section 785.23 can be
used to exempt Sleep Time—stands in stark contrast to the total lack of
authority supporting Defendants' assertion that a *shared* bedroom can satisfy
the requirement for *private* quarters.

*C. Defendants' Cited Cases Are Inapplicable To the Facts In The Instant
Case*

The key cases relied upon by Defendants—many of which arose within
the Fifth Circuit—not only fail to accurately reflect the law governing this
Circuit, but were themselves distinguished by the Fifth Circuit Court of
Appeals in *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407 (5th Cir. 1990), a case
more similar to the case at bar:

> In support of its position, Frio cites several cases decided by this
> court where we found that employees were not entitled to
> compensation for all of their time spent waiting.  See *Halferty*,
> 864 F.2d at 1189;  *Brock v. El Paso Natural Gas Co.*, 826 F.2d
> 369, 374-75 (5th Cir.1987);  *Rousseau*, 805 F.2d at 1248-49.
> However, these cases present facts so distinct from those now
> before us that we find them unpersuasive.

The Court went on to explain its rulings in *Halferty* and *El Paso* by
noting that the plaintiffs in both those cases—unlike Mr. Mireles and the
Jasmine Hall employees—were employed in their homes and could spend all
their down-time with their family and in their own surroundings.
Furthermore, in both cases, plaintiffs were rarely called to duty, thus

*Reply Memorandum for Summary Judgment*                                11

providing them with substantial down time in which to enjoy their private pursuits.  The Court explained its result in *Rousseau* by noting that the barge workers rarely did any productive work after their shift ended but instead, "were free to sleep, eat, watch television, watch VCR movies, play pingpong or cards, read, listen to music, etc.' " *Id.* (quoting *Rousseau v. Teledyne Movible Offshore, Inc.*, *supra* at 1520).

> In each of these cases the plaintiffs had considerable freedom for extended periods of time during which they could pursue a variety of personal interests. This court found that the plaintiffs were not entitled to compensation for the entire time spent waiting.
>
> To the contrary, the plaintiffs in the instant case are not seeking payment for extended periods of waiting time during which they were free to watch television, relax with their families, babysit, do laundry or entertain guests. *Id.* at 1413.

The Secretary is not seeking compensation for employees of Jasmine Hall for any such periods of extended personal time—for example, the employees' two days off weekly—when they were free to pursue their personal interests.  There is no evidence beyond undocumented conclusory generalizations that any extended periods of such free time occurred with any regularity during the employees' on-duty shifts.  Even if such situations did arise from time to time, the conditions under which the care aides worked did not allow them the sort of private pleasures and freedoms described in the cases cited by Defendants.

In contrast, Jasmine Hall's employees are under the control of their employer throughout their entire shift, and are limited to the premises of the care homes overnight for the employer's benefit:  to fulfill Jasmine Hall's mandate to provide 24-hour supervision of the clients; to fulfill the necessary staff/client ratios and care hours; and to handle the actual client care issues

which arise.  Their presence on the premises was thus for Defendants' benefit, to an even greater degree than in the seminal case of *Central Mo. Tel. Co. v. Conwell*, 170 F.2d 641, 15 Lab.Cas. P 64,839 (8th Cir. 1948), in which the Eighth Circuit found such sleep time to be compensable where the employees were required to spend it on their employer's premises, rather than at their own homes:

> In any event they were required to be in the exchange ready to serve. Not only were they in readiness but at least from time to time they rendered very considerable necessary service, for which they confessedly received no compensation. They were not there for the purpose of sleep nor for any purpose of their own, but for their employer's benefit.
> …
> It is not possible to lay down any arbitrary rule as to whether time spent in waiting or even sleeping time is or is not working time. There are many attending circumstances to be taken into consideration, among them the number of consecutive hours the employee is subject to call without being required to perform active work, the extent to which he is free to engage in personal activities during periods of idleness, whether he is required to remain on or about the premises during such time, or whether he can leave word where he may be reached in the event of a call and is not required to remain in any particular place. **These employees were required to be on the employer's premises, accessible to the switchboard, and on duty. They were charged with responsibility for the proper operation of the exchanges under their charge….** We conclude that plaintiffs were on duty, performing compensable activities, during the entire eleven hours they spent at defendant's exchanges during the period involved in this action.  [Emphasis added.]
> *Central Mo. Tel. Co. v. Conwell*, *Id.* at 646-7.

