IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELAINE CHAO, Secretary of Labor, )
United States Department of Labor, )
                                   )       2:05-cv-1306-GEB-KJM
              Plaintiff,           )
                                   )
     v.                            )       ORDER[*]
                                   )
JASMINE HALL CARE HOMES, INC., a   )
corporation; HALL CARE HOMES,      )
INC., a corporation; GEORGE K.     )
HALL, an individual; and ESTELA    )
HALL, an individual,               )
                                   )
              Defendants.          )
_____)

Pending are Plaintiff's motion for summary judgment and/or summary adjudication on her claims under the Fair Labor Standards Act ("FLSA") and Defendants' cross-motion for partial summary judgment.

BACKGROUND

Defendant George K. Hall ("George Hall") owns and operates eight adult residential care facilities for developmentally disabled adults in Sacramento, California known as Jasmine Hall Care Homes

---

[*] This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

("Jasmine Hall").[1]  (Defs.' Opp'n to Pl.'s Statement of Undisputed Facts ("SUF") ¶ 1.)  Defendant Estela Hall ("Estela Hall") is George Hall's wife and works as an Administrator for Jasmine Hall.  (Id. ¶ 4; Defs.' Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Opp'n") at 2.)

Services for developmentally disabled adults and children are provided through a network of private, non-profit regional centers that work under contract entered under California law with the California Department of Developmental Services.  (Defs.' Opp'n to Pl.'s SUF ¶ 5.)  Alta California Regional Center ("Alta") provides these services around Sacramento, which include assessment and placement for residential non-medical care for developmentally disabled adults.  (Id. ¶ 6.)  Residential placement is made in community care facilities (such as the Jasmine Hall Care Homes), which have been licensed by the California Department of Social Services.  (Id. ¶ 7.)

Jasmine Hall employees are typically on-duty five consecutive 24-hour shifts at their assigned care homes and have two days a week off.  (Defs.' Opp'n to Pl.'s SUF ¶ 11.)  Prior to employment, George Hall enters into employment agreements with his employees that specify the employees will either permanently reside at the group homes or they will stay there at least five days a week.  (Defs.' Opp'n at 5.)  In return, the employees are provided free room, board, and medical benefits.  (Id.)

In June 2004, the Department of Labor ("DOL") initiated an investigation of Jasmine Hall concerning whether Defendants were

---

[1] The homes are operated under two companies, Defendant Jasmine Hall Care Homes, Inc. and Defendant Hall Care Homes, Inc. (Defs.' Opp'n to Pl.'s Mot. for Summ. J. at 2.)

2

violating any provision of the FLSA (29 U.S.C. §§ 201 *et seq.*) and allegedly found that Defendants were failing to compensate their employees for all hours worked. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 8.) Plaintiff subsequently filed this action to recover, on behalf of Defendants' employees, unpaid minimum wages and overtime back wages owed to them under the FLSA and to enjoin Defendants from committing future minimum wage, record-keeping, and overtime violations of FLSA. (Pl.'s Mot. at 9.)[2]

Plaintiff seeks summary judgment on the FLSA claims or, alternatively, summary adjudication on various issues related thereto. (Pl.'s Notice of Mot. for Summ. J. at 2-4.) Defendants seek summary judgment on Plaintiff's claim that Defendants' conduct was willful. (Defs.' Notice of Cross-Mot. for Partial Summ. J. at 2.)

## DISCUSSION[3]

I. Applicability of Section 785.23

The FLSA generally mandates that employers pay their workers a minimum hourly wage and overtime wages for work exceeding 40 hours a week. Bennett v. Carol's Towing, L.L.C., 2005 WL 2101002, at *2 (W.D. Mo. Aug. 31, 2005); see Gaby v. Omaha Home for Boys, 140 F.3d 1184, 1186 (8th Cir. 1998). "These standards envision workers who clock in at a specific time and work more or less continuously until they clock out." Bennett, 2005 WL 2101002, at *2.

