1  LAWRENCE BREWSTER
   Regional Solicitor
2  DAVID KAHN
3  Counsel for ESA Programs
4  **JAN M. COPLICK, Senior Trial Attorney**
   *Designated Counsel for Service*
5  California State Bar Number 124503
6  E-Mail: Coplick.Jan@dol.gov
7  Office of the Solicitor
   United States Department of Labor
8  71 Stevenson Street, Suite 1110
9  San Francisco, California 94105

10
   Telephone:  (415) 975-4480
11 Facsimile:   (425) 975-4495

12                     UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF CALIFORNIA
13

14 ELAINE CHAO, SECRETARY OF          )CIVIL ACTION NO. 2:05-cv-01306-
                                      )GEB-KJM
15 LABOR, UNITED STATES               )
   DEPARTMENT OF LABOR,               )
16                                    )
           Plaintiff,                 )
17                                    )
       v.                             )
18                                    )PLAINTIFF'S NOTICE OF MOTION
   JASMINE HALL CARE HOMES,           )and MOTION FOR PARTIAL
19 INC., a corporation, HALL CARE     )SUMMARY JUDGMENT ON
   HOMES, INC., a corporation,        )STIPULATED ISSUE OF LAW
20                                    )And MEMORANDUM IN SUPPORT
   GEORGE K. HALL, an individual, and )
21 ESTELA HALL, an individual         )
                                      )
22                                    )
           Defendants.                )
23

24

25        Plaintiff, Secretary of Labor Elaine Chao ("the Secretary"), hereby gives

26 notice of and moves for Partial Summary Judgment pursuant to the Stipulated

27 Order of the parties signed by the Court on October 24, 2007, and files the

28 following Memorandum of Points and Authorities in support.

1
2

## I  INTRODUCTION, BACKGROUND OF THE CASE & FLSA VIOLATIONS

3

4

5

6

7

8

   The Secretary of Labor brought this case after the Wage and Hour Division ("WH") of the United States Department of Labor (""Department" or DOL") conducted an investigation into Defendants' pay practices and found that Defendants consistently underpay their Residential Care Assistant ("RCA") employees in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq.* ("the Act" or "the FLSA".)

9

10

11

   The RCAs provide direct client care at Defendants' eight Sacramento-area Jasmine Hall ("JH") group homes for developmentally-disabled adults. Defendants admit they schedule their RCA employees for 24 on-duty hours daily:

12

13

14

15

   > *Jasmine Hall employees are typically **on-duty** five 24-hour shifts at their assigned care homes and have two days a week off."*
   > Joint Pretrial Statement, Paragraph 3(d), Undisputed Facts (Emphasis added.)

16

17

18

19

   Under the FLSA and explained in more detail below, employers are generally required to pay for all "on-duty" hours (as distinguished from "on-call hours", the compensability of which depends on the facts of the case), absent an applicable exemption from the FLSA.

20

21

22

23

24

   In the instant case, Defendants do not deny that their practice is to pay their RCA employees for only 8 out of the employees' 24 on-duty shift hours.[1]  In purported justification for this practice, Defendants seek to raise as a defense the so-called "Homeworkers Exemption" set forth as part of the Department's *Hours Worked* regulations at 29 CFR 785.23.  That regulation provides as follows:

25

26

   > § 785.23 *Employees residing on employer's premises or working at home.*
   >    An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the

27

---

28

[1] See *Joint Pretrial Statement, Paragraph 3(d), Undisputed Facts*:  The Jasmine Hall workday is a consecutive 24-hour period.  The workweek begins on Sunday and ends on Saturday.
      Jasmine Hall compensates its care aide employees for 8 out of 24 duty hours in each regular shift worked at the employees' assigned care home.

time he is on the premises.  Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and **other periods of complete freedom from all duties when he may leave the premises for purposes of his own.**  It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.  This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home. (*Skelly Oil Co. v. Jackson*, 194 Okla. 183, 148 P. 2d 182 (Okla. Sup. Ct. 1944; *Thompson v. Loring Oil Co*., 50 F. Supp.  213 (W.D. La. 1943).) 29 CFR § 785.23 (Emphasis added.)

The Homeworkers Exemption makes special provision for workers who work from their own home, or who reside permanently on the employer's premises, such as a gardener who lives on-site in a gardener's cottage, or a park ranger who lives in the park, in park housing (often with a spouse and children.) Since the entire 24 hours, 7 days of  each week would otherwise be compensable under the FLSA, this regulation was designed to exclude from hours worked periods of inactivity on an employer's premises during which the employee engages in the normal routines of living, such as sleeping, eating, talking on the telephone, etc.

