LAWRENCE BREWSTER
Regional Solicitor
DAVID KAHN
Counsel for ESA Programs
**JAN M. COPLICK**, Senior Trial Attorney
Designated Counsel for Service
California State Bar Number 124503
E-Mail: Coplick.Jan@dol.gov
ANDREW SCHULTZ
Trial Attorney
Office of the Solicitor
United States Department of Labor
90 7th Street, Suite 3-700
San Francisco, California 94103

Telephone: (415) 625-7751
Facsimile:  (415) 625-7772

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br>    Plaintiff,<br>v.<br>JASMINE HALL CARE HOMES, INC., a corporation, HALL CARE HOMES, INC., a corporation, GEORGE K. HALL, an individual, and ESTELA HALL, an individual<br>    Defendants. | CIVIL ACTION NO. 2:05-cv-01306-GEB-KJM<br><br>DECLARATION IN SUPPORT OF THE SECRETARY'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

I, SANDY NUNEZ, swear the following to be true:

1. I am employed by Alta California Regional Center ("Alta"), 2135 Butano Drive, Sacramento, California, 95825 in the position of QMRP for the Federal

1. Programs Department. I held the position of Residential Development Specialist from September of 1999 through November of 2005.

2. I have worked for Alta since November of 1985. Prior to that, I was employed by Stanislaus County Dept. of Social services as a Social Worker in Adult Protective Services for six years in Modesto, California.

3. Alta is one of a network of 21 regional centers in California established by the Lanterman Mental Retardation Services Act of 1969. Alta is a private non-profit corporation working under contract with the California Department of Developmental Services (DDS) to provide services to persons with developmental disabilities (DD) and their families throughout a ten county area around Sacramento.

4. One of the services Alta provides is assessment and placement for 24-hour non-medical residential care for DD adults and children in Community Care Facilities (CCFs) which have been licensed by the Community Care Licensing (CCL) Division of the State's Department of Social Services.

5. In addition to CCL, these residential facilities are also regulated by the Regional Centers. The initial process is called Vendorization, and is essentially an approval process to ensure that the facility, its administrator staff will be able to provide care at the Level of Services applied for. A diagram which Alta provides in an attempt to demonstrate the vendorization process is attached as Exhibit A, and a diagram which Alta provides in an attempt to summarize the differences between the 4 Level of Services for which we vendor facilities is attached as Exhibit B.

6. Alta also makes available on its website sample forms which vendors can download and use to assist them in reporting or recording some of the information required under Title 17. One example is the Weekly Staff Schedule form, a blank copy of which is attached hereto as Exhibit C, which residential facilities need to fill out and maintain on a weekly basis, in order to demonstrate how their staffing complies with the direct care requirements both on a weekly basis and also to meet

the staff/client care ratio at any given time; if Alta does a spot audit of a residential facility, we will request to see a current copy of this document and will also check to ensure that staffing at the time mirrors that set forth in the schedule.

7. Alta has made some spot visits (Unannounced Facility Monitoring Visits) to different Jasmine Hall care homes since 2002. Alta has documented the results of these visits in its files in Unannounced Facility Monitoring Visit Reports.

8. Another Alta website form for residential care vendors is the Weekly Resident Accountability log, a blank copy of which is attached hereto as Exhibit D. All clients at a facility are required to sign out on this form, or something similar, if they leave the facility.

9. During 2005, I was working with George Hall and Estela Hall concerning their vendorization application for Jasmine Hall # 7 on Bartig Way. Alta had been unwilling to approve the application to that point because George Hall was disputing the application of several of Alta's residential vendor policy requirements to his facility. I attended several meetings on these matters, after which meetings I immediately wrote notes to the file recording the meetings, a true and accurate copy of which notes I attach as Exhibit E.

10. One of these meetings took place on July 13, 2005, with George and Estela Hall in attendance, as well as the Service Coordinator for the home, James T. Williams from Alta, and myself, at the Jasmine Hall home on Bartig Way. One of the issues discussed during this meeting was Alta's Residential Vendor Policy that all Level 4 homes should provide an "awake" staff at night. This means that Alta would not vendor [or approve] care homes at Level 4 which would only provide overnight client care and supervision (during 10 p.m. to 6 a.m. time period) by sleeping care staff within earshot of the clients, no matter how vigilant and lightly they slept. Instead, Alta was requiring care homes who wished to be vendored at Level 4 to promise to provide at least one direct care staff member who was designated to remain awake and on duty throughout the 10 p.m. to 6 a.m. time period, called "awake" staff.

Exhibit T    171
Page 3

*Declaration in Support of Secretary's Motion for Partial Summary Judgment*          -3-

11. At the July 13, 2005 meeting, George Hall and Estella Hall stated to Alta personnel that at each of their Jasmine Hall Level 4 homes, they always provide "awake" staff on duty.

