LAWRENCE BREWSTER
Regional Solicitor
DAVID KAHN
Counsel for ESA Programs
**JAN M. COPLICK**, Senior Trial Attorney
Designated Counsel for Service
California State Bar Number 124503
E-Mail: Coplick.Jan@dol.gov
ANDREW SCHULTZ
Trial Attorney
Office of the Solicitor
United States Department of Labor
90 7th Street, Suite 3-700
San Francisco, California 94103

Telephone: (415) 625-7751
Facsimile:  (415) 625-7772

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, <br><br> Plaintiff, <br><br> v. <br><br> JASMINE HALL CARE HOMES, INC., a corporation, HALL CARE HOMES, INC., a corporation, GEORGE K. HALL, an individual, and ESTELA HALL, an individual <br><br> Defendants. | CIVIL ACTION NO. 2:05-cv-01306-GEB-KJM <br><br> DECLARATION IN SUPPORT OF THE SECRETARY'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

I, JOYCE GLOVER, swear the following to be true:

1. I was employed by the Defendants ("Jasmine Hall" or "JH") from approximately December 2001 until July 2003 as a live-in care provider or care aide.

2. The regular weekly work schedule for Jasmine Hall's care aides at that time was 5 on-duty days in a row, then 2 days off.

3. Each on-duty day or shift was 24 hours long.

4. I worked at Jasmine-Hall home #IV and, for a few weeks to relieve someone on vacation, at Jasmine Hall #VI, working according to the JH care aide schedule at both places.

5. I was paid $1,500 per month, later rising to $1,600 per month, in salary before taxes to cover all hours I was on duty monthly during the 5 on-duty days per week.

6. If I worked any hours on my 2 days off, Jasmine Hall considered this "overtime" and I was paid extra.

7. Every night during my duty shifts, I was required to stay overnight at my care home in the staff bedroom.

8. At Jasmine Hall # IV, I had to share the staff bedroom with 2 other employees each night, a married couple who slept in a double bed while I had a twin bed in the same room, with no barrier between us for privacy.

9. In order to give myself and the married employees some minimal degree of privacy, I often spent the night sleeping on the sofa in the care home living room.

10. At Jasmine Hall # VI, I had to share the staff bedroom with 3 other employees, in two sets of ~~bunk~~ beds, stacking four beds in a small room. There was very little space left over for any personal belongings; the four of us had to share the dressers, and had no privacy from each other at all.

11. I usually started my workday about 5:30 a.m., getting breakfast prepared, cleaning up clients, cleaning the house, assisting clients with performance of their personal chores, cleaning the bedrooms and changing beds, doing laundry. This generally took most of the morning, after which we would prepare and serve lunch, finish any household chores and do any client journaling of progress, problems or events, then start preparing dinner, dealing with the clients throughout, distributing medications, and finally preparing clients for bed by 8 to 9 pm.

*Declaration in Support of Secret* Exhibit V Page 2 *mmary Judgment* -2-

12. Along with these daily chores, we also had to conduct behavioral training and interaction and care for clients' unpredictable problems. We had to handle and gather data on identified behavioral deficiencies such as clients' running away, calling 911, threatening suicide, calling in false fire alarms, assaulting staff, talking to self (and voices) out loud, refusing to do personal grooming, and engaging in fights with other clients.

13. I was usually working fairly constantly most of the time between 6 a.m. and 9 p.m., and sometimes long afterwards if I needed to go through the neighborhood looking for a client who had gone AWOL.

14. It was very rare that all clients left the house during the daytime, for example, to attend Day Programs as claimed by George Hall. In fact, one client was not even enrolled in a day program, another had cancer and could not leave, another went twice a week, and two others attended a sheltered workshop.

15. On occasion, there were a few periods of down-time during those hours when I had some time free, for example to watch television, but I was still responsible for the clients so I did not really relax during those times.

16. When I began work for Jasmine Hall, I had hoped I would have enough free time in the evenings to finish the screenplay that I was writing. I had to get permission to set up my computer in the staff room, since it was shared by several persons, but it turned out that I had very little time free from client care to write. I finally finished a short screenplay for a short film, which won an award which included having my film professionally produced, but Jasmine Hall would not give me the time off in the evenings to participate in having my film made.

17. Even during periods of down time, the clients would follow me around. As a care aide, I was expected to interact with them, and could not ask them to leave me alone or give me some "privacy". Most of all, I was not free to leave the premises and I was always aware that I was on duty.

18. We were told by George Hall and Estela Hall that we could not leave while we were on duty, unless we either got advance permission or took the clients with

1  us, which then turned it into a client activity and required us to pay a lot of
2  attention to the clients.

3  19.  After 10 pm, the care aides were responsible for monitoring the clients
4  during the night, and taking care of clients who awaken and needed help.
5  Sometimes this was a continuation of the acting-out or AWOL behavior described
6  above, and other times involved clients getting up to smoke a cigarette, visit the
7  bathroom or doing something to disturb others.

8  20.  When I slept on the sofa at Jasmine Hall #IV, my sleep was regularly
9  interrupted by clients, even if I did not have to get up, approximately 30 to 40% of
10 the time.  When I shared the staff bedroom at Jasmine Hall #IV, the close sleeping
11 quarters I shared with 3 other people meant that any sounds or actions anyone else
12 made also interrupted my sleep, in addition to client interruptions.

13 21.  Our sleep interruptions were never recorded and we were never paid for
14 nights when we did not get at least 5 hours of uninterrupted sleep.

15 22.  I give this declaration freely, without promise or threat, and have been
16 encouraged to change or cross out any portion of it that does not seem fair or
17 accurate to me.

18 I declare under penalty of perjury in the County of Sacramento, California, that
19 the foregoing is true and correct.
20 Date 4-9-07                      *[signature]*
21                                   JOYCE GLOVER

Exhibit V
Page 4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

---oOo---

ELAINE CHAO, SECRETARY
OF LABOR, UNITED STATES
DEPARTMENT OF LABOR,

       Plaintiffs,

   vs.               Case No. 2:05-CV-13060-GEB-KJM

JASMINE HALL CARE HOMES,
INC., a corporation, HALL
CARE HOMES, INC., a corporation,
GEORGE K. HALL, an individual,
and ESTELA HALL, an individual,

       Defendants.
_____/

**COPY**

--oOo--

Friday, March 16, 2007

--oOo--

Deposition of
ESTELA HALL

--oOo--

Ref. No. 1-3588
REPORTED BY: RUTH E. DIEDERICH, CSR NO. 4952

**CAROL NYGARD**
& ASSOCIATES

DEPOSITION REPORTERS

916-928-8999 • 877-Get-Rptr
Fax 916-928-9989

4180 Truxel Road • Suite 100 • Sacramento, CA 95834
www.sacramentocourtreporter.com

Exhibit W
Page 1

180