MARY K. ALEJANDRO
Acting Regional Solicitor
DAVID KAHN
Counsel for ESA Programs
**JAN M. COPLICK**
Senior Trial Attorney
Designated Counsel for Service
California State Bar Number 124503
E-Mail: Coplick.Jan@dol.gov
ANDREW SCHULTZ
Trial Attorney
LEON PASKER
Trial Attorney
Office of the Solicitor
United States Department of Labor
90 7th Street, Suite 3-700
San Francisco, California 94103
        Coplick.Jan@DOL.gov

Telephone:  (415) 625-7751
Facsimile:   (415) 625-7772

Attorneys for the Plaintiff

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HILDA L. SOLIS**,<br>    Secretary of Labor,<br>    United States Department of Labor,<br><br>                    Plaintiff,<br><br>            v.<br><br>**JASMINE HALL CARE HOMES, INC.,**<br>    A California corporation, et al.,<br><br>                    Defendants. | ) Case No. 2:05-cv-1306-GEB-KJM<br>)<br>)<br>) **PLAINTIFF'S TRIAL BRIEF**<br>)<br>)<br>)<br>) **The Honorable Garland E. Burrell, Jr.**<br>)<br>)<br>)<br>) Final Pretrial Conference:<br>) August 8, 2007<br>)<br>) Trial Date:  January 24, 2012<br>)<br>)<br>)<br>)<br>) |

1
2                                    TABLE OF CONTENTS

3  A.  Short Summary of Facts……………………………………………………………4

4  B.  Admissions and Stipulations Not Recited in the Final Pretrial Order…..................................5

5  C.  FLSA Regulatory Framework Applicable to This Case………………………………………6

6  D.  Plaintiff's Contentions……………………………………………..……………6

7        (1) Pretrial Order Issue 1:  Defendants are liable for payment of wages under the Fair Labor
         Standards Act ("FLSA"):
8
9             I.       Employees of Defendants are covered by the
10                     Fair Labor Standards Act ……………………………………………6

11            II.      Defendants Violated the FLSA's Recordkeeping
12                     Requirements ..………………………………………………………7

13            III.     Defendants Failed to Pay the Minimum Wage
14                     Required by the FLSA …………………………………………………8

15            IV.      Defendants Failed to Pay Employees an Overtime Rate for
16                     All Hours Worked over 40 Hours in a Workweek………………….....11

17            V.       Defendant Estela Hall is jointly and severally liable
18                     Under the FLSA……………………………………………………..12

19       (2) Pretrial Order Issue 2:  Defendants do not meet 29 CFR § 785.23
         grounds for paying their employees less than 24 hours of their work shift
20       .
21            II.      Defendants' Stipulated Facts Are Facially Inconsistent With the Key Require-
22                     ments of Section 785.23…………………………………………………14

23            III.     Defendants' "Agreements" Are Facially Unreasonable, Contrary to Section
24                     785.23……………………………………………………………………16

25            IV.      Employees Are Not Compensated For Sleep Interruptions, Contrary to Section
26                     785.23…………………………………………………………….....17

27            V.       Employees Are Not Provided With The Home-Like Living Quarters Required
28                     For Application of Section 785.23………………………………….....18

(3) Pretrial Order Issue 3:  Defendants willfully violated the FLSA and are therefore subject to a three-year statute of limitations…………………………………………………………...19

(4) Pretrial Order Issue 4:  Defendants did not act in good faith or have a reasonable basis to believe their pay practices were lawful so as to avoid an award of Liquidated Damages……………………………………………………………….…………….20

(5) Pretrial Order Issue 5: All of the disputed time for which Plaintiff seeks recovery is compensable under the FLSA and is not limited by any application of the doctrine of *de minimis non curat lex*……………………………………………………………….………....21

(6)      Pretrial Order Issue 6: Plaintiff's claims do not seek relief on behalf of any persons who have been classified as exempt employees, nor have Defendants met their burden of proving that any employees should be exempted from the FLSA……………..…………….…21

(7)      Pretrial Order Issue 7: None of Plaintiff's claims are barred in whole or in part by the equitable doctrines of *laches*, avoidable consequences, waiver, estoppel, and/or unclean hands because the FLSA does not require employees to raise FLSA compliance issues directly to their employer……………………………………………………………….…..22

E.     Remedies Sought by Plaintiff

     (1)     Necessary Proof of Backwages Due …………………………..…………….…...22

     (2)     Backwage Computations…………………………………....................................23

     (3)     Prospective Injunction ………………………………………….…………....25

     (4)     Prejudgment Interest ……………………………………………..…………...26

F.  Anticipated Evidentiary Issues………………………………………………..…………...26

G.  Anticipated Issues of Law…………………………………………………..………27

H.  Bifurcation………………………………………………………..………....27

I.  Jury Trial…………………………………………………………..……....27

J.  Attorney Fees…………………………………………………………….…......28

**A. Short Summary of Facts**

George Hall and Estela Hall, directly and through the two corporate defendants, operate eight for-profit residential care facilities in the Sacramento area.  The residential care homes each serve as a group home for developmentally-disabled adults with intensive needs, often with multiple diagnoses such as schizophrenia and behavior disorders.  Residential Care Aides (RCA's) residing on the premises provide most of the direct client care and are also responsible for monitoring and supervising the clients, many of whom are not permitted to leave the home unattended.  Additionally, the RCA's daily cook and serve the meals, do the housecleaning and laundry, toilet and dress the clients where necessary, dispense medication, chart client progress, and engage in one-on-one client behavioral guidance and training.

The RCA's are required to stay overnight at the facility in staff rooms, in order to meet mandated state staffing quotas and to be available during the night to monitor and assist clients.   Virtually all the Jasmine Hall RCA's are required to sleep in staff bedrooms shared among up to four employees, some of the opposite sex; the married couples employed by Jasmine Hall share their bedrooms not only with each other but also with one or more additional RCA's.  The RCA's provide client care and supervision 24 hours a day, the sole exception being varying periods of time during weekdays when some – but not often all -- clients may attend various day programs.  At any given time, Defendants employed 15-25 RCA's.