The significant distinction between employees required to spend the disputed "sleep time" on the employer's premises and those who spend it in

their own homes has been well recognized within the Ninth Circuit. In the case of *General Electric Co. v. Porter*, 208 F.2d 805 (9th Cir. 1953), *cert. den.* 347 U.S. 951, 975, 74 S.Ct. 676, 98 L.Ed. 1097 (1954), in reaching its conclusion that the shift sleep time of privately employed community firemen should be compensated, the Ninth Circuit placed particular emphasis on the fact that the firemen, who were on duty and subject to calls all during the sleeping times, did not reside permanently at the fire station. In other words, like many of Jasmine Hall's employees, the employees had other homes but were required to spend nights on the employer's premises, for the employer's benefit. In its decision, the Court stated:

> We have examined Interpretive Bulletin No. 13 of the Administrator of the Wage and Hour Division of the Department of Labor and find nothing therein inconsistent with our conclusion that in the instant case sleeping time was compensable. The examples given by the Administrator where waiting time is not properly counted as work time are quite different from the facts of this case. An operator of a small telephone exchange where the switchboard is in her home is not entitled to compensation for sleeping time. *The difference between living and sleeping in one's home and sleeping in a fire station dormitory is apparent.* The Administrator may be quite correct in excluding sleeping hours of a pumper at a stripper well, or a watchman of a lumber camp who are on duty twenty-four hours but who make their homes on their employer's premises. *Unlike the pumper or the watchman at the lumber camp, the firemen do not maintain homes on the employer's premises but are required to leave their homes and sleep at the fire stations.* [Emphasis added].*Id at 860.*

The continuing relevance of this factor within the Ninth Circuit was reaffirmed in *Rural Fire Protection Company v. Hepp*, 366 F.2d 355 (9th Cir. 1966) and again, on facts closer to those at bar, in *Kelly v. Ballard,* 298 F.Supp. 1301 (S.D.Cal. Apr 24, 1969.)

[I]n the instant case, the parties have stipulated that the

plaintiffs did not reside permanently at the ambulance stations, even though eating and sleeping facilities existed for on-duty needs (Parties' Agreed Statement of Facts, pg. 2).

Thus, considering the nature of the plaintiffs' duties, *it must be concluded that they were engaged to wait and that their compensation included the waiting time on a twenty-four hour basis as well as the tasks which they were called upon to perform.* Here, as stipulated by the parties, the plaintiffs were required to remain on call at the station or near the ambulance on a twenty-four basis while on duty. Their use of the eating and sleeping facilities was primarily for the benefit of their employer. As stated in *General Electric Co.*, supra, 'the sleep allowed was a fitful one at best, which might be said to have been with one eye open in anticipation of the moment they would be called upon to jump to the response of an alarm.' [Emphasis added].

*Kelly v. Ballard, Id.* at 1308.

D. *Defendants Have Failed to Assert Any Legally Compelling Reason To Justify Their Claim That Deference Should Not Be Granted To Wage and Hour's "Private Bedroom" Requirement In the Sleep Time Exemption.*

Defendants have failed to articulate any cogent reason why the Court should refuse to defer to DOL's interpretation requiring that a private room be provided under the Homeworker Exemption in 29 C.F.R. § 785.23. Defendants make the wild claim that this requirement would require each employee be provided a separate bedroom which, as a small operation, they could not do.

Defendants' assertion is patently incorrect.  Employees (or a married couple together) need only be provided a separate bedroom if the employer chooses to staff its facilities by having employees spend 24-hour shifts on the premises, yet still wishes to avoid paying sleep time.  Alternatively, Defendants can choose to retain their current bedroom structure, together with their current staffing structures, and pay for sleep time.  Numerous other

options are also available to Defendants, including implementing various staffing schedules recommended by ANCOR, the leading industry trade association[1], and which schedules are used by other residential care providers to minimize overtime costs.   See Exhibit A to Creel Supplemental Declaration, filed herewith.

Defendants also suggest, derisively, that there are various moralistic or discriminatory reasons behind the Department's private room requirement, contrary to the judicially recognized history of Wage and Hour's 1981 and 1988 Memoranda (see *Bouchard*, *supra*, at 1328).  If Defendants choose to staff their business by requiring employees to remain on the premises at night in a shared bedroom, Plaintiff has no objection on any grounds, so long as time spent in this manner is counted as FLSA hours worked.

Plaintiff's only objection arises when Defendants seek to avoid proper payment of those employees' on-duty time by hiding behind a regulation expressly limited to those employers who provide private bedrooms.

E. *Defendants Have Not Provided Specific Admissible Evidence to Raise Any Triable Issues of Fact Concerning Their Failure to Comply With All of the Conditions For Exempting Sleep Time.*

The evidence offered by Defendants in support of their Opposition fails to meet their applicable burden of proof on every one of the conjunctive conditions required before an employer can invoke the Secretary's regulations to avoid paying their employees for all hours spent on the premises, including sleep time.  Decades of cases decided under the FLSA have held that such failure to carry the Employer's burden of proof on one such condition alone is fatal; the Defendants are not entitled to disguise the weaknesses in their evidence by combining it to be weighed in the aggregate.  Rather, the putative

---

[1]   ANCOR was formerly known as the National Association of Private Residential Resources ("NAPRR"), an association of agencies that provide community-based residential support services to some 40,000 mentally retarded and developmentally disabled persons, and who have been active in obtaining applicable interpretative bulletins from Wage and Hour. *Bouchard*, supra, at 1329.

evidence proffered by Defendants must be analyzed separately under each requisite conjunctive condition and in light of the substantive FLSA law, which reveals its insufficiency.