---

[2] In particular, Plaintiff alleges that Defendants violated sections 6, 7, 11(c), 15, 16, and 17 of FLSA (29 U.S.C. §§ 206, 207, 211(c), 215, 216, and 217) for violations of, respectively, the minimum wage, overtime and mandatory record-keeping provisions and for unpaid wages and injunctive relief under FLSA. (Pl.'s Mot. at 9; see First Am. Compl. at 4-6.)

[3] The standards for summary judgment are well known and need not be repeated here.

3

Defendants argue the "homeworker's doctrine" prescribed in section 785.23 applies to the work situation at issue in this action. This doctrine "make[s] it possible to determine the compensation that [] workers [who reside on an employer's premises and are not required to work continuously] deserve under [] FLSA.'" Id. (quoting Halferty v. Pulse Drug Co., 864 F.2d 1185, 1189 (5th Cir. 1989)). Under section 785.23:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home.

29 C.F.R. § 785.23.

"The crucial insight of [section 785.23] is that - in these specific circumstances, where an employee not only works but also resides [or spends extended periods of time] on his or her employer's premises - the characterization of time for FLSA purposes need not be an all-or-nothing proposition, as it otherwise would be in the off-premises residency context." Brigham v. Eugene Water & Elec. Bd., 357 F.3d 931, 941 (9th Cir. 2004). "'It is . . . difficult to determine the exact hours worked under these circumstances,' and the parties' agreement provides a particularly important benchmark for assessing how many hours the employees actually labored." Id.

4

The parties dispute the applicability of section 785.23 to Defendants' case. (Pl.'s Mot. at 34; Defs.' Opp'n at 9.) If a genuine issue of material fact exists regarding Defendants' entitlement to invoke section 785.23, Plaintiff will not prevail on her motion for summary judgment on her FLSA claims nor on her motion for summary adjudication of the section 785.23 issue.

### A. Complete Freedom

Plaintiff argues that Defendants are not entitled to invoke section 785.23 since, "[b]y its own terms, [section] 785.23 is only applicable to employment arrangements where the employees 'may engage in normal private pursuits and thus have enough time for sleeping, entertaining, and other periods of complete freedom from all duties during which he may leave the premises for purposes of his own.'" (Mot. at 35, quoting 29 C.F.R. § 785.23.) Plaintiff contends that Defendants' employees do not have complete freedom, as described by the regulation, because they are on duty for their entire 24-hour shift, and they cannot regularly leave the facility for their own purposes since Defendants' clients require constant care and attention and because Defendants must satisfy mandatory client/staff ratios. (Id. at 35.) Plaintiff further argues that Defendants' clients require substantial nighttime supervision, and the employees were generally not getting substantial sleep. (Id. at 44.) Plaintiff also contends that Jasmine Hall supervisors do not allow the employees to leave the premises without advance permission. (Id. at 36.)

Defendants counter that their employees do have periods of complete freedom to engage in personal pursuits during their 24-hour shifts since they regularly have free time during the day to engage in their private pursuits both on and off the premises. (Defs.' Opp'n at

5

1  15.)  Specifically, Defendants argue that most clients leave the house
2  to go to work or day programs in the morning and therefore, "[a]fter 9
3  a.m., the [employees] are free to engage in their personal pursuits"
4  and they "are free to leave the facility without obtaining permission"
5  although they sometimes notify their supervisor as a courtesy. (Id.
6  at 6.)  Further, Defendants contend that their employees split up
7  their duties so that no employee is required to do everything and so
8  that the employees do not need to monitor the clients at night. (Id.
9  at 6, 7.)

10        Employers seeking to invoke section 785.23 as a methodology
11  for calculating how many hours the employees actually worked are
12  required to provide employees with "periods of complete freedom from
13  all duties." 29 C.F.R. § 785.23. In Brigham, the Ninth Circuit held
14  particular factors useful to this inquiry, such as whether the
15  employer required the employees to live on the premises; whether there
16  were excessive geographical restrictions on the employees' movements;
17  whether the frequency of calls to duty was unduly restrictive; whether
18  the on-call employee could easily trade on-call responsibilities; and
19  whether the employee had actually engaged in personal activities
20  during call-in time. Brigham, 357 F.3d at 936.