Defendants, however, do not meet any of the requisite Homeworkers Exemption criteria. Most significantly for the purposes of this Motion, Defendants do not deny that they failed to provide private rooms to most of their RCA employees.  Accordingly, the parties stipulated before Magistrate Gregory Hollows that this purely legal issue should be decided, prior to trial, by joint cross motions for summary decision.

The provision of such private rooms to employees has long been a threshold requirement before a residential care employer can use the Homeworker Exemption to deduct the employee's Sleep Time, as set forth consistently in numerous interpretative bulletins of the agency developed in consultation with the industry going back to 1980, as described in more detail in part F of this Motion.

*Plaintiff's Motion For Partial Summary Judgment On Stipulated Issue of Law*     - 3 -

Further, numerous Courts have applied the requirement that a private room must be provided to an employee before such a facility can deduct the employee's on-site, on-duty sleep time from compensable *hours worked,* as set forth in part E of this Motion.

Plaintiff's legal argument that the requirement of a private room is entitled to conclusive judicial deference is set forth more fully in Part D of this Motion.

## II.   DEFENDANTS ARE LEGALLY FORECLOSED FROM RELYING ON  THE HOMEWORKER DEFENSE

### A. The Homeworker Exemption Was Created By the Department As Part And Parcel Of Its *Hours Worked* Regulations, And Cannot Be Interpreted Apart From – And In A Manner Inconsistent With – Those Regulations.

The Homeworkers Exemption at 29 CFR §785.23, upon which Defendants seek to justify their actions, is but one component of, and must be considered and interpreted in context of, the general *Hours Worked* principles set forth in those regulations.

The starting point for the FLSA is that all employees must be paid at least the minimum wage for all *hours worked*. *Hours worked* is a term of art defined over many decades of FLSA jurisprudence, much of which was codified into the FLSA *Hours Worked* regulations as discussed in more detail below, and which has been further refined and made applicable to particular industries through published Interpretive Bulletins and Opinion Letters of the Department's Wage and Hour Division ("WH").

It is a principle of black letter law that *on-duty* hours constitute *Hours Worked* and must be compensated under the Fair Labor Standards Act, subject only to the few exemptions set forth in the applicable statutes.

29 CFR § 785.15 defines "On Duty" as including **all on-duty time as work time**, even though the employee is allowed to leave the premises or the job site during periods of inactivity that are usually short and unpredictable.

1   29 CFR § 785.16 defines "Off duty" time as periods in which an employee is

2   completely relieved from duty and **also which are long enough** to enable him to

3   use the time effectively for his own purpose.  The latter periods are specifically

4   defined in 29 CFR § 786.16(a) as meaning that the employee is told, **in advance,**

5   that he may leave the job and **that he will not have to return until a specified**

6   **hour**.

7   29 CFR § 785.17 further provides that an employee is working when he

8   must remain on call on or near the employer's premises (in contrast to employees

9   who are on-call in their own homes, which situation clearly provides more freedom

10  and personal amenities than for employees required to stay overnight on the

11  employer's premises.  See e.g. *G.E. v. Porter*, 208 F.2d 805 (9th Cir. 1954) *cert.*

12  *denied* 347 U.S. 975, 74 S.Ct. 787, 98 L.Ed. 1115 (1954.))

13  The effect of the foregoing FLSA provisions when taken together, as well

14  as the years of judicial decisions they represent, is to mandate payment, where the

15  worksite is the employer's premises and not the employee's home or an on-call

16  situation, for the entire on-duty shift or, in the instant case, all 24 hours of the

17  employees' shifts, absent an applicable FLSA exemption.

18  **B. As A Matter of Law, Defendants Cannot Meet Their Burden of**
    **Proving Compliance With The Private Room Requirement Of**
19  **The  Homeworkers Exemption.**

20

21  Defendants do not deny that fewer than a handful of their employees were

22  ever provided with a private room for their overnight duty shifts.  The great

23  majority of Defendants' employees are housed together in rooms shared among up

24  to four employees at a time, many in double sets of bunk beds (see, for example,

25  Declarations of former employees and supervisors Joyce Glover and Valerie

26  Lowery, filed in support of Plaintiff's previous Motion for Partial Summary

27  Judgment, copies attached hereto solely for information purposes.)

28  While the mandated sharing of such employee sleeping quarters is by itself

neither unlawful nor the subject of objection by Plaintiff, it does disqualify

1   Defendants from using the Department's Homeworkers Exemption at 29 CFR
2   785.23 to deduct those employees' Sleep Time from compensable time; the
3   Department has long required residential care facilities to provide a private room
4   before the Homeworkers Exemption can apply to exempt Sleep Time (See *Opinion*
5   *Letter Fair Labor Standards Act* (FLSA) 1981 WL 179033 (DOL WAGE-HOUR),
6   copy attached hereto for ease of reference.) *Hours Worked in Residential Care*
7   *(Group Home) Establishments--Sleep Time and Related Issues—Enforcement*
8   *Policy*, 1988 WL 614199, Dep't of Labor, Wage and Hour Div. (June 30, 1988,
9   copy attached hereto for each of reference; "1988 Enforcement Policy") as well as
10  the history of agency "private room" requirement set forth at part F of this Motion.