12. I also recall the same statement being made by Mr. and Mrs. Hall at the vendorization meeting held on 7/8/05 at the Jasmine Hall # 8 facility, located on 5949 Brett Drive in Sacramento, CA., 95842, that they always provide "awake" staff on duty at all their Level 4 homes.

13. Approximately four years ago, I asked Estela Hall to participate in a panel discussion with two other residential care providers at a vendor orientation I arranged. During the presentation, an audience member asked how each paid their staff. The other two providers stated that they paid their staff an hourly wage, between 10.00 and $13.00 per hour, plus benefits. Estela Hall stated that she gave her staff a monthly salary and room and board, but declined to state the amount of the salary. After the presentation, one of the other panel members approached me privately to express concern and disapproval about the answer given by Estela Hall; this provider stated that paying salaries to staff in exchange for their availability at all hours because they lived at the facility, was not within the range of standard industry practices, and left the staff open to exploitation. However, I felt Alta had not endorsed Estela Hall's answer.

14. Throughout my professional dealings with Jasmine Hall facilities through the years, Estela Hall has often represented the corporate interests of Jasmine Hall with Alta, and has represented herself to be a principal in the Jasmine Hall operation.

I give this declaration freely, without promise or threat, and have been encouraged to change or cross out any portion of it that does not seem fair or accurate to me.

I declare under penalty of perjury that the foregoing is true and correct.

Date 4/10/07  *Sandy Nunez*

SANDY NUNEZ

Exhibit T
Page 4

*Declaration in Support of Secretary's Motion for Partial Summary Ju*

172

-4-



*Serving individuals with developmental disabilities*

2155 Chatham Drive, Sacramento, CA 95825, Tel 916.978

# ALTA CALIFORNIA
## REGIONAL CENTER

## RESIDENTIAL SERVICES CONTRACT AGREEMENT – Level 4

This agreement is between Alta California Regional Center, hereafter referred to as the Regional Center, and __George Hall__ ; hereafter referred to as Contractor.
(Administrator)

Name of Corporation (if applicable): __Hall Care Homes, Inc__

1. This contract is applicable to: _____
   (Vendor Number)

   Name of Facility: __Jasmine Hall III__

   Address: __1601 Ferran Ave__
   __Sacramento, CA 95832__

   Phone Number: _____

   ____ Owner-Operated    __X__ Staff-Operated  __4,979.00__ Monthly Rate

2. The facility will provide residential services for: __18 - 59__
   (Age Group)

3. Contractor Performance:

Residential Service Provider agrees to:

a. Comply with Title 17 and 22 regulations applicable to community residential facilities.

b. Provide supervision, training, and support, as needed, to implement the program design and the Individual Program Plan Objectives.

c. Meet with the Planning Team to provide information necessary for development, review, and/or update of the IPP.

d. Provide a basic staffing level of not less than one direct care staff person whenever clients are under the supervision of facility staff. Additional direct care staff hours are to be provided as determined by service level and number of clients.

Basic staff: __1    24 hrs.__
Additional direct care staff hours: __252/wk__ .

Exhibit U     173
Page   1

*Service for the following Counties:* Alpine, Colusa, El Dorado, Nevada, Placer, Sacramento, Sierra, Sutter, Yolo, Yuba

e. Prepare and maintain on-going written client notes which will include, but not be limited to:

- Community and leisure activities.
- Overnight visits away from the facility.
- Illness.
- Reportable incidents (Serious bodily/physical harm, AWOL or death).
- Medical and dental visits.

f. Ensure the preparation and maintenance of a dated and signed quarterly report of each residents progress on IPP objectives.

g. Include in the quarterly reports a summary of the data collected for each client and actions taken in response to any barriers to client progress. Submit the quarterly report to the Regional Center within 15 days of the end of the quarter.

4. I understand that all residents will have the choice to attend day program less than full time or not at all.

5. Quality Assurance:

a. I understand the Regional Center will conduct an evaluation of residential services utilizing the Title 17 Quality Assurance Regulations, 56001-56061.

b. I understand that the following situations will require sanctions on the facility:

1. If the Regional Center determines that the services provided by the contractor are not consistent with this contract or the designated service level.

2. If there are two findings of substantial inadequacies within a twelve-month period (Title 17, 56057).

3. If a substantial inadequacy is not corrected within the time frame specified in a corrective action plan (Title 17, 56057).

c. I understand that corrective action and appeal shall be consistent with Sections 56056 and 56061 of Title 17 of the California Code of Regulations.

4. I understand that I must maintain staff and services based on the designated service level or the Regional Center will reduce the approved service level to the level associated with the amount of direct supervision and services actually being provided. [Title 17, Sections 56004, 56054, and 56057.]

6. Contract Termination:

a. I agree that this contract may be terminated for cause by the Regional Center. Cause shall include, but not be limited to, failure to comply with the terms of the contract. The Regional Center will provide written notice to the contractor of action taken pursuant to contract and/or payment termination.

Exhibit U
Page 2

174