The RCA's are scheduled for five consecutive 24-hour duty shifts weekly. During each duty shift during almost all of the subject period, RCA's must remain on the Defendants' premises.  RCA's are allowed to leave the premises only with prior permission on rare occasions when all clients are away from the home at day programs, but must stay close by in case the clients return early, for example, because they are ill, upset or have a behavioral outburst.  RCA's have no regularly scheduled

breaks or other regular time off during their 24-hour duty shifts.

Defendants admit that they only pay the RCA's for 8 (eight) of every 24 hours spent on-duty. The remaining 16 hours out of each shift are unpaid despite the fact that the RCA's are on-duty during those hours, and are required to remain at the care homes for almost all, if not all, of that time, provide client care and supervision, and remain constantly available to handle any emergency.   Further, Defendants rely upon the RCA's full duty schedules—rather than just the 8 hours they pay the RCA's—in order to meet the contract and state mandated staffing ratios and weekly number of care hours required.

In June 2004, the Sacramento District Office of the Wage and Hour Division, United States Department of Labor ("Labor Department') initiated an investigation of the Jasmine Hall care homes operated by Defendants to determine if any person had violated any provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.  The Labor Department found that Defendants were failing to compensate employees for all hours worked under the FLSA.

On June 28, 2005, the Secretary filed a complaint alleging violations of Sections 6, 7, 11(c), 15, 16, and 17 of the FLSA, 29 U.S.C. §§ 206, 207, 211(c), 215, 216, and 217, for violations of the minimum wage, overtime and mandatory recordkeeping provisions of the FLSA and for injunctive relief. The Secretary amended her complaint on March 3, 2006, to incorporate two additional Jasmine Hall care homes purchased by Defendants after the Labor Department began its investigation, and to add those employees to the list of employees in Exhibit A to the Amended Complaint for whom the Secretary seeks back wages under the Act.

**B.      Admissions and Stipulations Not Recited in the Final Pretrial Order**

There are no admissions or stipulations not recited in the Final Pretrial Order.  The Parties will meet and confer prior to the time for filing replies to their respective Trial Briefs in order to attempt to resolve outstanding evidentiary issues.

### C.    Key Stipulations of Fact and Law

Defendants have stipulated for purposes of trial the following key matters, which are reproduced here for ease of reference:

> d)    "Jasmine Hall employees are typically on-duty five 24-hour shifts at their assigned care homes and have two days a week off.
>
> e)    The Jasmine Hall work shift is a consecutive 24-hour period. The workweek begins on Sunday and ends on Saturday.
>
> f)    Residential care assistants' compensation includes monthly salary that covers eight hours of work per day."

*Undisputed Facts, Pretrial Order ¶ II and Joint Pretrial Statement ¶ 3.*

### D.    Plaintiff's Contentions

1.    **Pretrial Order Issue (1):  Defendants are liable for payment of wages under the Fair Labor Standards Act ("FLSA").**

### I.    Employees of Jasmine Hall are covered by the Fair Labor Standards Act

To establish that the Defendants are subject to the requirements of the FLSA, Plaintiff will show that they perform related activities for a common business purpose in operating eight Jasmine Hall care homes, which are institutions primarily engaged in the care of the mentally ill and developmentally disabled who live on the premises. FLSA Sections 3(r)(1) and 3(r)(2)(A), 29 U.S.C. §§ 203(r)(1) and 203(r)(2)(A).

In addition, Plaintiff will show that Defendants employed employees in an enterprise engaged in commerce or in the production of goods for commerce as defined in 29 U.S.C. § 203(s)(1).  An enterprise engaged in commerce or in the production of goods for commerce means an enterprise that (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees

handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000. FLSA Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).  Once enterprise coverage is established, all employees of the enterprise are covered by the FLSA's protections.  <u>Maryland v. Wirtz</u>, 392 U.S. 183, 188, 88 S. Ct. 2017 (1968).

<u>Evidence</u>: Plaintiff will establish through documentary evidence, testimony including employee testimony, and admissions of Defendants that the RCA's are employees of an enterprise in the care of the mentally ill or developmentally disabled who live on the premises or are employees of an enterprise engaged in commerce.

## II. <u>Defendants Violated the FLSA's Recordkeeping Requirements</u>

The Plaintiff contends that during the subject period the Defendants violated Sections 11(c) and 15(a)(5) of FLSA, 29 U.S.C. §§ 211(c) and 215(a)(5), because they failed to maintain accurate records of employee hours worked. Section 11(c) of the FLSA, 29 U.S.C. § 211(c), mandates the making, keeping and preserving of information relating to employees' wages and hours and other conditions of employment, and authorizes the Secretary of Labor to issue regulations specifying the records to be kept. The regulations are contained in 29 CFR Part 516.

<u>Evidence</u>:  Plaintiff will establish the recordkeeping violations by (1) Defendants' Admission that employees are on duty 24 hours per day for five consecutive days; (2) the testimony of the Defendants' employees as to their hours worked and the failure of the time sheets to accurately reflect all hours worked; (3) the testimony of Sheila Creel, the investigator for the Wage and Hour Division, U.S. Department of Labor ("Wage and Hour Investigator," or "WHI"), that Defendants failed to produce the time records for all the hours worked by employees; (4) testimony and documentary evidence showing that Defendants' obligations for providing care to their residents required employees to work well over

40 hours per week; and (5) testimony and documentary evidence that Defendants' payroll records falsely show that employees as working 8 hours every day when, in fact, they were on duty for up to 24 hours in a day.

Applicable Law:  An employer fails to keep the required records at his peril.  Where the employer fails to keep accurate and complete payroll and hours records, the Plaintiff may invoke the evidentiary presumption set forth in the landmark case of Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S. Ct. 1187 (1946), holding that where an employer fails to maintain accurate records, the plaintiff can show hours worked by just reasonable inference.  The burden then shifts to the employer to produce evidence of the precise amount of work performed or evidence in order to overcome the reasonableness of the inferred extent of violations.  Id. at 687-688.