To be entitled to an exemption, an employer must demonstrate that its employees meet every aspect of the definition for an exempt employee. *Hodgson v. Barge, Waggoner & Sumner, Inc.*, 377 F.Supp. 842, 844 (M.D.Tenn.1972) (*Emphasis added*.) This same standard of proof is required of an employer's claimed entitlement to apply the sleep time "exemption," for every conjunctive element of the test. *Roy v. County of Lexington*, 141 F.3d 533, 543-44 (4th Cir.1998).

Defendants have failed to meet the requisite burden of proof in order to exempt employee sleep and meal time—much less 16 hours out of every 24 each shift—under 29 C.F.R. § 785.23, as discussed in more detail following. Accordingly, all the employees' on-duty shift time must, as a matter of law, be held compensable.

\\

F. *Defendants' Evidence on Employee Free Time Fails to Provide Sufficient Detail to Be Probative on the Issues Relevant To FLSA Hours Worked Principles.*

Defendants' evidence filed in support of their Opposition purports to create triable issues of material fact—including as to whether employees have free time during the day—yet fails to correctly identify Plaintiff's position or the applicable legal principle or to provide sufficient detail to permit assessment of Defendants' assertions under the applicable Hours Worked principles.  As such, Defendants' evidence fails to create a genuine dispute as to any of the material facts relied upon by Plaintiff; Defendants' declarations fail to provide those details which are directly relevant and necessary in order to make legal determinations as to whether time spent constitutes FLSA Hours Worked.

One glaring example is Defendants' assertion, at page 10, line 10 of their brief, that Plaintiff's position is premised upon her claim that RCAs "*never* have complete freedom from all duties" during their unpaid time.  This statement significantly misstates both Plaintiff's factual assertion and her legal position; Plaintiff does not assert the negative as claimed.  Instead, Plaintiff asserts that Defendants are obligated to prove the converse, under the terms of 29 C.F.R. § 785.23, namely that the employees have complete freedom from such duties during their eight unpaid daytime hours per shift, yet the evidence clearly shows that they do not.

An example of Defendants' failure to provide sufficient details relevant to the FLSA principles is found in their general statements that employees can spend time watching TV or reading.  Without more details, these statements do not permit any meaningful analysis as to whether the employee is "engaged to wait" or otherwise, as discussed in more detail, following.  The details missing from Defendants' factual assertions, rendering them without probative value, include whether or not the employee is required to remain on the premises, whether clients are present or otherwise during these periods, whether the employee has any residual or other obligations, the frequencies of interruptions by calls to duty, whether the time period counts towards the client/staff ratio or weekly direct care hours, and the length, frequency and predictability of such periods.  Defendants have not met their burden of proof that their employees had complete freedom.

Defendants' proffered evidence of alleged employee freedom off the premises is equally general, nonspecific, unquantified, and devoid of those details which would reveal whether employees were regularly relieved of all duties and free to leave the premises for their own personal pursuits during their unpaid hours each shift, as a threshold requirement for the application of Section 785.23.

Given that Defendants bear the burden of proving their compliance with the conjunctive requirements of 29 C.F.R. § 785.23, the evidence they tender in support of their Opposition is insufficiently specific to create a genuine issue as to any material fact and defeat Plaintiff's Motion for Partial Summary Judgment.  As noted by the Ninth Circuit in *Doff v. Brunswick Corp.*, 372 F.2d 801, 10 Fed.R.Serv.2d 1432 (9th Cir.1966) ; *cert. denied Doff v. Brunswick Corp.*, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967):

> Where, on the basis of the materials presented by his affidavits, the moving party, if at trial, would be entitled to a directed verdict unless contradicted, it rests upon the opposing party at least to specify some evidence to show that such contradiction is possible. (*internal citations omitted*.) The burden of coming forward with specific controverting facts shifts to the opponent. [*Internal citations omitted.*] It is his duty to expose the existence of a genuine issue which will prevent the trial from being a useless formality. 3 Barron & Holtzoff, *Federal Practice and Procedure* § 1237, at 171 (Wright ed. 1958). If he has a plausible ground of defense, he must assert it.  [*Internal citations omitted.*]

Yet Defendants offer only the most general and non-specific evidentiary statements throughout their Opposition.  Concerning their claim that employees are free  to leave the premises during their work shift, Defendants offer declarations stating the employees can go to the mall, go shopping at Goodwill, periodically attend doctor's appointments, or get Asian food (Panares Decl. at  ¶ 8), without any details about the frequency or predictability of such occurrences, and without information about any applicable restrictions.