21        In this case, with the exception of the undisputed
22  requirement that employees are required to live on the premises (or at
23  least spend five consecutive days on the premises), the parties
24  present conflicting evidence on the issue whether employees are able
25  to leave the premises during the day, whether they need permission to
26  do so, the amount of free time they have during their shifts to engage
27  in personal activities, and how often (and for how long) client
28  interruptions occur at night. (Compare Decls. of Virginia Camba,

Josefa Vasquez, Rosita Daproza, Antonio Darwin, Emiliana Pilar, Priyarka, Oliver Almendras, Felicianos Almendras, Rose Mendoza, M. Pilar, Josefa Lastimosa, Valerie Lowery, and Joyce Glover (Exs. G-R, V) in Supp. of Pl.'s Mot.; <u>with</u> Ex. D (Dep. of Estela Hall), Ex. E (Dep. of Lyle McCollough), Ex. F (Dep. of Xochilt Zimmerly), Ex. G (Dep. of Stephenson-Minor) to Decl. of Baldwin J. Lee, Decls. of Grace Darwin, Evelyn Panares, Mabel Tetteh, and Constancia Ybanez in Supp. of Def.'s Opp'n.)  This conflict presents genuine issues of material fact as to whether Defendants' employees have periods of complete freedom during their 24-hour shifts.

### B. Sleeping Quarters Requirement

Plaintiff also argues that Defendants are not entitled to invoke section 785.23 since Defendants do not provide individual sleeping quarters (i.e. bedrooms) to each employee in accordance with DOL's Wage and Hour Memorandum (#88.48).  (Pl.'s Mot. at 36, 38; Pl.'s Reply at 17.)  Defendants counter that although some employees share bedrooms, DOL's Wage and Hour Memorandum does not mandate judicial deference and therefore the court need not consider it in adjudicating the applicability of section 785.23.  (Defs.' Opp'n at 10, 13.)

Regardless of whether the court gives deference to DOL's Wage and Hour Memorandum, Plaintiff has not shown that Defendants' non-compliance with the individual sleeping quarters requirement would obligate Defendants to pay their employees for all 24 hours they are on duty.  DOL's Wage and Hour Memorandum explicitly states that compliance with the individual sleeping quarters requirement will only permit employers to deduct sleep hours.  (<u>See</u> Wage and Hour Memorandum (#88.48), Ex. A to Pl.'s Reply at 24 ("In order to deduct sleep time for . . . employees, such employees must be provided private quarters

in a homelike environment.").)  This suggests that non-compliance with the individual sleep quarters requirement would only require payment of sleep hours.  Accordingly, Plaintiff has not shown that Defendants' lack of compliance with DOL's individual sleeping quarters requirement "mean[s] . . . that [Defendants'] entire [employment] agreement will be invalidated and [P]laintiff[] will be entitled to full compensation for [the entire 24 hour period during which the employees were "on-duty"]."  <u>Shannon</u>, 82 F. Supp. 2d at 433, n. 15.

### C. Employment Agreement

Plaintiff further contends that Defendants are not entitled to invoke section 785.23 since Defendants have not entered into a reasonable employment agreement with their employees for calculating hours worked.  (Pl.'s Mot. at 41.)  Defendants counter that their employees do not work the entire time they are on duty.  (Defs.' Opp'n at 6.)  Section 785.23 requires that the employer enter into a reasonable agreement with its employees.  (<u>See</u> 29 C.F.R. § 785.23.)  "The cases interpreting [section 785.23] suggest that, at a minimum, an agreement must take into account some approximation of the number of hours actually worked by the employee or that the employee could reasonably be required to work."  <u>Leever v. Carson City</u>, 360 F.3d 1014, 1019 (9th Cir. 2004).