11          As a matter of law, the Department's long-standing *private room*
12  requirement is entitled to controlling judicial deference.  As explained more fully,
13  *intra*, the *private room* requirement constitutes an agency's interpretation of its
14  own regulation to a particular industry, is long-standing, was developed after
15  careful consideration, and was based on fundamental principles set forth in early
16  landmark FLSA cases that "sleep time" can be deducted by an employer,
17  generally, only when the employee is provided with a "home-like environment."
18  Courts at all levels have long applied the *private room* criteria, and it is
19  consistently enforced throughout the country.

20          Any other result, including that sought by Defendants, would impermissibly
21  restrict the FLSA's protection of residential care workers from abusive labor
22  conditions by overruling the Department's determination. That determination was
23  made only after a considered and thoughtful process of consultation with the
24  industry, and several decades of enforcement experience, resulting in the agency's
25  expert determination that such an objective factor private room was required in
26  order to ensure and enforce the provision to the employee of a 'home-like
27  environment" before the employee's on-duty Sleep Time is deducted at residential
28  care facilities.

1

2

3

4

Any other result would grant Defendants an unfair and entirely unjustified competitive advantage over their residential care competitors throughout the country, to whom the Department has consistently applied the *private room* interpretation in the manner Plaintiff explains here.

5

6

7

8

9

For all of these reasons, Defendants should be foreclosed from invoking the Homeworkers Exemption for any employee whom Defendants required to live and sleep, on duty, in a shared bedroom rather than the private room as required in the agency's formal published interpretations applying 29 CFR § 785.23 to the residential care industry.

10

11

C. **It is Defendants' Burden To Prove Entitlement to The Claimed Exemption, Which Must Be Construed Narrowly.**

12

13

14

The law is clear that the burden of proving entitlement to an FLSA exemption is on the Employer, and that the scope of any exemption must be construed narrowly:

15

16

17

18

19

20

> This construction comports with the well-settled rule that while terms of remedial labor legislation are to be liberally construed, exemptions in such statutes should be read narrowly. See *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir.1983); *Brennan v. Keyser*, 507 F.2d 472, 477 (9th Cir.1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975).
> *Menlo Service Corp. v. U.S.*, 765 F.2d 805, 810 (9th Cir. 1985.)

21

22

23

24

25

26

Moreover, Defendants seek to use the Homeworkers Exemption to justify excluding from compensable *Hours Worked* not just the Sleep Time permitted by the terms of the Exemption (if the Exemption applied, which it does not here), but also an additional 8 hours during the 24 hour work shift.  There is no judicial or other support for this proposition and it is contrary to the rule that exemptions from the FLSA must be construed narrowly.

27

28

\ \

\ \

\ \

*Plaintiff's Motion For Partial Summary Judgment On Stipulated Issue of Law*          - 7 -

1
2
3
4

**D. DOL's Long-Standing Interpretation of Its Homeworkers
Regulation -- As Requiring A Private Room Before Sleep Time
Can Be Deducted By Residential Care Facilities -- Warrants
Controlling Judicial Deference.**

5
6
7
8
9
10
11

The agency interpretation of the regulations it enforces (in this case, the
Homeworkers Exemption at 29 CFR 785.23) has consistently required that
employees in a residential care facility be provided a private bedroom before their
sleep time can be deducted from FLSA "hours worked".   *Hours Worked in
Residential Care (Group Home) Establishments--Sleep Time and Related Issues—
Enforcement Policy*, 1988 WL 614199, Dep't of Labor, Wage and Hour Div. (June
30, 1988; "1988 Enforcement Policy").

12
13
14
15
16

This private bedroom requirement has been consistently set forth in the
Department's published interpretations of its own Hours Worked regulations at
least as far back as 1981. These published interpretations apply Sections 785.23
and 785.22  to the residential care industry. (See *Opinion Letter Fair Labor
Standards Act* (FLSA) 1981 WL 179033 (DOL WAGE-HOUR).)