This rule has been applied in many circuit courts in actions brought by the Secretary of Labor. See, e.g., Brock v. Seto, 790 F.2d 1446, 1448-49 (9th Cir. 1986); Mumbower v. Callicott, 526 F.2d 1183, 1186 (8th Cir. 1975); Brennan v. General Motors Acceptance Corp., 482 F.2d 825, 829 (5th Cir. 1973); Hodgson v. Humphries, 454 F.2d 1279, 1283 (10th Cir. 1972).

The testimony of the employees as to their hours worked, discrepancies in time records, manner of payment and observations of Wage and Hour investigators will establish that Defendants' time and payroll records are not accurate or complete in that they consistently reflect fewer hours than employees actually worked.  Accordingly, the Secretary will show she is entitled to rely upon the evidentiary presumption set forth in Mt. Clemens Pottery, Id.

### III.  Defendants Failed to Pay the Minimum Wage Required by the FLSA

The Plaintiff contends that the Defendants violated the provisions of Sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215(a)(2), by paying their employees wages at rates less than the appropriate minimum wage during the subject period.  Section 6(a) of FLSA, 29 U.S.C. § 206(a), pro-

vides:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages…[of] $5.15 [$5.85] per hour….[1]

Evidence:  The Plaintiff will establish that employees were not paid the minimum wage required by the FLSA by the by (1) the testimony of the Defendants' employees as to their hours worked; (2) Defendants' Admission that employees are on duty 24 hours per day for five consecutive days; (3) testimony and documentary evidence showing that Defendants' obligations for providing care to their residents required employees to work well over 40 hours per week; and (4) testimony and documentary evidence regarding Wage and Hour's calculations of the unpaid minimum wage due.

Applicable Law:     To prove Defendants violated this provision of the FLSA, the Plaintiff must show that the Defendants employed persons and compensated them at rates less than those required by the FLSA for each hour worked.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687; Brock v. Seto, 790 F.2d at 1448-49.

> However, in view of the remedial purpose of the FLSA and the employer's statutory obligation to keep accurate and complete payroll and hours records, the employee's burden is not to be an impossible hurdle.  Id.

At trial herein, the employees' testimony will show a consistent pattern of 24 *hours worked* daily within the meaning of the Fair Labor Standards Act and its implementing regulations. FLSA *hours worked*[2] must include, *inter alia,* all hours spent on duty on the employer's premises and all

---

[1] The specific minimum wage rates applicable during the subject period are set forth, following, in E.1 and E.2 of this Trial Brief.

[2] The sort of mid-shift deductions that are permitted under the FLSA regulations for time spent by employees "off the clock" i.e. non-compensable time, are each subject to strict, specified limitations, none of which are met by Defendants here. See 29 CFR § 785.16 for the requisite criteria to hold mid-shift breaks as non-compensable off-duty time: the breaks must be scheduled in advance, long enough that the employees can use the time to their own benefit, and be subject to a definite return time. Mostly notably for purposes of this case, the employee must be relieved of all duties for the time to be "off-the-clock" or non-compensable under 29 CFR § 785.16; here, Defendants have stipulated that employees are on-duty for the full

**Plaintiff's Trial Brief**                                                              **Page 9 of 28**

hours spent for the benefit of the employer, as discussed more fully below. Defendants' entire defense is based upon their own idiosyncratic definition of Hours Worked (i.e. when the employees are "on the clock"), one which apparently ignores all physically "idle" time, when employees may be supervising clients while eating a meal or watching television, and further excluding all waiting time whether or not it meets the definition for non-compensable breaks set forth in the FLSA Hours Worked regulations.

The employees' testimony will similarly demonstrate a clear pattern of 24 hours worked daily for 5 consecutive days each week, for a regular weekly total of 120 *hours worked*, serving to corroborate Defendants' admission that the employees were on duty for 24 hour shifts, and Defendants' statements in its Employee Policy manual that the employee workday is 24 hours.

As the Supreme Court held in <u>Mt. Clemens Pottery Co</u>., 328 U.S. at 687:

> Where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes ... the solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records ...; it would allow the employer to keep the benefits of an employee's labor without paying due compensation...In such a situation, we hold that an employee has carried out his burden if he proves that he has, in fact, performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

Under <u>Mt. Clemens</u>, Plaintiff's proof is sufficient to show the amount and extent of the employees' work – namely, 24 hours daily for five consecutive work days -- as a matter of just and reasonable inference; as Defendants admit they have only paid for 8 of each 24-hour shift, this clearly establishes that the employees performed work for which they were improperly compensated. Defendants, by virtue of their own recordkeeping failures, cannot overcome this presumption to support their claim that employees lawfully can be paid for less than 24 hours daily.

---

24 hours of their work shift, and thus are **not** fully relieved of all duties.  When, and if, employee might have a few unscheduled hours free during some weekdays, such time is still "on-the-clock".

**Plaintiff's Trial Brief**                                                    **Page 10 of 28**

Although an employer could seek to defend against the employees' claims by establishing the precise number of hours worked or by presenting evidence sufficient to negate the reasonableness of the inference to be drawn from the employees' evidence, Defendants in this case will not be able to do so. The FLSA's implementing regulations set forth specific requirements which must be met before time *during* a shift can be deducted as unpaid, or considered "off the clock" for FLSA purposes.  These requirements include being relieved of all obligations and duties, and the break being sufficiently long and regularly scheduled in advance to allow the employees to truly use the time for their own purposes, all of which elements mandate clear documentation not met by Defendants.

The employees' testimony will clearly establish that any sporadic and unpredictable periods where an employee may have been completely relieved from all duties during their 24 hour shift, and free to leave the care home, did not meet these requirements and is completely insufficient to negate the Plaintiff's evidence.  Moreover, Defendants failed to keep any of the mandated records for the various exemptions and deductions they make from employees' pay.  Consequently, under the evidentiary rule of Mt. Clemens, the Plaintiff's claims for minimum wage underpayment should be sustained in their entirety regardless of Defendants' evidence at trial.