Yet Plaintiff does not claim employees can never leave, nor that none can periodically shop at malls or get Asian food.  Instead, Plaintiff's evidence goes to the much more specific issue—not addressed by Defendants' overly general statements—that there are substantial restrictions on the employees' ability to leave the facilities during the eight unpaid daytime hours of each

shift, contrary to the express requirements of Section 785.23. Defendants'
declarations are entirely silent on the frequency and length of such absences
from the homes, and on the conditions under which they occurred, including
whether or not the employee takes clients with her, whether or not she
requests advance permission[2], and whether a replacement was obtained. In
the absence of such significant information, Defendants have failed to create a
clear and genuine dispute as to Plaintiff's evidence showing that the
employees' ability to leave, even during the unpaid hours of their day, is
subject to substantial restrictions.

G. *Defendants' Opposition Is Based On an Erroneous Legal Definition of
"Work" And Is Entirely Irrelevant To The Proper Legal Standard For
"Hours Worked."*

Defendants' insistent avoidance of the FLSA's "hours worked"
jurisprudence and regulations results in an Opposition which fails to
effectively analyze the RCA's work under the relevant legal standards.
Defendants do not dispute that their employees are on duty for the full 24
hours of each work shift. The FLSA generally requires compensation for "all
time during which an employee is necessarily required to be on the employer's
premises, **on duty** or at a prescribed workplace." *Anderson v. Mt. Clemens
Pottery Co*., 328 U.S. 680, 690-91 (1946); see also 29 C.F.R. § 785.7 (same).
This general rule reflects Congress' judgment that an employee should
generally receive compensation for all the time that he is under the direction
and control of the employer. See, *Tennessee Coal*, 321 U.S. at 598.

Yet most of Defendants' argument is founded upon the erroneous
premise that the Jasmine Hall care aides "work" no more than 8 hours per
shift, using "work" in the restricted, colloquial sense of being only physical

---

[2]   See, for example, the attached Declaration of former employee Rebecca Arreola, who states under oath
that she was disciplined for leaving for a short period without advance permission to attend a Mother's Day
dinner with her family, and appends a disciplinary note from Jasmine Hall.

and assigned tasks.  In doing so, Defendants' argument is inconsistent with and irrelevant to the applicable Hours Worked principles set forth in the landmark FLSA cases of *Amour v. Wantock* 323 U.S. 126, 65 S.Ct. 165 (1944), and *Skidmore v. Swift* 323 U.S. 134, 65 S.Ct. 161 (1944), which first held that compensable "work" under the FLSA should include on duty time which is spent primarily for the benefit of their employer, including non-active time and free time which falls within the principles of being "engaged to wait."

Although Hours Worked principles have been clearly established virtually since the inception of the FLSA, Defendants steadfastly neglect or refuse— throughout their Opposition—to employ or address the governing case law and regulations specifically addressing employees who are "on-duty" and "engaged to wait."  Although Defendants fully admit that the RCA's are on duty for 24 hours, during which period they have duties of client supervision and care, Defendants repeatedly assert that the RCA's "work" less than 8 hours per day.  On page 8 of their brief, Defendants assert that their RCA's roughly spend 8 hours or less per day performing "work," while at numerous other junctures, they claim "free time" to be inconsistent with "work."

Defendants glaringly fail to address—in their brief and in the vague declarations discussing how many hours daily the RCA's "work" entails—the employees' fundamental duties to provide client supervision and monitoring, shown by Plaintiff's evidence to be key components of RCA tasks.  This fundamental error is a fatal flaw in Defendants' defense of their putative employment agreements as "reasonable"; Defendants' argument at pages 21 and 22 of their Opposition Brief that 8 hours accurately approximates the actual time spent by RCA's in such "work" repeatedly references only the most limited definition of "work," contrary to established FLSA principles, and fails to address RCAs' supervision duties.

In addition to repeatedly failing to employ a legally relevant definition for "work" and "hours worked" under the FLSA, Defendants also fail to provide sufficient facts to conclude that any claimed employee free time is not "hours worked."  The fact that Defendants' factual assertions are insufficiently detailed to permit analysis of such claimed free time as being "engaged to wait" versus "waiting to be engaged," or that employees are completely relieved of duty and free to leave the premises, as required by 29 C.F.R. § 785.23, further demonstrates the lack of merit in Defendants' positions.

Defendants vaguely assert, for example, that employees have free time to pursue personal pursuits.  (*Opposition Brief*, p. 6.)  However, by failing to provide more details about any duties or restrictions applicable to such times, the frequency and predictability of their occurrence, and most importantly, which of these examples of free time  take place  on the facility premises, and which while clients are present.  Without such information, the assertions are too vague to have legal relevance or probative value.  Similarly, Defendants' unspecified assertions that employees have been permitted to baby-sit or entertain visitors or girlfriends during their shift[3] is not, in the absence of more information, probative of any relevant issue.

Such omission is legally fatal to all of Defendants' evidence purporting to relate to "work" hours; it fails to provide probative relevant evidence on the issues of "hours worked' under the FLSA.  In failing to address the proper substantive law concerning Hours Worked under the FLSA, Defendants' argument and evidence is devoid of legal relevance, and cannot provide a basis for denying Plaintiff's Motion.