### i. Hours Worked

Plaintiff argues that Defendants do not have a reasonable agreement with their employees for calculating hours worked.  (Pl.'s Mot. at 41.)  Specifically, Plaintiff contends that the employment agreement amounts to a policy whereby employees are only paid for 8 hours a day during their five consecutive day shifts yet they are on duty and have client responsibilities for all 24 hours and cannot

leave the home for their own purposes during this time.  (Pl.'s Mot. at 43.)  Further, Plaintiff re-asserts her argument that Defendants' employees do not have "complete freedom" under section 785.23 and also argues that given the amount of overnight supervision that Defendants' clients require, Defendants' employees are usually not getting substantial sleep.  (Id. at 42, 44.)  Plaintiff also contends that the employment agreement is unreasonable as it does not attempt to gauge the amount of time employees actually work.  (Id. at 43.)

Defendants counter that although their "employees are on 24-hour duty [they] do not work for all that time."  (Defs.'s Opp'n at 6.)  Specifically, Defendants contend that "[a]lthough [their employees] are paid for eight hours a day . . ., it is rarely necessary to perform work for even a full eight hours in any given day, much less the 16 hours per day that the DOL claims."  (Id. at 22.)  Defendants also contend that their employees get a good night's sleep and if they are disturbed during the night to care for a client, they are instructed to record the time so that they can get compensated for it.  (Id. at 5, 11.)  Accordingly, Defendants argue that their employment agreement is reasonable since, "[a]ssuming [the employees] work 40 hours per week [although they regularly work less], [they] earn between $8.65 and $10.38 per hour, plus lodging, food and medical benefits, and additional compensation for any overtime that they work or any nighttime sleep interruptions."  (Id.)  Defendants also argue that both George and Estela Hall work as staff members during the first six months of the opening of a new group home to accurately gauge the amount of hours worked.  (Defs.' Opp'n at 21.)

Genuine issues of material fact exist concerning how many hours the employees actually work, including what is expected of them

under the agreement, how much freedom the employees have to engage in personal pursuits during the day, whether the employees need advance permission to leave the premises, whether employees are able to get mostly uninterrupted sleep and when they do not, whether Defendants George or Estela Hall instructed them to record any interruptions (so that they could get paid for them), and how much knowledge, if any, Defendants George and Estela Hall have of any alleged "overtime" the employees were clocking.  (<u>Compare</u> Dep. of George Hall (Ex. B), Decls. of Virginia Camba, Josefa Vasquez, Rosita Daproza, Antonio Darwin, Emiliana Pilar, Priyarka, Oliver Almendras, Felicianos Almendras, Rose Mendoza, M. Pilar, Josefa Lastimosa, Valerie Lowery, and Joyce Glover (Exs. G-S, V) in Supp. of Pl.'s Mot. and Decl. of Rebecca Arreola in Supp. of Pl.'s Reply; <u>with</u> George Hall Decl. ¶ 32, Ex. C (Dep. of George Hall), Ex. D (Dep. of Estela Hall), Ex. E (Dep. of Lyle McCollough), Ex. F (Dep. of Xochilt Zimmerly), Ex. G (Dep. of Stephenson-Minor) to Decl. of Baldwin J. Lee, Decls. of Grace Darwin, Evelyn Panares, Mabel Tetteh, and Constancia Ybanez in Supp. of Defs.' Opp'n.)

### ii. Time-Recording Requirement

Plaintiff also argues that because Defendants failed to keep detailed records of the hours their employees worked, they cannot show that their agreement is reasonable and therefore they cannot invoke section 785.23.  (Mot. at 44.)  Plaintiff contends Defendants were required to keep mandatory records of hours worked and that "[s]ection 785.23 requires very specific recordkeeping."[4]  (Pl.'s Mot. at 44.)

---

[4] Section 11(c) of FLSA, 29 U.S.C. § 211(c), provides that: "Every employer . . . shall make, keep and preserve such records of the persons employed by him and of the wages, hours, and other conditions
(continued...)