17
18
19
20
21
22
23
24
25

Wage and Hour's several formal interpretive memoranda on *Hours Worked*
in the residential care industry disallow the use of the Homeworker Exemption
where – as at Jasmine Hall -- employees must share a bedroom; the "private room"
requirement is not met when bedrooms are shared among staff members.
Significantly, the term "private" is used in DOL's 1981 and 1985 Opinion letters
in addition to the phrase "separate from clients"; if the word "private" had been
intended to mean nothing more than living quarters separate from the clients, as
Defendants are likely to suggest, the use of the additional phrase "separate from
clients" would have been entirely redundant.

26
27
28

Further, this point is expressly addressed in Wage and Hour's 1988
Enforcement Policy, which defines  "private quarters" as meaning "living quarters
that are furnished; are separate from the 'clients' *and from any other staff
members*." [Emphasis added].

1

2    The United States Supreme Court recently ruled, in the FLSA case of *Long*

3    *Island Care Homes v. Coke*, 127 S.Ct. 2339, 168 L.Ed.2d 54, 154 Lab.Cas. P

     35,298, 12 Wage & Hour Cas.2d (BNA) 1089, that the Department's FLSA

4    interpretive bulletins and memoranda are entitled to conclusive judicial deference,

5    as follows:

6        We have previously pointed out that the " 'power of an administrative
         agency to administer a congressionally created ... program necessarily
7        requires the formulation of policy and the making of rules to fill any gap left,
         implicitly or explicitly, by Congress.' " Chevron, 467 U.S., at 843, 104 S.Ct.
8        2778 (quoting Morton v. Ruiz, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d
9        270 (1974); omission in original). When an agency fills such a "gap"
         reasonably, and in accordance with other applicable ( *e.g.,* procedural)
10       requirements, the courts accept the result as legally binding. 467 U.S., at
         843-844, 104 S.Ct. 2778; *United States v. Mead Corp.,* 533 U.S. 218, 227,
11       121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).
12       …
         For all these reasons, we conclude that the Department's interpretation of the
13       two regulations falls well within the principle that an agency's interpretation
         of its own regulations is "controlling" unless " ' "plainly erroneous or
14       inconsistent with" ' " the regulations being interpreted. *Id.,* at 461, 117 S.Ct.
15       905 (quoting *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332,
         359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989), in turn quoting *Bowles v.*
16       *Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed.
         1700 (1945)). See also *Udall v. Tallman,* 380 U.S. 1, 16-17, 85 S.Ct. 792, 13
17       L.Ed.2d 616 (1965).
18
19
20
21       See also, *In re Farmers Ins. Exchange, v. Farmers Insurance Exchange,* 481

22   F.3d 1119 (9th Cir. 2007), holding that Department Opinion Letters interpreting the

23   Department's own regulations, such as those challenged by Defendants here, must

24   be granted judicial deference nothwithstanding the decision in *Christensen v.*

25   *Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621(2000), upon which

26   Defendants are expected to rely.

27       In fact, the *private bedroom* requirement was well considered, longstanding,

28   consistently enforced for decades and throughout the country, and is relied upon

     throughout the residential care industry. Accordingly, this requirement is entitled

1   to conclusive judicial deference and Defendants are foreclosed from raising the

2   Homeworker Exemption for the great majority of their RCA employees.

### E. DOL's  Interpretation That A Private Room Is Required in Order to Deduct Sleep Time in Residential Care Facilities  Has Been Consistently Followed By Courts And The Industry.

6   As noted by the Sixth Circuit in the case of *Chao v. Akron Insulation and*

7   *Supply, Inc.*, 184 Fed.Appx. 508 (6th Cir. 2006), the Department's interpretive

8   opinions on Hours Worked are compelling because they are long-standing; they

9   derive from Interpretive Bulletin No. 13 (which was originally issued in 1939

10  shortly after the enactment of the FLSA) and were thus issued contemporaneously

11  with the passage of the legislation. They have also been left undisturbed by

12  Congress in its numerous subsequent reexaminations of the FLSA.  In addition,

13  because they:

> …[r]eflect the considered and detailed views of the agency charged with enforcing the FLSA and the Portal Act, are entitled to deference. See *Barnhart v. Walton*, 535 U.S. 212, 221-22 (2002) (*Chevron* deference appropriate absent notice-and-comment rulemaking in light of "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given to the question over a long period of time"*cf. Skidmore*, 323 U.S. at 140 (Administrator's FLSA interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance").
> *Chao v. Akron Insulation and Supply, Inc., Id*, at 508.