## IV.   Defendants Failed to Pay Employees an Overtime Rate for All Hours Worked over 40 Hours in a Workweek

The Plaintiff contends that the Defendants violated the provisions of Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing employees for work weeks longer than 40 hours without compensating those employees for their employment in excess of 40 hours at rates not less than one and one-half times the regular rates at which they were employed.  Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer

than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

Applicable Law:  Under this provision, the Plaintiff's burden is simply to show that the Defendants' employees worked hours in excess of the 40-hour standard in a particular workweek and Defendants failed to compensate their employees at time and one half for hours worked in excess of 40. United States v. Rosenwasser, 323 U.S. 360, 363, 65 S. Ct. 295, 296-97 (1945).  Defendants have admitted they paid employees for only 8 hours of every 24-hour shift, thereby satisfying Plaintiff's burden to demonstrate that Defendants failed to comply with the requirements of Section 7 of the FLSA, 29 U.S.C. § 207.

Evidence:  This contention is supported by Defendants' stipulation as to pay, as well as the same evidence adduced in support of the minimum wage violation as set forth above, and, in addition, the following evidence at trial:  (1) employee testimony that they worked constantly during the 16 non-sleep hours of their shift providing, *inter alia*, care and monitoring to their clients; (2) only infrequently did employees have free time during their shift while all clients were at Day Programs, but that such episodes were  periodic, unscheduled and not subject to a time certain for their return; (3) employees were routinely awakened to work during the 8 hour sleep portion of their shift without any increased compensation; (4) documentation and employee testimony that employees were paid a flat monthly salary that reflected 8 hours per day of work;  (5) documentation and employee testimony that employees frequently worked six or seven days a week; and (6) testimony and documentation regarding Wage and Hour's calculations of the unpaid overtime compensation.

## V.    Defendant Estela Hall is jointly and severally liable under the FLSA

The Plaintiff contends that Defendant Estela Hall is an employer of the employees who worked at Jasmine Hall, within the meaning of the FLSA Section 3(d), 29 U.S.C. § 203(d).   The FLSA defines

**Plaintiff's Trial Brief**                                                                                    **Page 12 of 28**

"employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), while the verb, "employ" is defined to mean "suffer or permit to work," 29 U.S.C. § 203(g).  A person who possesses or exercises authority over the employees or actively administers the business of the corporate defendant is an employer within the meaning of the Act. Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194-195 (5th Cir.).

Estela Hall has the authority to adjust grievances of employees, approve requested employee absences during the work day, schedule hours and working conditions, and other conditions of employment and had knowledge that employees were performing work for which they were not paid in conformance with the FLSA.

Evidence:  This contention will be supported by (i) the testimony of employees that Estela Hall was responsible for scheduling employees and permitting any absences form their assigned care homes, signed Defendants' putative time records, and, along with George Hall, posted false working schedules in the care homes which employees were directed not to follow; (ii) Documentary evidence describing Estela Hall as the Corporation's VP of Operations.

Applicable Law:  As defined by the Act, an employer includes those who manage the business regarding employment practices.  Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983); Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194-195 (5th Cir.); Donovan v. Janitorial Services, Inc., 672 F.2d 528, 530-531 (5th Cir. 1982). Corporate officials may be held individually responsible for violations of the Act and may be personally restrained from withholding unpaid wages due to affected employees.  See Brock v. Hamad, 867 F.2d 804 (4th Cir. 1989); Donovan v. Sabine Irrigation Co., 695 F.2d at 196.

In determining whether a corporate official or owner is an employer within the meaning of the Act, the court must focus upon the "totality of circumstances" and "the economic realities" of the

**Plaintiff's Trial Brief**                                                                 **Page 13 of 28**

worker's employment.  Bureerong v. Uvawas, 922 F. Supp. 1450, 1467 (C.D. Cal. 1996) (citations omitted); see also Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir. 1984), cert. denied, 471 U.S. 1124 (1985); Donovan v. Sabine Irrigation Co., 695 F.2d at 194.  By setting the hours and wages and otherwise acting in the interest of the employer, an individual may be held liable as an employer. See Brennan v. Jeffries, 398 F. Supp. 471, 472-73 (D. Ariz. 1973), aff'd, 1975 WL 3574 (9th Cir. 1975) (personal liability imposed on owner).  "Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act."  Lambert v. Ackerly, 180 F.3d 997, 1012 (9th Cir. 1999)(citations omitted).

As employers, George and Estela Hall are jointly and severally liable with the corporate defendants for backwages that may be found to be due to the employees of  Jasmine Hall. Donovan v. Hamm's Drive Inn, 661 F.2d 316 (5th Cir. 1981); Marshall v. Gerwill, Inc., 495 F.Supp. 744 (D. Md. 1980).

Evidence to defeat Defendants' Affirmative Defense will consist of employer and employee testimony as to Defendant Estela Hall's role in Jasmine Hall, including payroll, hiring and firing, staff work schedules and other business administration, as well as documents showing Estela Hall to be responsible for staff scheduling, training, leave, resolving staff grievances and other day to day operational matters directly related to the RCA's employment, pay and hours of work.

**(2) Pretrial Order Issue 2:  Defendants cannot rely on 29 CFR § 785.23 as grounds for paying their employees fewer than 24 hours of their work shift.**

### I.  Defendants' Stipulated Facts Are Facially Inconsistent With the Key Requirements of Section 785.23

Throughout the long history of this case, Defendants have repeatedly invoked 29 CF R § 785.23 to justify their refusal to pay their employees for all of 24 hours daily that Defendants admit their em-

1  ployees are on-duty.  Not only is Defendants' claimed reliance upon Section 785.23 inconsistent on its

2  face with the terms of the regulation, Defendants also cannot meet their burden of proving that they sat-

3  isfy each or any of the numerous conjunctive requirements for its application.