   *H. Defendants Entirely Fail To Controvert Or Explain Plaintiff's Evidence*

---

[3]  The fact that spouses can visit a spousal inmate in prison, or share conjugal visits does not remove the distinction between imprisonment and home release.  Similarly, the fact that a child or friend visited for a period of time does not by itself change the fact that the host employees, if on-duty, are still obligated to care for and supervise clients during any visit.

*Showing That Home Log Attendance Records Reflect At Least One Client Regularly Remaining Behind At Each Home So As To Require Care And Supervision By Employees.*

Defendants have failed to tender sufficiently detailed admissible evidence to meet their burden of proving that employees are completely relieved from duties so as to be able to leave the premises, one of the conjunctive conditions required to allow application of 29 C.F.R. § 785.23.

In particular, their generalized statements from a few employees, and the generalized nonspecific hearsay statements of George Hall that employees have freedom to leave the premises, and only advise management as a courtesy, entirely fail to directly address, explain or controvert Plaintiff's evidence, submitted in her original moving papers, of the analysis made of the facilities' Client Attendance/Home Logs showing the rarity of all clients being absent from any given home. This analysis, of Defendants' own documents, revealed that, while such a generalized statement as *Most clients generally go to day programs* is apparently true, it is equally true that such attendance is far from consistent and more often than not, at least one client remains back at the care home. Plaintiff's analysis revealed that the conditions under which all clients are absent from the home, so as to completely relieve the RCA's of their care and supervision duty, occur less than 19% of the time.

Defendants admit on page 7 of their Opposition that, on occasion, some clients stay home during the daytime. Defendants go on to assert that, nevertheless, employees can still engage in personal pursuits, while restrained to the premises. Evidence of any such "freedom," however, has no legal relevance to or probative value towards meeting Defendants' burden of proving, in order to rely on 29 C.F.R. § 785.23, that employees are completely relieved of all duties and free to leave the premises.

Defendants assert on page 6, line 14, of their brief that "most clients are out of the house at work or in day programs," and cite to the declaration of

Mrs. Ibanez who states at paragraph 10, that "clients **generally** go to work or to day program." In a similar vein, Ms. Ybanez' declaration states, at paragraph 10, "that it is rare to have **all the clients home** during the day." [Emphasis added]

Plaintiff does not dispute the general assertion that "most" clients do "generally" go to work or day program, or that rarely are **all** the clients at home on the same day—those facts are neither disputed nor material.  What is material—and what Defendants have failed to controvert by their generalized statements—is the regularity of exceptions to these general rules, such that the data reveal that at least one client in each care home generally ends up staying home most days; this fact obligates the  RCA's to provide care and supervision during those days, while simultaneously rendering the possibility that such free time is very unpredictable (and thus not exempt from compensable time, in accordance with 29 C.F.R. § 785.16.)

Plaintiff's evidence on this point was substantial, consisting of unambiguous statements made under oath not only by a representative number of employees but also by former Wage and Hour Administrators, and fully corroborated by Alta visit documents and overwhelmingly by the Home Logs.

In contrast, Defendants' evidence on this point fails to create a genuine dispute because it fails to identify the conditions under which employees have left the homes—including whether clients were present, whether the employee obtained advance permission, or whether another employee was brought in as a substitute for the absent declarant.  Ms. Panares states only that she can "regularly" leave during the day without any definition of the term, and notably does not use the word "usually" in connection with this freedom, as she did in an earlier assertion.  Further, Ms. Panares admits she usually advises the Administrator as a courtesy.  Significantly, Defendants' declarations entirely fail to provide any quantitative analysis or information as

to how many employees do leave or even the number of hours in a 24-hour shift to which such "freedom" applies.

Since supervision of clients is the primary element of the RCAs' job duties, any statements about employee "freedom" while confined to the facility takes on the character of  firemen playing checkers at the firehouse— i.e., it is compensable time.  While employees on such occasions may have some time free to watch TV, they nevertheless continue to provide the care and supervision functions for which they are employed.

Defendants have failed entirely to adduce sufficiently detailed and relevant evidence in support of their generalized conclusory assertions that employees have free time when all the clients are gone at day programs; they have failed to controvert Plaintiff's detailed and substantial evidence clearly demonstrating that, most of the time, employees are not actually relieved of their obligation to provide care and supervision for clients remaining behind. Most of the time, employees cannot freely leave the care homes or, at a minimum are "engaged to wait," throughout all of the 16 daytime hours of their shift, including 8 hours which are unpaid.

Thus, Defendants' repeated but conclusory claims of such employee freedom are without legal significance or import.