1  Defendants counter that Plaintiff has failed to cite any legal
2  authority supporting this contention, arguing that "[s]ection 785.23
3  arises from the very rationale that the work performed by a worker who
4  resides at the workplace does not lend itself to easy recordkeeping."
5  (Defs.' Opp'n at 20.)
6  　　　　　Plaintiff has not shown how the detailed record-keeping
7  requirements of the FLSA apply to Defendants under section 785.23, nor
8  how Defendants violated FLSA's time-recording requirement.  The plain
9  language of section 758.23 provides, in part, that: "[i]t is . . .
10 difficult to determine the exact hours worked under [] circumstances
11 [where the employees reside on the employer's premises for extended
12 periods of time]."  29 C.F.R. § 785.23.
13 　　　　　Since there are genuine issues of material fact concerning
14 whether Defendants can invoke section 785.23 as a methodology for
15 calculating how many hours the employees actually worked within the
16 meaning of the FLSA, Plaintiff's motion for summary judgment on her
17 FLSA claims and motion for summary adjudication on the issues related
18 thereto are denied.
19 II.  <u>Willfulness</u>
20 　　　　　Both parties seek summary judgment on Plaintiff's claim that
21 Defendants willfully violated the FLSA.  (Pl.'s Mot. at 45; Defs.'
22 Mot. at 2.)  All causes of action brought under the FLSA must
23 generally be commenced within two years after the action's accrual
24 date.  29 U.S.C. § 255(a).  However, "[i]f a particular employer's
25 conduct embodies [a] 'willful violation' of [the] FLSA, 29 U.S.C. §
26 255(a) permits extension of the FLSA's standard two-year statute of
27
28 　　　[4](...continued)
and practices of employment maintained by him." (Come out).

limitations to a three-year period." <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894, 908 (9th Cir. 2003). "Willfulness" under the FLSA's three-year statute of limitations means that "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." <u>McLaughlin v. Richland Shoe</u>, 486 U.S. 128, 133 (1988).

Plaintiff argues that she is entitled to summary judgment because DOL performed investigations of Jasmine Hall in both 1998 and 2004, and that George Hall was provided with copies of the relevant portions of FLSA and of DOL's interpretative bulletins at those times. (Pl.'s Mot. at 45.) Plaintiff also argues that in 2004, investigator Sheila Creel told Defendants that they were in violation of FLSA for not paying their employees for all 24 hours of their duty period. (<u>Id.</u> at 46.) Defendants oppose Plaintiff's motion and seek summary judgment arguing that DOL's 1998 investigation did not find any violations. (Defs.' Opp'n at 26-27, Defs.' Mot. at 3-5.) Further, with regard to the 2004 investigation, Defendants argue that "the mere fact that Plaintiff informs Defendants of its opinion that the pay practices violated [] FLSA, does not in itself make the violations willful." (<u>Id.</u>)

It is undisputed that no violations of the FLSA were found during DOL's 1998 investigation of the Jasmine Hall Care Homes. (Def.'s SUF in Supp. of its Mot. ¶¶ 1,2.) Plaintiff has not shown that Defendants could not have reasonably construed the lack of violations in 1998 as a broad affirmation that their practices complied with the relevant provisions of FLSA. Therefore, there are genuine issues of material fact regarding whether Defendants willfully violated FLSA as a result of information handed to them during the

1998 investigation. As for the 2004 investigation, although "private parties must retain a right to disagree with the Secretary's interpretation of the regulations, especially here where the question is a close one," the existing factual disputes regarding the employees' work arrangements prevent the court from determining whether Defendants had a legitimate reason to disagree with the DOL and thus whether the question here is, in fact, close. <u>Brock v. Claridge Hotel & Casino</u>, 846 F.2d 180, 188, n.9 (6th Cir. 1988). Accordingly, both Plaintiff's and Defendants' motions for summary judgment on the willfulness claim are denied.

CONCLUSION

For the reasons stated, Plaintiff's motions for summary judgment and summary adjudication, and Defendants' cross-motion for summary judgment are denied.

IT IS SO ORDERED.

Dated:  July 13, 2007

```
                                   _____
                                   GARLAND E. BURRELL, JR.
                                   United States District Judge
```