24  Further, group homes throughout the country have relied on these long-

25  standing DOL interpretations in fashioning their facilities, operations and staff

26  scheduling for more than twenty-five years, as demonstrated in the Tenth Circuit

27  Court of Appeals decision in *Bouchard Regional Governing Bd. of Region v.*

28  *Mental Retardation Services*, 939 F.2d 1323, 30 Wage & Hour Cas. (BNA) 711,

119 Lab.Cas. P 35,531 (8th Cir.1991) *cert denied*, 503 U.S. 1005, 112 S.Ct. 1761, 118 L.Ed 2d 424:

> Region V relied upon written agency interpretations specifically addressing working conditions in the group home industry. **After considerable study of the industry**, the Department issued letter rulings that houseparents who work five day-four night schedules comparable to those of the Weekday LSTs do reside on the employer's premises for extended periods of time within the meaning of § 785.23 and therefore may be afforded, pursuant to a written employment agreement, up to eight hours of unpaid sleep time per day in **private quarters** on the employer's premises.   The Department's interpretation of its own regulation is reasonable on its face and is entitled to deference by the courts and contracting parties.
> *Bouchard*, Id. at 1330. (Emphasis added.)

In numerous other reported cases, discussed following, reviewing courts -- often expressly discussing and approving the Department's Interpretative Bulletins -- have  required the Employer to provide a "private room" before Sleep Time can deducted.

In *Braziel v. Tobosa Developmental Services*, 166 F.3d 1061 (10th Cir.1999) the Court noted that, while working as residential assistants, appellants **each had their own** bedrooms and often their own bathrooms…).  In *Nelson v. Alabama Institute for Deaf and Blind*, 896 F.Supp. 1108, (N.D.Ala.1995), the Court discussed DOL's 1981 opinion letter, and allowed the deduction of sleep time for relief workers who are provided with **private quarters** in a home-like atmosphere. *Beaston v. Scotland School For Veterans' Children*, 693 F.Supp. 234, (M.D.Pa.,1988) (The plaintiffs sleep in their **private bedroom**s and utilize private bathrooms); see also *Shannon v. Pleasant Valley* 82 F.Supp.2d 426  (W.D. Penn. 2000.)

Moreover, in a number of reported cases, including *Bouchard (*a case erroneously summarized by Defendants[2]) the employing facility's failure to

---

[2] Although the *Bouchard* court  stated  that additional elements set forth in DOL's 1988 Enforcement Policy (relating to Items 1 and 2 of the Department's 1988 Memo and thus having no bearing on the instant case, as well as

provide the requisite "private room" was expressly held to be a determining factor

in the Court's decision to award FLSA back pay to one employee.  The Court

concluded that the Employer was not entitled to deduct on-duty hours from

employee pay without providing private quarters, one of the two determinative

factors for its holding:

> Thus, it is clear to us that Region V acted in good faith conformity
> with the regulations and the Department's February 1981 letter ruling
> **so long as it provided LSTs with a separate sleeping room *and*** the
> LSTs got at least five hours sleep per night, which § 785.22(b) of the
> regulations defines as "an uninterrupted night's sleep." (*Bold- faced
> emphasis added. Emphasis using italics in the original*.)
> *Bouchard, Id.*  at 1331.

Similarly, in the case of *Gay v. Extended Family Concepts*, 102 F.Supp.2d

449 (N.D.Ohio 2000), the District Court held that:

> An employer and its employees may agree to exempt sleep time from
> paid work time if 'adequate sleeping facilities are furnished by the
> employer and the employee can usually enjoy an uninterrupted night's
> sleep.'  29 C.F.R. § 785.23.  In this case, each residential building had
> **a private bedroom** in which homemakers slept, comprising
> "adequate facilities" under the regulations" and allowing the employer
> to deduct sleep time because plaintiff slept in such a **separate
> bedroom.**) [Emphasis added].
> *Gay v. Extended Family Concepts*, Id.

In the case of *Lott v. Rigby*, 746 F.Supp. 1084 (N.D.Ga.1990), the Court

rejected the employer's argument—similar to that made by Defendants here—that

he was permitted to deduct sleep time pursuant to an agreement with his employee.

The Court rejected this contention, noting that:  "this is only true if the employee is

on duty 24 hours or more and is **provided private quarters** in a home-like

atmosphere, or if the employee resides on the employer's premises on a permanent

basis or for extended periods of time."  *Id.* at 1089.  See also *Blackburn v. Kansas*

being *dicta*; see *Shannon v. Pleasant Valley* 82 F.Supp.2d 426  (W.D. Penn. 2000.).  In its holding, the *Bouchard*
Court  applied  DOL's private room requirement from the 1998 Memorandum challenged by Defendants here.