4      Defendants' entire argument under Section 785.23 is directly contrary to long-established and

5  fundamental principles underlying the FLSA and its regulations, in particular, the *Hours Worked* provi-

6  sions strictly limiting when breaks from on-duty hours can be non-compensable (or "off the clock").

7      The FLSA starts from a presumption that employees must be paid for all of the time they are re-

8  quired to be on the employer's premises.  29 CFR § 785.7; <u>Mt. Clemens</u>, 328 U.S. at 690-91.  One rec-

9  ognized exception to this general rule is where an employee lives or resides for an extended period of

10  time on his employer's premises.  29 CFR § 785.23; <u>Brigham v. Eugene Water & Elec. Bd., 357 F.3d</u>

11  <u>931, 936 (9th Cir.2004)</u>.  This exception is the subject of the Department of Labor's interpretive regula-

12  tion at 29 CFR § 785.23, which states:

> An employee who resides on his employer's premises on a permanent basis or for ex-
> tended periods of time is not considered as working all the time he is on the premises.
> Ordinarily, he may engage in normal private pursuits and thus have enough time for eat-
> ing, sleeping, entertaining, and **other periods of complete freedom from all duties**
> **when he may leave the premises for purposes of his own.**  It is, of course, difficult to
> determine the exact hours worked under these circumstances and any reasonable agree-
> ment of the parties which takes into consideration all of the pertinent facts will be ac-
> cepted.  This rule would apply, for example, to the pumper of a stripper well who resides
> on the premises of his employer and also to a telephone operator who has the
> switchboard in her own home. (<u>Skelly Oil Co. v. Jackson</u>, 194 Okla. 183, 148 P. 2d 182
> (Okla. Sup. Ct. 1944; <u>Thompson v. Loring Oil Co.,</u> 50 F. Supp. 213 (W.D. La. 1943).)
> (Emphasis added.)

    This common sense exception was designed to exclude from hours worked those periods spent

on an employer's premises during which a resident employee who has been provided a home-like envi-

ronment engages not in work but rather in the normal routines of living, such as sleeping, eating, bath-

ing and entertaining, and during which the employee is entirely free to leave the premises without ob-

taining permission.

**Plaintiff's Trial Brief**                                                        **Page 15 of 28**

In the instant case, Defendants have stipulated to the facts – which will be confirmed by employee trial testimony and the testimony of state and local regulators – that Defendants' employees are on duty for 24 hours per day, and that their workshift is 24 hours daily.

These key stipulated facts make Section 785.23 facially inapplicable and inappropriate to Defendants' employment; the employees cannot, under the terms of these stipulations, have **periods of complete freedom from all duties when [they] may leave the premises for purposes of [their] own.** 29 CFR § 785.23.

Applicable Law:  By its own terms, 29 CFR § 785.23 is only applicable to employment arrangements where the employees "may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own."  29 CFR § 785.23.  Defendants' stipulations dictate otherwise in this case.

Evidence:  In addition to and in corroboration of Defendants' stipulations, the Secretary will rely upon: 1) documentary evidence, employee testimony and admissions by Defendants that RCA's are required to remain on the premises for their entire 24 hour shift; and 2) documentary evidence and employee testimony that RCA's have no scheduled breaks or time off during their 24-hour duty shift.

## II.   Defendants' "Agreements" Are Facially Unreasonable, Contrary to Section 785.23

Defendants have produced alleged "agreements" that purport to exclude from paid time all hours spent by employees on personal matters, which is expressly inconsistent with Defendants' stipulations and the FLSA's principles of *Hours Worked*. Moreover, these "agreements" are inconsistent with the employees' actual duties and Defendants' obligations to provide 24-hour care and supervision for clients.   The fact that such care may consist of monitoring or supervision time, during which an employee may also engage in personal chores, is ignored by Defendants' Agreements and argument.

For these additional reasons, Defendants' "agreements" are facially unreasonable and contrary to Section 785.23.

Applicable Law:   The burden of proof is upon Defendants to prove the reasonableness of their claimed "agreements".   In order to bring itself within Section 785.23, an employer bears the burden of proving, plainly and unmistakably, that (1) There is an agreement to compensate the employee for the work hours claimed, and (2) That agreement was reasonable, having taken into account all of the pertinent facts. Leever v. Carson City, 2004, 360 F.3d 1014 (9th Cir. 2004), De Guzman v. Parc Temple LLC, C.D.Cal.2008, 537 F.Supp.2d 1087, Garofolo v. Donald B. Heslep Associates, Inc., 2005, 405 F.3d 194.

Evidence:   Employee, investigator and regulatory authority testimony, together will documentary evidence, will show: (1) that 8 hours is not a reasonable approximation of the actual hours worked daily, within the meaning of the FLSA, by employees; (2) that the putative agreement does not take into account all "hours worked" within the meaning of the FLSA; and (3) that the criteria set forth in the putative agreement for compensable time is not consistent with the FLSA or Defendants' contractual and state law obligations.

### III.    Employees Are Not Compensated For Sleep Interruptions, Contrary to Section 785.23

Although Defendants claim that at some unspecified time, they have compensated some unidentified employee for sleep interruptions, they have provided not a shred of documentary evidence to support this bald assertion.   In Defendants' production of more than 30,000 pages of documents, not one documents demonstrates proof that such payment has ever occurred, much less that it regularly and consistently occurs.   Yet Defendants' same documents clearly demonstrate numerous instances when employees were required to care for clients during their unpaid sleep hours—for example during violent or emotional outbursts, when clients have wet or soiled themselves during the night, when clients

need vigilant supervision to keep them from injuring themselves or others—apparently without any extra compensation to their employees, contrary to Section 785.23.

Evidence:  Employee testimony will show that they were often – in some cases, regularly – awakened to duty during the night without compensation.  Testimony will also show that Defendants had no actual recording system or practice in place for documenting such sleep interruptions for purposes of compensating employees.