I.   *Plaintiff's Evidence Shows All 24 Hours in RCAs' Duty Shift Were Compensable Hours Worked; Defendants Have Not Shown This To Be Anything But Just And Reasonable*

Defendants assert they were not required to record any of the periods of time for which they now seek to be credited as non-working periods falling within the course of each employee's 24-hour duty shift.  However, the Secretary's recordkeeping regulations require, in part, that an employer maintain accurate records for each employee of the "[**h] ours worked each workday** and **total hours worked each workweek.**" 29 C.F.R. § 516.2(a)(7). [Emphasis added]

As noted by the Sixth Circuit in *Chao v. Akron Insulation and Supply, Inc.*, *supra*;

> While acknowledging that under the FLSA, the plaintiff generally carries the burden to demonstrate that the employer is in violation of the Act, the Court in Mt. Clemens, emphasizing "the remedial nature of this statute and the great public policy which it embodies," allocated the burden as follows, where the employer has failed to maintain adequate and accurate wage and hours records:
>
> [FN21]Specifically, section 11 (c) requires that an employer "make, keep, and preserve such records of the persons employed ... of the wages, hours, and other conditions of employment" as prescribed by regulation of the Secretary. The Secretary's recordkeeping regulations require, in part, that an employer maintain accurate records for each employee of the "**[h]ours worked each workday and total hours worked each workweek.**" 29 C.F.R. 516.2(a) (7).
>
> > [W]here the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
>
> 328 U.S. at 687-88; see also *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir. 1999); *Shultz v. Tarheel Coals, Inc.*, 417 F.2d 583, 584 (6th Cir. 1969).
> *Chao v. Akron Insulation and Supply, Inc.*, *supra* at 42.

The Wage and Hour Division's Field Operations Handbook permits an employer to choose the most convenient method to track daily work hours in one of two ways, either by creating daily time records or, alternatively, using a set schedule, and keeping records of any deviations from that schedule. (*Wage*

*Reply Memorandum for Summary Judgment*

*and Hour Field Operations Handbook*, § 31b18).  Either method would have been acceptable, and either method would have permitted Defendants, were they making a *bona fide* attempt to comply with the requirements of Section 785.23, to do so.  Use of either method would have vastly simplified the issues now before the Court or even permitted the parties to avoid litigation altogether by generating a clear record of the periods of "free time" that Defendants now claim regularly existed.

Moreover, Defendants failed to dispute Plaintiff's evidence of backwages owing by identifying any errors in calculation or methodology.  Under the *Mt. Clemens* principle, Plaintiff is entitled to judgment on the quantum of backwages as a matter of law.    As stated by the Supreme Court in *Mt. Clemens*: "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11 of the Act." *Id*. at 1192-93.

*J. Defendants' Failure to Track When Employees' "Paid" Duty Time Occurs Necessarily Renders Them Unable to Determine When Employees Perform Extra Work in Their Unpaid Hours*

Defendants' failure to keep any record of when employees' duty time occurs during each shift is not merely legally significant for purposes of shifting the burden of persuasion to Defendants to disprove Plaintiff's evidence of hours worked under the authority of *Mt. Clemens Pottery*, it also manifestly demonstrates the total impossibility that Defendants could have complied with a further conjunctive condition to the application of Section 785.23, namely that employees be compensated for all work performed outside their paid daytime duty hours.  Because no daily records or schedules are kept by Defendants from which it is possible to ascertain which hours constituted each employee's paid daytime duty hours, it is not possible for

Defendants to determine when such employee performed work falling outside those hours, and compensate them accordingly.

Defendants describe with derision Wage and Hour Investigator Sheila Creel's concern that Defendants do not schedule the time of the employees' paid versus unpaid hours, nor provide them with any method to determine themselves, either in advance or during the course of each shift, which of the daytime hours of that shift represent their paid versus unpaid time. Yet Section 785.23 is clearly based upon the assumption that such paid hours are clearly defined as to their time of occurrence, and that unpaid hours are equally defined, whether by means of a set or floating schedule. Without any means of defining these periods, Defendants clearly cannot comply with Section 785.23's mandate that employees be compensated for extra work performed in their non-duty hours, yet another basis for denying Defendants' invalid attempt to claim the Homeworker exemption.

*K. Defendants Fail to Dispute, Or Even Explain, Their Use of Contradictory Work Schedules.*

Defendants do not proffer specific any admissible evidence sufficient to dispute any of the evidence in Plaintiff's motion showing that Jasmine Hall has created several different and conflicting versions of employee schedules, or that George Hall's initial representations to Wage and Hour's investigator about the schedule Defendants used—claiming that Jasmine Hall employed an employee work schedule limiting work to 8 hours daily, scheduled at particular times—were inaccurate and misleading. (*Plaintiff's Memorandum*, Creel Decl. at ¶¶ 6 -10.)

Most significantly, Defendants have not proffered any evidence or explanation of the contrary scheduling—showing 24-hour duty for each RCA for five days straight—reflected in the Direct Care Staff Schedules, and Plaintiff's representative employee testimony and testimony from former

Jasmine Hall management that these schedules reflect the actual on-duty requirements for the employees.  (*Plaintiff's Memorandum*, Creel Decl. ¶¶ 18 to 22, Exhibit 3.)