*Elks Training Center for Handicapped, Inc.*, 40 F.Supp.2d 1270 (D.Kan. 1999):

> More importantly, the court also finds the claims advanced by
> Blackburn must be dismissed by the court pursuant to 29 C.F.R.
> § 785.23, which provides that an employer and employee may make a
> reasonable agreement specifying working hours, where the employee
> resides on the working premises for an extended period of time, and
> that the employee is provided **private living quarters**.”  In that case,
> Plaintiff was provided with her own bedroom; *Hultgren v. County of
> Lancaster*, 913 F.2d 498 (Court cited with approval DOL's opinion
> letters of 1981 and 1988, and concluded plaintiffs' sleeping conditions
> were “simply not the same as the environment envisioned by the
> opinion letters.” *Id* at 506;) [Emphasis added]

This overwhelming weight of authority in support of Plaintiff's position—
that a private room must be provided before Section 785.23 can be used to exempt
Sleep Time at residential care facilities —  stands in stark contrast to the total lack
of authority supporting Defendants' position that the *private quarters* requirement
is inapplicable to Defendants.

      **F.  The *Private Room* Requirement Is Entirely Consistent With The
          FLSA And Its Jurisprudence**

In one early *Hours Worked* case, a Court considering the compensability of
on-site Sleep Time approved, as one factor, a comparison **to the employee's
sleeping arrangements at home** (*Conwell v. Central Missouri Telephone
Company*, D.C., 74 F.Supp. 542, Id., D.C., Mo.1948, 76 F.Supp. 398, 405) and
finally determined that the test should be “whether the employee was afforded ‘a
reasonably **normal** night's sleep.' *Remisiewski v. Parodi Cigar Co. of New York,
Inc.* 1 N.J.Super. 249, 64 A.2d 93 Superior Court of New Jersey, Appellate
Division, Part A. (Feb. 16, 1949.)

Other courts, grappling with this issue in the years before the publication of
the Interpretative Bulletins challenged by Defendants, expressly recognized that
employees who were provided private bedrooms or apartments on-site could be

presumed to use the time to their own benefit, in conditions more closely approximating those at their own homes.

Thus, in the 1947 Sleep Time case of *Rokey v. Day and Zimmermann*, 8 Cir., 1946, 157 F.2d 734, 737, *cert. denied* 1947, 330 U.S. 842, 67 S.Ct. 1082, 91 L.Ed. 1288; Id., 331 U.S. 864, 67 S.Ct. 1198, 91 L.Ed. 1869, it appeared that the plaintiff had eight hours sleeping time with infrequent interruptions, and was provided with separate sleeping facilities. The Court noted that the plaintiff was '**getting sleep in the same manner as if he were normally getting sleep at his home or in a hotel**,' and ruled that his sleeping hours were properly excluded from the calculation of his working hours.

In all of these cases, the provision of private quarters was considered important by the Court in deciding that the employee could get a proper night's sleep such that his sleep time should be excluded from compensable hours worked. Similarly;

> Mr. Ramsey spends his time at night on the defendants' premises **where he has an apartment.** So far as appears from the evidence, it may fairly be inferred that he **ordinarily has a normal night's sleep, and that his time at** night is his own for purposes of relaxation and the pursuit of private activities. While there is a telephone in his apartment, there is no evidence that he is regarded as being subject to call. There is no showing that he is expected to periodically inspect the premises at night.  Under the circumstances, the time so spent at night by Mr. Ramsey is not working time within the Fair Labor Standards Act.

> *Walling v. Lippold,* 72 F.Supp.339 (D.C.Neb.1947.)

An Illinois court, applying federal FLSA law to an FLSA claim in *Bess v. Daniel*, App. 1 Dist.1976, 42 Ill.App.3d 401, 355 N.E.2d 556. Sept. 7, 1976, stated:

> The general rule to be applied to each factual situation is that sleep time may be work time if it is subject to serious interruptions or **takes place under conditions substantially less desirable than at the employee's home**.
> …Annot. 44 A.L.R.2d 870, 871.
> *Bess v. Daniel*, *Id.*  (Emphasis added.)

1
2
3
4
5
6
7
8
9

Time which an employee is mandated to spend on the employer's premises, even while "idle", is clearly of a different character than time during which the employee is free to come and go, or to spend at the employee's home, even if on call. (See *General Electric Company v. Porter, supra.*) The distinction in the amenities, privacy and degree of enjoyment available to a nonworking employee at his home versus at his employer's premises underlies many of the Sleep Time cases, such that the Courts often assess the on-site sleep facilities provided to determine to what degree they would provide employees with sleeping arrangements relatively comparable to those at home.

10
11
12
13

Thus, the Department's subsequent Interpretative Bulletins and Opinion Letters applying the Homeworkers Exemption to the residential care industry and requiring private quarters before an employee's Sleep Time can be deducted, are entirely consistent with the FLSA and Sleep Time jurisprudence.