### IV.   Employees Are Not Provided With the Home-Like Living Quarters Required For Application of Section 785.23

It is undisputed that Defendants require almost all their employees to share a bedroom with co-employees with whom they have no other personal relationship.  In some care homes, two married couples must share a single small bedroom.   In at least two other care homes, four employees sleep in double sets of bunk beds in one small room, with each employee being allocated only a few designated drawers of a shared chest and a small portion of a shared closet for his or her own belongings.

Applicable Law: Working with input from a representative of the residential care home industry, the Department of Labor has provided specific guidance for the application of Section 785.23 to the unique circumstances of that industry.  The Wage and Hour Division's 1988 Enforcement Policy entitled "*Hours Worked In Residential Care (Group Home) Establishments—Sleep Time And Related Issues*" expressly states that residential care aides living on the premises for five consecutive 24-hour shifts will qualify as residing permanently on the premises for the purposes of 29 CFR § 785.23 as long as they have, *inter alia*, "private quarters," defined as "living quarters that are furnished, are separate from the "clients" **and from any other staff members**" (FLSA-1119, June 30, 1988, emphasis added).

 The Department of Labor reaffirmed this guidance in a 2004 Wage and Hour Opinion Letter explaining compliance with 29 CFR § 785.23 in the adult residential care industry.  Wage and Hour's letter expressly stated that it presumed that the residential care home staff members had their own pri-

vate bedrooms as part of their home-like environment.  FLSA2004-7, July 27, 2004.  It is a common

sense and reasonable requirement that employees have private living quarters before they can be con-

sidered to be "residing" at the care home.

Courts have repeatedly granted deference to the Department of Labor's requirement that pri-

vate sleeping quarters be provided to a residential care employee before Section 785.23 can apply.

Bouchard v. Regional Governing Bd. of Region V  Mental Retardation Servs., 939 F.2d 1323, 1330

(8th Cir. 1991), cert. denied, 503 U.S. 1005 (1992); Cf. Braziel v. Tobosa Developmental Services, 166

F.3d 1061, 1062 (10th Cir. 1999) (sleeping facilities adequate where residential assistants had own bed-

rooms, often with own bathrooms); Blackburn v. The Kansas Elks Training Center for the Handi-

capped, Inc., 40 F.Supp.2d 1270, 1272 (D. Kansas 1999) (sleeping facilities adequate where employees

had private quarters in home-like setting).

Evidence:  At trial, employee testimony and Wage and Hour investigator testimony and docu-

mentation will demonstrate that the RCA's shared bedrooms do not satisfy Section 785.23's require-

ments.

**(3) Pretrial Order Issue 3:  Defendants willfully violated the FLSA and are therefore sub-**

**ject to a three-year statute of limitations**.

Plaintiff contends that this action is subject to a three-year statute of limitations because Defen-

dants' violations of the FLSA were willful.   The Secretary intends to prove that the violations were

willful based on Defendants' deliberate falsification of records and schedules.  In addition, Wage and

Hour expressly provided Defendant George Hall with information and pamphlets explaining Hours

Worked under the FLSA in care homes during a previous investigation.  Although this earlier investiga-

tion did not uncover the violations found later – perhaps because the particular Jasmine Hall Care

Home was providing care at a lower level of service  -- Defendant George Hall was also provided with

FLSA compliance pamphlets at the conclusion of the investigation.

A three-year statute of limitations is imposed on employers who "willfully" violate the FLSA pursuant to Section 6(a) of the Portal to Portal Act, 29 U.S.C. § 255 (a). For the purposes of the statute of limitations, a violation is "willful" if the employer knew or showed reckless disregard as to whether its conduct violated the Act.  McLaughlin v. Richland Shoe, 486 U.S. 128 (1988).  Reckless disregard may be shown by repeated violations, the falsification or withholding of required records, or other attempts to evade the Act's requirements.  See, e.g., Martin v. Deiriggi, 985 F.2d 129, 136 (4th Cir. 1992) (Court affirmed willfulness finding based on abundant evidence of knowing violation, including evidence that employer withheld records to impede DOL); Dole v. Elliot Travel & Tours, 942 F.2d 962, 967 (6th Cir. 1991) (Willful violation affirmed where employer had actual knowledge of Act's requirements from earlier DOL investigation, and previously agreed to pay overtime and comply with Act, but failed to).

Evidence:  The Secretary shall offer testimony and documentary evidence showing that George Hall was aware of the regulations regarding hours worked and the Labor Department's policy on the application of 29 CFR § 785.23 in the residential care industry but chose to implement employment policies based instead on his own reading of the Labor Department's regulations.

**(4) Pretrial Order Issue 4:  Defendants did not act in good faith upon or have a reasonable basis to believe that their pay practices were lawful so as to avoid an award of Liquidated Damages**.

Section 16(c) of the Act (29 U.S.C. § 216(c)) authorizes legal action by the Secretary to recover as liquidated damages an additional equal amount of unpaid compensation.  The liquidated damages are authorized in lieu of interest.  The purpose of liquidated damages is "not penal in its nature but compensation for the retention of a workman's pay which might result in damages too obscure and difficult

to prove other than by liquidated damages." *Brooklyn Savings Bank v. O'Neill*, 324 US. 702.  There exists "a strong presumption in favor of doubling" and because the burden is on the employer, "double damages are the norm, single damages the exception." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986).

Imposition of liquidated damages is mandatory unless the defendant pleads and proves good faith, i.e., that it had reasonable grounds to believe that it was not in violation of the Act.  29 U.S.C. § 260; See Chao v. A-One Medical Services, 346 F.3d 908, 917 (9th Cir. 2003).  Under 29 U.S.C. § 259(a), employers may establish a "good faith" defense if they plead and prove at trial that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subdivision (b).  In the case of the Fair Labor Standards Act, subdivision (b) provides that the "agency" is "the Administrator of the Wage and Hour Division of the Department of Labor." Id. § 259(b). The test under section 259 is an objective one. Hultgren v. County of Lancaster, Neb., 913 F.2d 498 (8th Cir.1990.)