> L.  *Defendants Proffer Insufficiently Detailed Or Supported Evidence to Raise Any Genuine Disputes, Including As To Defendants' Failure To Pay For Nighttime Calls To Duty As Required By 29 C.F.R. § 785.23*

In her motion, Plaintiff provided detailed and substantial evidence in support of each key assertion, including the fact that the Jasmine Hall employees are not compensated for calls to duty during the night, or for all 8 hours if they do not receive at least 5 hours of uninterrupted sleep, contrary to the requirements of Section 785.23.  Plaintiff's evidence on this point included the sworn declarations of a representative number of employees and declarations of former supervisors, and the sworn statement of Investigator Sheila Creel that she asked Defendants for, but was not provided, time and payment records for sleep time interruption.  (*Plaintiff's Memorandum,* Creel Decl. ¶16.*)*

In purported opposition, Defendants attempt to dispute this assertion by means of skeletal and conclusory statements of George Hall, at ¶¶ 33 and 34 of his Declaration, stating that Defendants did track and pay for sleep interruptions, "as appropriate."  Leaving aside the issue of what "as appropriate" means, it should have been a simple matter for Defendants, as an employer in possession of time and payroll records, to proffer details and documents to support this vague assertion.  Defendants' total and unexplained failure to proffer more specific and direct evidence that they regularly record and pay for sleep time interruptions, including copies of such time and payroll records, must lead to the inescapable conclusion that no such records exist, and therefore, Defendants have not complied with yet another of the conjunctive conditions for invoking Section 785.23.

Defendants admit that many of their employees are required to share a bedroom yet also claim that "some have their own bedrooms," without specifying whom, or if "some" includes anyone in addition to Ms. Ybanez. Declaration of George Hall, paragraph 19.

Defendants also assert that Jasmine Hall clients are "high functioning" and allegedly require minimal actual supervision (*Opposition Brief*, pp. 3 and 4).  These vague and undocumented assertions are inconsistent with and effectively irrelevant to the fact that Defendants have contracted to provide (and be reimbursed at the substantially increased rate for) Service Level 4 obligations, including 24-hour client care and supervision. (See Exhibit B to Creel Suppl. Decl.:  *Statement of Purpose*:  Hall Care Homes/Jasmine Hall specialize in "service of developmentally disabled adults with an **intensive rating** arising from **duel or multiple disabilities associated with seizure disorders, mental illness or disruptive behavior disorders**.  Our objectives are to provide a more structured environment in a family-community setting which may be required by clients whose disabilities make them hard to place and thereby threaten their opportunities for normal integration into mainstream society." (Emphasis added.); Exhibit E to Creel Suppl. Decl., *Department of Community Care Licensing NonCompliance Conference Summary*, p. 2 stating:  "Clients are the 24 hour responsibility of the licensed ARF and clients shall be supervised at all times. Staff shall comply with the needs and services plan and IPP developed with the regional center. A plan shall be submitted to address supervision of the client that wandered away from Jasmine Hall II (sec. 80078(a))"; and Exhibit D to Creel Suppl. Decl., indicating that Hall Care Homes has been a special provider to Alta California Regional Center of penal code diversion services; such "forensic" clients may well require supervision not merely as a function of their disability level but additionally as required by court order.

Defendants attempt to vaguely deny any ongoing obligations to satisfy the terms of their licensing applications, vendorization applications and model program designs, without citing details or authority for this facially improbable proposition.

Defendants' vague statements that some direct care is performed by other personnel is insufficiently detailed or meaningful to create a genuine dispute as to Plaintiff's substantial evidence showing that Defendants fulfill these care and supervision obligations primarily through the long duty hours put in by their employees; see Exhibit C to Creel Supplemental Decl., stating the duties of a Residential Care Assistant to be: "Provision of services to residents required by law, including those services identified in the residents [sic] individual need and services plans. Monitor the care, health, and safety of residents. Prepare meals and do house cleaning, laundry and maintain building, equipment and grounds, and other duties as assigned." Defendants have not provided any probative evidence to the contrary.

Defendants' unsuccessful efforts to controvert Plaintiff's substantial evidence that Defendants are required, by state regulation, to provide more than 8 direct care staff hours per day, is limited to their assertion that the homes are not all at full capacity all the time  (*Opposition Brief*, p. 4). This argument must fail because it does not recognize or answer the fact that Plaintiff, in her moving papers, offered alternative calculations of the hours required by state regulation for each home, if operated at only partial capacity. Even those reduced figures exceeded what could be provided by the care aides working only 8 hours per day.

Defendants offer similarly vague and conclusory statements by George Hall on various points which were the subject of detailed and substantial evidence from Plaintiff and all of which, as noted earlier, is legally insufficient to create genuine disputes as to such facts.

*M. Defendants' Opposition Relies on Inadmissible Double-Hearsay, To*

*Support Unwarranted Conjecture and Speculation.*

Defendants' efforts to tender inadmissible hearsay evidence through the letter from Mr. Samuel Manteaw, and particularly George Hall's speculation about what Mr. Manteaw meant both in his letter and in striking out portions of the written interview statement, fail to provide admissible probative evidence disputing any material fact.