14
15
16

### G. The History And Development of the Interpretive Bulletins Challenged By Defendants Show Careful Consideration And Industry Involvement.

17
18
19
20
21

The history and development of the Department's residential care interpretative rulings challenged by Defendants, and the long-standing *private room* requirement in particular, have been set forth at length in a number of reported court decisions.  The following provides an overview, from the *Hultgren* case:

22
23
24
25
26

> Beginning in 1980, in response to inquiries from trade associations such as NAPRR [National Association of Private Residential Facilities for the Mentally Retarded, now ANCOR[3]] the Department issued a series of letter rulings applying its regulations to the sleep time of "houseparents" at "community residences for the mentally retarded." In January 1988, the Department suspended its numerous compliance investigations of group homes around the country to develop a consistent enforcement policy. On

27
28

---

[3]   ANCOR was formerly known as the National Association of Private Residential Resources ("NAPRR"), a trade association of agencies that provide community-based residential support services to some 40,000 mentally retarded and developmentally disabled persons, and who have been active in obtaining applicable interpretative bulletins from Wage and Hour. *Bouchard, supra*, at 1329.

June 30, 1988, the Department promulgated an Enforcement Policy "refining and restating" the interpretations set forth in its earlier letter rulings.
*Hultgren v. County of Lancaster*, 939 F.2d 1323, 1328

It is commonly viewed that these interpretative bulletins were issued at the behest of and for the benefit of the residential care industry in order to broaden its opportunities to deduct Sleep Time, which otherwise would be limited by a strict application of the FLSA *Hours Worked* regulations.  As stated in *Bouchard*:

Section 785.23 of the regulations broadens the sleep time exception for an employee who resides on the employer's premises for "extended periods of time."
*Bouchard v. Regional Governing Bd. of Region Mental V Retardation Services*, 939 F.2d 1323, 30 Wage & Hour Cas. (BNA) 711, 119 Lab.Cas. P 35,531 (8th Cir.1991) *cert denied*. 503 U.S. 1005, 112 S.Ct. 1761, 118 L.Ed 2d 424.

The challenged interpretative bulletins were also drafted by DOL after substantial consideration, research, and industry involvement. ("**After considerable study of the industry**, the Department issued letter rulings that houseparents who work five day-four night schedules…") *Bouchard v. Regional Governing Bd. of Region Mental v.  Retardation Services, supra (emphasis added.)* This included  reviewing information, data, and case files provided by the trade industry group now known as ANCOR:

We have reviewed all available information, including that furnished by you and that obtained from a review of a large number of case files involving investigations of community residences under FLSA. As a result of this comprehensive review, we have concluded that, because of the special circumstances that prevail in community residences, and because relief employees perform essentially the same duties as regular full-time employees, the same "hours worked" principles should be applied to both.
1985 DOL Letter Opinion.
*Bouchard, supra, 1333.*

Significantly, from the very beginning of the Department's published bulletins interpreting Sleep Time in the residential care industry back in 1981, an

expressly stated and important factor in permitting the deduction of Sleep Time

was the provision of private quarters and a home-like environment to employees,

part of the residential care package.  As described by the Eighth Circuit in

*Hultgren,* 913 F.2d 498, 504:

> [T]wo position letters from a Deputy Administrator of the Wage and Hour
> Division [were] received by the Executive Director of the National
> Association of Private Residential Facilities for the Mentally Retarded.   A
> letter bearing the date February 3, 1981, responds to a request by the
> association for clarification on "the circumstances under which an employer
> can deduct from hours worked the time spent by house-parents sleeping at
> privately-operated community residences for the mentally retarded." After
> generally describing the schedules of both houseparents and relief
> employees, the letter further assumes "[t]he houseparents and relief staff
> sleep in **private quarters separate from the mentally retarded residents
> of the group home**."
> …
> A second letter in 1985, further clarifies for the association the position
> taken in the 1981 letter, that; the Department had authorized a departure
> from the general rules concerning sleeping time in the special case of relief
> employees who remain on the premises for at least 24 hours….provided that
> the employer and employees agree in advance to do so, and provided that no
> more than 8 hours per night (or actual, uninterrupted sleeping time, if that is
> less than 8 hours) is deducted. **We reached this conclusion because of the
> home-like environment afforded to these employees in community
> residences, with private quarters and other amenities.** The effect of this
> conclusion was to permit approximately similar treatment of regular and
> relief employees.
> …. sleeping time of up to eight hours can be excluded from compensable
> hours of work "[t]hese exclusions must be the result of an employer-
> employee agreement and not a unilateral decision by the employer." The
> letter also emphasizes that:
> As we indicated in our earlier letter, these special rules for relief employees
> of community residences apply **only where the facilities offered by their
> employer provide a home-like environment, with private quarters
> separate from the residents of the home**, thus enabling the employee to get
> a full night's sleep.
> *Hultgren v. County of Lancaster*, *Id.* at 504.