In this case, no such reliance can be demonstrated by Defendants, given the Secretary's repeated advice to Defendants that their idiosyncratic interpretation of Section 785.23 was unsupported by authority, incorrect, and contrary to published interpretations and to principles of the FLSA.

**(5) Pretrial Order Issue 5: All of the disputed time for which Plaintiff seeks recovery is compensable under the FLSA and is not limited by any application of the doctrine of *de minimis non curat lex*.**

The Secretary seeks back wages of 16 hours per day of unpaid work per employee.  The *de minimis* doctrine is clearly not applicable to any of the Secretary's claims.

**(6)      Pretrial Order Issue 6:   Plaintiff's claims do not seek relief on behalf of any persons who have been classified as exempt employees, nor have Defendants met their burden of proving that any employees should be exempted from the FLSA.**

The Secretary does not seek back wages on behalf of any employee who has been classified as exempt from the FLSA and the Defendants have not identified any employees listed in Exhibit A to the Secretary's Amended Complaint that are exempt from the FLSA.

**(7)     Pretrial Order Issue 7: None of Plaintiff's claims are barred in whole or in part by the equitable doctrines of *laches*, avoidable consequences, waiver, estoppel, and/or unclean hands.**

The FLSA does not require employees to raise FLSA compliance issues directly to their employer.  See, Caserta v. Home Lines Agency, 273 F.2d 943, 946-47 (2d Cir. 1959) (an employee who accepts wages each week without complaint is not barred or estopped from later collecting overtime and liquidated damages).

**E.     Remedies Sought By Plaintiff**

**1.  Necessary Proof of Backwages Due**

The Plaintiff contends that Defendants' underpayments of minimum wage and overtime for the period of June 28, 2002, through December 31, 2011, is approximately $6.65 million, plus an additional $6.65 million in liquidated damages.

Evidence:   The Plaintiff has calculated the backwages due based on the anticipated evidence that will establish the recordkeeping, minimum wage and overtime violations as set forth above.  Plaintiff will rely on testimony and documentary evidence of Wage Hour personnel to explain the calculations.

Applicable Law:  To establish the amount of underpayments, as discussed infra, where there are no accurate records of actual hours worked, as is the case here, the plaintiff has carried her burden if he proves that employees have in fact performed work for which they were improperly compensated and if the plaintiff produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the

precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result is only approximate.  Mt. Clemens Pottery Co., 328 U.S. at 687-688.

It is well established that "[e]ach employee need not testify in order to make out a prima facie case of the number of hours worked as a matter of 'just and reasonable inference.'" Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 472 (11th Cir. 1982).  "The *Mt. Clemens Pottery* standard allows district courts to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees."  McLaughlin v. Ho Fat Seto, 850 F.2d 586, 589 (9th Cir. 1988).  Based on the representative testimony, the court may conclude that a prima facie case has been made for non-testifying employees as well.  General Motors Acceptance Corp., 482 F.2d at 829.  "There is no requirement that to establish a *Mt. Clemens* pattern or practice testimony must refer to all non-testifying employees…The requirement is only that the testimony be fairly representative."  Donovan v. Bel-Loc Diner, Inc., 780 F.2d 1113, 1116 (4th Cir. 1985)

Even if the representative testimony is "inconsistent in terms of exact days and hours of overtime worked," a court may find," as a matter of just and reasonable inference," that all employees regularly worked excess time.  Ho Fat Seto, 850 F.2d at 589.   An employer may fail to meet his burden to negate the reasonable inferences drawn from representative employees' testimony if the fact finder determines the employer's witnesses not to be credible.  Id. at 590.

No fixed ratio exists for determining what percentage of employees must testify in order to satisfy the plaintiff's burden.  However, in other cases involving fairly small employee populations, a limited number of employee positions, and uniform work tasks,  Courts have found a small number of employees representative of the whole.  In Ho Fat Seto, the Court found that five testifying employees es-

tablished a *prima facie* case on behalf of themselves and twenty-three non-testifying employees.  Id., at 589.   Only seven out of 200 employees testified in the Mt. Clemens Pottery case.  Other cases are in accord:  McLaughlin v. Dialamerica Marketing, 716 F.Supp. 812, 824 (D.N.J. 1989) (43 out of 393 market telephone researchers was sufficiently representative testimony for all employees); Bel-Loc Diner, 780 F.2d at 1116 (22 employees who testified were found to be representative of 98 kitchen staff and servers in an all-night diner).

### 2.  Backwage Computations

Because the Defendants failed to maintain an accurate record of hours worked within the meaning of the FLSA, Wage and Hour reconstructed the hours worked as at least 120 hours worked per week (24 hours daily x 5 regular work shifts weekly) by each employee (not counting additional hours worked by those employees during their two "days off" per week) and reconstructed the payroll to include monthly salaries and additional payments for unscheduled hours (e.g. a credit per week for the wages paid by the employers to each employee as shown in Defendants' computer payroll spreadsheets).  To calculate unpaid minimum wages, Wage and Hour divided each employee's earnings by the reconstructed number of hours worked, to obtain an hourly rate.  Where that rate fell below the then-applicable minimum wage, Wage Hour calculated the underpayment.

Overtime must be paid at a rate of time and one half an employee's regular rate for all hours worked in excess of 40 hours in a workweek.  In calculating back wages, the regular rate must be at least equal to the State's minimum hourly rate which was $6.75 through December 31, 2006, and $7.50 starting on January 1, 2007, and $8.00 beginning January 1, 2008.  Therefore, for those employees whose regular rate was below $6.75 (or $7.50, or $8.00) per hour, Wage Hour first calculated the difference between $6.75 (or $7.50, or $8.00) and their actual rate and multiplied that amount by 120, i.e., the total number of hours worked in each workweek.  Then, to obtain the unpaid half-time, Wage Hour

multiplied the number of hours worked over 40 by one half of $6.75 (or $7.50, or $8.00).  The sum of these two calculations is the due for overtime.