First, the letter from Mr. Manteaw is not based on personal knowledge of George Hall as required by Fed. R Civ. P 56(e):

> With respect to evidence submitted by affidavit, Rule 56(e) requires that the affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."
> Fed.R.Civ.P. 56(e).

Instead, the Manteaw letter and interview statement are unsworn statements made by a person other than the declarant and tendered for the truth of their contents; as such, they constitute inadmissible hearsay under Fed.R.Evid. 802.  Accordingly, all portions of George Hall's declaration which are based on these two statements are themselves entirely inadmissible under Fed. R. CivP 56(e).

As noted by the Ninth Circuit in rejecting hearsay allegations contained in declarations filed in *Norita v. Northern Mariana Islands*, 31 F.3d 690 (9th Cir. 2003):

> [I]t is impossible to evaluate potential hearsay implications of these statements without the required personal knowledge foundation; the plaintiffs could have learned this information from being present when the purported improper reductions in pay occurred, by reading business records, by speaking with the officers in question, or even by double hearsay. The plaintiffs' affidavits are thus inadequate under Rule 56(e) with respect to

the allegations of improper deductions in pay. See *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001). *Norita v. Northern Mariana Islands*, Id. at 698.

In this case, similarly, there is no way to assess the hearsay implications of Mr. Manteaw's letter or of the changes made to his written interview statement, especially in light of the fact that both were copied to his former employer[4].

Second, Mr. Manteaw's changes to his written interview statement are relatively minor in nature, leaving intact many statements fully supporting Plaintiff. Defendants apparently seek to introduce Mr. Manteaw's letter (and his deletion of the sentence "*There was no chance on the duty days that one of us could leave by ourselves and do something else*" as evidence controverting Plaintiff's assertion that RCA's could not leave when clients were present without advance notice. However, Mr. Manteaw does not actually state anything which controverts this evidence—even if Mr. Manteaw's statement and letter were admissible. Instead, Mr. Manteaw merely provides additional explanations and qualifications to his prior assertions.

Finally, because the actual changes made by Mr. Manteaw to his written statement constitute relatively minor qualifications, leaving virtually intact the essential statements in his original written statement[5], they do not in

---

[4]   Interestingly, the letter contains an unusual reference which also appears in many of Defendants' declarations, in similar language; Mr. Manteaw states that the employer provided almost every device he needed, such as "a toaster, TV, DVD, Video etc." DEF page 5908.) See Declaration of George Hall, para. 16; "Each… facility provides the employees with amenities like TVs, DVD's, videos, toasters"; Declaration of Mabel Tetteh, para. 4; "the house provides the things I need, such as a television, toaster…"; Declaration of Grace Darwin, para. 3; "The house has all the amenities that I want. The home has a toaster, TV, etc."

[5]   Indeed, rather than benefiting Defendants, the net effect of Mr. Manteaw's revised and qualified assertions is to provide further evidentiary support for each of Plaintiff's factual assertions. Mr. Manteaw confirmed that he shared a single bedroom with two other care aides, which was also the sleeping arrangement at Jasmine Hall #1 and 4; that one of the reasons he didn't bring all his personal belongings was because the room was "small for 3 people"; that Jasmine Hall management told the care aides they "must have two people available at the home"; that some clients went to day program but others didn't, and one client usually did not; that the "only time that someone didn't need to be at the house was when we took all the clients on a trip, and then minimally, the two on-duty and sometimes all three workers needed to go"; that during "[the RCA's] duty hours (i.e., when clients are at the home) we cannot take off during the day and see a movie, for

any way support the characterizations made by George Hall and his counsel that Sheila Creel deliberately sought to mislead.

   *N. Defendants' Argument on Willfulness Misconstrues the Relevant Law.*

   Plaintiff will reply to Defendants' argument regarding willfulness in Plaintiff's Opposition to Defendants' Cross-Motion for Summary Judgment, which will be filed separately.

CONCLUSION

For all of these reasons, Defendants have failed to offer any legally sufficient basis for denying Secretary's Motion for Partial Summary Judgment; Plaintiff prays that her Motion be granted.

Dated: May 29, 2007

                              JONATHAN L. SNARE
                              Acting Solicitor of Labor

                              LAWRENCE BREWSTER
                              Regional Solicitor

                              DAVID KAHN
                              Counsel for ESA Programs

                              By: \s\ *Jan M. Coplick*
                              JAN M. COPLICK
                              Senior Trial Attorney

                              ATTORNEYS FOR THE
                              PLAINTIFF

---

example." All of these statements—which fully support Plaintiff's position and are consistent with the evidence provided in Plaintiff's representative employee declarations—could have been deleted or revised by Mr. Manteaw if he felt they were inaccurate, yet were not.

*Reply Memorandum for Summary Judgment*