At the beginning of 1988, the Administrator of the Wage and Hour Division

1   issued a memorandum temporarily suspending all investigations of group homes

2   "now in progress in which hours worked are an issue" pending further notice.   The

3   memorandum explained that the suspension was due to possible inconsistencies in

4   enforcement which the national Wage and Hour Office sought to investigate.

5   *Hultgren v. Lancaster, Id*. at 504.

6       Later in 1988, the Department brought out Wage and Hour Memorandum

7   88.48 (also referred to as the "1988 Enforcement Policy"), intended to provide a

8   comprehensive enforcement policy statement specifically directed at group homes

9   for the mentally retarded. The agency recites that it will consider an employee who

10  sleeps in **private quarters in a homelike environment** to reside on the premises

11  for an extended period of time within the meaning of § 785.23 if the employer

12  resides on the premises for a period of at least 120 hours [five days] in a

13  workweek.

14      In 1994, another Opinion Letter was issued to industry representatives

15  reaffirming the 1998 Enforcement Policy and also the view that this position was

16  taken to benefit the industry, and which stated as follows, in material part (copy

17  attached for ease of reference):

18      The principles with respect to hours worked under the FLSA are discussed
19      in  29 CFR Part 785 (copy enclosed). Those principles have been amplified
        and clarified with respect to group home employees as indicated in the group
20      home enforcement policy of June 30, 1988 (copy enclosed). The policy,
21      **which was developed after extensive consultation with representatives of
        the residential care industry, is self-explanatory**. It deals primarily with
22      the conditions under which "sleep time" may be deducted from the hours
23      worked by group home employees in determining their FLSA compensation.
        **The group home enforcement policy represents a relaxation of the rules
24      to accommodate practices in the industry**.

25

26      Where it is not possible for a group home employer to employ employees
27      under the conditions described in the policy, the employer may not be able
        to deduct sleep time from hours worked. In this regard, see §§785.20 -
28      785.22 of Part 785 and page 5 of the enforcement policy. Thus,
        compensation policies may have to be revised by the employer.

*Plaintiff's Motion For Partial Summary Judgment On Stipulated Issue of Law*          - 18 -

1   1994 Wage and Hour Opinion Letter

2   Thus the *private quarters* requirements challenged by Defendants have been

3   duly considered and long applied by the Department, not only after full

4   consultation with industry representatives but moreover for the general benefit of

5   the residential care industry.  Yet Defendants seek to take the benefit of these

6   special provisions, at the same time they refuse to abide by the applicable

7   employee safeguards which are a part and parcel of the whole.

8   **V.  CONCLUSION**

9   Defendants seek an exemption from the Fair Labor Standards Act, an Act

10  which was designed to protect these most vulnerable of employees. One of the

11  mechanisms of that protection is requiring the employer to carry the burden of

12  proving all exemptions from the minimum wage and overtime laws, and that all

13  exemptions be construed narrowly against the employer.

14  Defendants have entirely failed to meet that burden here.  As a remedial

15  labor statute designed to protect against oppressive labor conditions, it should be

16  beyond question that the Act's minimum wage and overtime protections should

17  cover Jasmine Hall's employees when they are working what Defendants do not

18  deny is a 24 hour on-duty shift, for which they receive only 8 hours of pay.

19  The only argument Defendants dismissively propose for the Secretary's

20  private room requirement is some administrative desire to impose "morality"  upon

21  residential care employees.  This is preposterous.

22  The Secretary respectfully submits that it would work an injustice on

23  Defendants' employees and competitors should this Court refuse to grant judicial

24  deference to Plaintiff's long-standing "private room" requirement for the

25  Homeworker Exemption in residential care facilities, developed at the request of

26  and in consultation with Defendants' industry trade group, and upon which other

27  residential care facilities have structured their staffing and collective bargaining

28  agreements.

*Plaintiff's Motion For Partial Summary Judgment On Stipulated Issue of Law*          - 19 -

1    Defendants have provided no rational nor policy basis for demanding they

2  be granted special immunity from these long-standing and well-accepted

3  provisions. Plaintiff prays that her Motion be granted; to do otherwise, in these

4  circumstances, would work nothing but injustice.

5        Dated: 11/5/2007                    LAWRENCE BREWSTER

6                                             Regional Solicitor

7

8                                            BY___ JAN M. COPLICK,
                                             Senior Trial Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28