Evidence:  The Plaintiff has calculated the back wages due based on the anticipated evidence that will establish the recordkeeping, minimum wage and overtime violations as set forth above.  Plaintiff will rely on testimony and documentary evidence of Wage and Hour personnel to explain the computations for back wages, which are estimated at $6.65 million, plus an additional $6.65 million in liquidated damages, through December 31, 2011.

Applicable Law:  When calculating unpaid overtime, the regular rate must be at least equal to the state's minimum wage rate pursuant to 29 CFR § 778.5.  Testimony and documentary evidence of Wage and Hour personnel are offered as an aid to the Court in computing the underpayments.  Seto, 790 F.2d at 1449; Humphries, 454 F.2d at 1282.

### 3.    Prospective Injunction

The Plaintiff seeks to enjoin the Defendants, pursuant to section 17 of the FLSA, 29 U.S.C. § 217, from further violation of the FLSA's recordkeeping, minimum wage, and overtime provisions. As discussed below, section 17 of the FLSA, 29 U.S.C. § 217, also includes provisions for the recovery of unpaid minimum wage and overtime compensation withheld from employees.

In this case, the prospective injunction sought by the Plaintiff will not subject the Defendants to any penalty or hardship. It does nothing more than require the Defendants to do what the FLSA requires: compliance with the law for the public benefit. See Brock v. Big Bear Market No. 3, 825 F.2d 1381, 1383 (9th Cir. 1987); Marshall v. Chala Enters., 645 F.2d 799, 804 (9th Cir. 1981).  The injunction merely shifts the responsibility for compliance onto the Defendants' shoulders instead of upon the government.  Donovan v. Sureway Cleaners, 656 F.2d 1368, 1375 (9th Cir. 1981).  The purpose of an injunction under the FLSA is not to punish past violations, but only to stop existing violations or to

prevent future infractions in the public interest.  It is the number, nature and extent of violations under the FLSA which is the determinative factor of the necessity to protect the public interest by judicial decree.  The Plaintiff expects to prove by credible evidence each of the violations discussed above and contends that an injunction restraining the Defendants from future violations of the minimum wage, overtime and recordkeeping provisions of the FLSA should issue in this case.

In addition, Plaintiff contends that the Defendants should be enjoined from the continued withholding of minimum wages and overtime pay, plus pre-judgment interest.  This contention will be supported by the testimony and documentary evidence used to establish the Defendants' violations of sections 6, 7, and 11(c) of the FLSA, 29 U.S.C. §§ 206, 207, and 211(c).

### 4.  Prejudgment Interest

Should the Court not award liquidated damages under section 16(c) of the Act, Plaintiff contends that prejudgment interest should be assessed on the backwages found due.  Prejudgment interest is necessary to make whole Jasmine Hall's employees for the losses they have suffered caused by the delay and unlawful withholding of their wages.  Ford v. Alfaro, 785 F.2d 835, 842-843 (9th Cir. 1986). It also serves to remedy the competitive disadvantage faced by employers that comply with the FLSA. Donovan v. Sovereign Security, 726 F.2d 55, 58 (2nd Cir. 1984)  The rate used by the Internal Revenue Service to calculate underpayments owed to the United States pursuant to 26 U.S.C. § 6601 is appropriate.

### F.  Anticipated Evidentiary Issues

The parties exchanged anticipated trial exhibits on December 22, 2011, and the Secretary filed her objections to the Defendants' proposed trial exhibits on December 30, 2011, pursuant to the Final Pretrial Order.  The Plaintiff specifically incorporates by reference her objections to Defendants' proposed trial exhibits, including the specific citations to the Federal Rules of Evidence therein. The Parties intend to meet and confer in order to attempt to resolve disputes over anticipated trial exhibits and

prepare joint trial exhibits prior to the filing of responsive trial briefs.  The Secretary will address any unresolved evidentiary disputes arising out of her objections to the Defendants' proposed trial exhibits in her responsive trial brief pursuant to the honorable Court's Final Pretrial Order.

The Plaintiff filed her Motion in Limine to preclude Defendants from introducing at trial the employment agreement to support their claim that they may lawfully exclude from compensation any portion of the employees' 24-hour shifts, because those agreements are unreasonable as a matter of law. Defendants filed their opposition to the motion.  The Defendants filed Motion in Limine No. 1 to limit the trial testimony of Wage and Hour investigator Sheila Creel.   The Defendants filed Motion in Limine No. 2 to exclude withheld witness statements and enforce the Parties' joint stipulations.  The Secretary timely filed her opposition to the Defendants' Motions in Limine and the parties await the honorable Court's decisions on the motions.

**G.  Anticipated Issues of Law**

The Plaintiff is not aware of any such issues.

**H.  Bifurcation**

There is no need for a bifurcation of the issues in this case.

**I.  Jury Trial**

This will be a bench trial.

\\

\\

\\

\\

\\

\\

\\

\\

\\

1

**J.  Attorney Fees**

2

There is no specific provision in the FLSA for attorney's fees when the Secretary brings an ac-

3

tion on behalf of employees, as opposed to an action on their own behalf through their own counsel.

4

There are provisions for attorneys' fees to be awarded if a Defendant prevails and additionally demon-

5

strates that the Secretary was not substantially justified in her position (see the Equal Access to Justice

6

7

Act, 28 U.S.C. § 2412); the Plaintiff contends that no attorneys' fees should be recoverable in this case.

8

9

Dated: January 4th, 2012                          PATRICIA SMITH
                                                  Solicitor of Labor

10

11                                                MARY K. ALEJANDRO
                                                  Acting Regional Solicitor

12

13                                                DAVID M. KAHN
                                                  Counsel for Employment Standards

14                                                _____/s/_Jan M. Coplick_____

15                                                JAN M. COPLICK,
                                                  Senior Trial Attorney

16

17                                                ANDREW SCHULTZ,
                                                  Trial Attorney

18

19                                                LEON PASKER,
                                                  Trial Attorney

20

21                                                Attorneys for the Plaintiff
                                                  Secretary of Labor, U.S. Department of Labor

22

23

24

25

26

27

28

**Plaintiff's Trial Brief**                                          **Page 28 of 28**